**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III, and KENNETH H. HANNAH,<br><br>Defendants. | **Civil Action No. 6:13-cv-00736-KNM** |
| ERHAN ERDEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III, and KENNETH H. HANNAH,<br><br>Defendants. | **Civil Action No. 6:13-cv-00750-KNM** |
| BRUCE MURPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III, KENNETH H. HANNAH, and WILLIAM ACKMAN,<br><br>Defendants. | **Civil Action No. 6:13-cv-00800-KNM** |

(caption continued on next page)

| | |
|---|---|
| SHAWN GILBERT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III, and KENNETH H. HANNAH,<br><br>Defendants. | **Civil Action No. 6:13-cv-00810-KNM** |

**MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF J.C. PENNEY INVESTOR GROUP TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD <u>PLAINTIFF'S CHOICE OF COUNSEL</u>**

The J.C. Penney Investor Group ("JCPIG"), comprised of Cavanaugh Webb and Jeanette Zohar Stavropoulos, submits this memorandum in further support of its motion to (1) appoint it as the Lead Plaintiff; (2) approve its selection of Brower Piven, A Professional Corporation ("Brower Piven") as Lead Counsel for the Class and Puls & Liebrecht, P.C. ("Puls & Liebrecht") as Liaison Counsel for the Class; and in opposition to the other competing lead plaintiff motions.[1]  Based on the submissions of each lead plaintiff movant, JCPIG is the "most adequate plaintiff" within the meaning of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), as it has suffered the largest loss ($605,270.00) of any lead plaintiff movant using the methodology mandated by the United States Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), and approved and recognized as the appropriate method for calculating losses in various jurisdictions around the country.  *See, e.g., Espinoza v. Whiting*, No. 4:12-1711, 2013 U.S. Dist. LEXIS 6227, at *10 (E.D. Mo. Jan. 16, 2013) (the "Patriot Coal Investor Group's well-reasoned approach addresses the problems the *Dura* Court and others have cautioned against.").  Every movant other than JCPIG has failed to use the *Dura* method to calculate its "largest financial interest."  Calculating JCPIG's losses under the methods employed by the other movants[2] also results in JCPIG possessing the largest financial interest in the relief sought by the class:

---

[1] On December 2, 2013, pursuant to the PSLRA, eight movants each timely filed motions for consolidation and appointment as lead plaintiff and lead counsel, including: (1) JCPIG; (2) Aletti Gestielle SGR S.p.A. ("Aletti"); (3) Joaquin Aguilar, Ghirmai Sequar, Keith Jones, Oliver Youssef, and Pankaj Modi ("Aguilar Group"); (4) Christos Ifantides ("Ifantides"); (5) Richard Saso, Krishna Dass, and Imtiaz (Taz) Lakhani (the "Saso Group"); (6) National Shopmen Pension Fund ("Pension"); (7) Heath Clute; and (8) Omar Ahmed.  *See* Dkt. No. 16 ("Clute Motion"); Dkt. No. 18 ("Ahmed Motion"); Dkt. No. 21 ("Saso Motion"); Dkt. Nos. 22, 23 ("JCPIG Motion"); Dkt. No. 24 ("Aguilar Motion"); Dkt. No. 26 ("Aletti Motion"); and Dkt. No. 27 ("Ifantides Motion"); Dkt. No. 29 ("Pension Motion").  On December 10, 2013, the Clute Motion was withdrawn. Dkt. No. 33.  On December 16, 2013, the Aguilar Group filed its response to the competing motions, conceding that it does not possess the "largest financial interest in the relief sought by the class." Dkt. No. 34.  On December 17, 2013, the Ahmed Motion was withdrawn. Dkt. No. 35.

[2] Ifantides' loss is calculated using total cost less total proceeds for those shares held through the final partial corrective disclosure. Aletti's loss is calculated using total cost minus the retained value of those shares based on the mean trading price from September 27, 2013 to November 29, 2013.  The Saso Group's loss is calculated using total cost minus total proceeds minus retained value.

| Movant | Loss Using Proper Method under *Dura*[3] | Claimed Loss Not Using Proper Method |
|---|---|---|
| JCPIG | Total: $605,270.00 | Total: $876,977.48 |
|   Cavanaugh Webb | $465,600.00 | $704,725.00 |
|   Jeanette Zohar Stavropoulos | $139,670.00 | $172,252.48 |
| Aletti | $316,260.00 | $610,343.25[4] |
| Saso Group | $196,396.35 | $275,225.79[5] |
| Ifantides | $189,799.80 | $283,883.19[6] |
| Pension | $49,305.00 | $102,101.14[7] |
| Aguilar Group | Not Calculated.[8] | Approximately $310,000.00[9] |

Additionally, under any methodology, Mr. Webb from JCPIG, ***individually***, possesses a financial interest larger than any other movant.[10] JCPIG also otherwise meets the "typicality" and "adequacy" requirements of Fed. R. Civ. P. 23. Accordingly, JCPIG should be appointed as the Lead Plaintiff, and the competing motions should be denied.

## ARGUMENT

**I.   JCPIG Is The Presumptive Lead Plaintiff**

    **A.   JCPIG Has The Largest Financial Interest**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), the presumptive lead plaintiff is the movant:

---

[3] Per JCPIG's calculations. *See* Ex. B to the Declaration of W. Kelly Puls In Further Support Of The Motion Of The J.C. Penney Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice Of Counsel ("Second Puls Decl." or "Second Puls Declaration"), submitted herewith; Ex. B to the Declaration Of W. Kelly Puls ("Puls Decl." or "Puls Declaration"; Dkt. No. 23-1).

[4] Dkt. No. 28, Ex. B to the Declaration of Thomas R. Ajamie.

[5] Dkt. No. 21, Ex. C to the Declaration of Albert Y. Change.

[6] Dkt. No. 27, Ex. D to the Declaration of Ira M. Press.

[7] Per JCPIG's calculations because Pension provided no loss chart. *See* Second Puls Decl., Ex B.

[8] The Aguilar Group concedes that it "does not posses the 'largest financial interest in the relief sought by the class.'" Dkt. No. 34 at 3.

[9] Dkt. No. 34 at 3.

[10] Though JCPIG moves together as a group, alternatively, each agreed to have the Court consider their losses to appoint them individually as lead plaintiff should the Court desire. *See* Puls Decl., Ex. A; *In re Razorfish, Inc.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (choosing one plaintiff from a group as the sole lead plaintiff); *Netsky v. Capstead Mortg. Corp.*, No. 3:98-1716, 2000 U.S. Dist. LEXIS 9941, at *18-*21 (N.D. Tex. July 12, 2000) (selecting a smaller group with significant holdings from a larger group); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1070 (C.D. Cal. 1999) (rejecting motion by group of 137 plaintiffs and selecting two to serve as lead plaintiffs) (collecting cases); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 412 n.12 (D. Minn. 1998) (directing the movant to select from larger group a smaller number of members).

(1) with the largest financial interest in the relief sought by the class; and (2) who otherwise satisfies the requirements of Rule 23. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. 2002); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997). The determination of which candidate has the largest loss is by far the most important factor in determining who should be the lead plaintiff. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-04617, 2006 U.S. Dist. LEXIS 3028, at *13 (S.D.N.Y. Jan. 24, 2006). The presumptive lead plaintiff must be appointed unless it is proven that the movant will not satisfy the typicality and adequacy requirements of Rule 23. *See Parker v. Hyperdynamics Corp.*, No. 4:12-999, 2013 U.S. Dist. LEXIS 21767, at *5-*6 (S.D. Tex. Feb. 19, 2013). "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, that plaintiff is entitled to lead plaintiff status . . ." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). Here, under any methodology, JCPIG possesses the "largest financial interest." *See* Second Puls Decl., Ex. B.

    However, in any action under the federal securities laws, the only relief recoverable is loss proximately caused by the defendant's fraud. *Dura Pharms.*, 544 U.S. at 338. Under *Dura*, all recoverable losses must stem from a cognizable cause. *See id.* at 342. On its own, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Id.* After all, there are many reasons, some innocent, for why a stock's price may drop. *Id.* at 343. As a result, a movant cannot calculate its loss by simply pointing to the amount by which the stock was overinflated on the date that it was purchased. *Id.* at 340 (rejecting the idea that "plaintiffs establish loss causation if they have shown that the price *on the date of purchase* was inflated because of a misrepresentation."). Instead, a movant's loss must be calculated by pointing to a decline in the stock's price linked to the correction of a prior misleading statement. *Id.* at 342, 347.

    The other movants' methodology for calculating their respective financial interests is

impermissible because it fails to connect the share price decline to corrective information. *See* Dkt. No. 21, Ex. C; Dkt. No. 27, Ex. D; Dkt. No. 28, Ex. B.  In calculating the claimed losses for Gestielle Obiettivo America Fund ("GOA")[11] and the Gestielle Obiettivo Internazionale Fund ("GOI")[12] (collectively, the "Funds"), Aletti has simply subtracted the average share price during the look-back period from the share price on the date of purchase.  Dkt. No. 28, Ex. B.  This method, in violation of *Dura*, includes loss unattributable to correction of a misrepresentation or omission.  *See Dura*, 544 U.S. at 346.  Aletti, on behalf of the Funds, attempts to claim a financial loss based on market losses explicitly *not recoverable* under *Dura.*  GOA claims losses of averaging more than $5.40 per share for the 30,000 shares it retained at the end of the class period, and GOI claims losses averaging more than $4.07 per share for the 110,000 shares it retained at the end of the Class Period even though the maximum relief recoverable under *Dura* is the $2.85 total per share price drop that followed the two partial corrective disclosures alleged.  Improperly, the Funds claim losses not recoverable under *Dura*, and, thus, beyond their "financial interest in the relief sought."

Courts have expressly disavowed the methodology employed by Aletti for the Funds and by the other movants, which account for losses beyond those directly attributable to the partial corrective disclosures.  *See K-V Pharm. Co. Sec. Litig.*, No. 4:11-1816, 2012 U.S. Dist. LEXIS 62161, at *11 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman v. Arena Pharms., Inc.*, No. 10-1959 BTM, 2011 U.S. Dist. LEXIS 87373, at *13 (S.D. Cal. Aug. 8, 2011)).  "[A]ny losses that [a plaintiff] may have incurred before [the] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation."  *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-01825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. March 2, 2007).  As a result, courts must "look only at those

---

[11] GOA is an open-end fund incorporated in Italy. http://www.bloomberg.com/quote/MEDAMER:IM.
[12] GOI is an open-end fund incorporated in Italy. http://www.bloomberg.com/quote/FDCINTL:IM.

4

recoverable losses caused by the alleged fraud-on-the-market when determining a lead plaintiff in a securities class action because the alleged misconduct could not cause losses suffered ***prior to that misconduct being revealed to the public***."   *Id.* (emphasis added); *see also Perlmutter v. Intuitive Surgical, Inc.*, No. 10-03451, 2011 U.S. Dist. LEXIS 16813, at *15 (N.D. Cal. Feb. 15, 2011) ("In determining the financial interests of potential lead plaintiffs some district courts decided, in light of *Dura*, not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud.").  Under the Supreme Court's clear precedent, the Funds (as well as the other movants) have failed to properly calculate and present a true measure of their financial interest in the relief sought in the litigation.  Under *Dura*, the total claimed loss of Aletti, the movant with losses closest to those of JCPIG, is approximately $316,260.00, far less than JCPIG's approximate total *Dura* loss of $605,270.00 and Mr. Webb's approximate individual *Dura* loss of $465,600.00.

In noted contrast, JCPIG calculated its financial interest by looking directly to *Dura* and the PSLRA.  None of JCPIG's losses were calculated by impermissibly assuming that all of its members' losses were attributable to J.C. Penney's misrepresentations and omissions.  Instead, under *Dura*, JCPIG linked its trading losses directly to stock declines that followed publication of information correcting alleged misleading statements made during the class period, *see Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011); *Dura*, 544 U.S. at 342, and has the largest properly calculated financial interest here.  *See generally, Espinoza*, 2013 U.S. Dist. LEXIS 6227, at *11 (appointing a lead plaintiff whose loss calculations were done using the *Dura* method); *Prefontaine v. Research In Motion Ltd.*, No. 11-4068, 2012 U.S. Dist. LEXIS 4238, at *9-*10 (S.D.N.Y. Jan. 5, 2012); *Shah v. GenVec, Inc.*, No. 8:12-00341, Order (D. Md. Apr. 26, 2012).

**B.**   **JCPIG Meets The Requirements Of Rule 23(a)**

In addition to having the "largest financial interest" among the lead plaintiff movants, JCPIG "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc).  At this stage, the

lead plaintiff movant must make only a *prima facie* showing that the adequacy and typicality requirements under Rule 23 have been met, *see In re Enron*, 206 F.R.D. at 442, which JCPIG has done. *See* JCPIG Motion at 11-13. JCPIG's claims are "typical" of the claims of the proposed class within the meaning of Rule 23(a)(3) because its claims arise from the same facts and course of conduct by defendants that gives rise to the other class members' claims and are based on identical legal theories. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Like other class members, JCPIG purchased J.C. Penney's shares when the prices were alleged to be artificially inflated due to defendants' false and misleading statements and suffered damages therefrom.

The adequacy requirement is satisfied when the lead plaintiff movant's interests are not antagonistic to those of the class, the movant has a sufficient interest in the outcome of the case to ensure that the movant will vigorously prosecute the action, and the movant selects competent counsel with experience prosecuting securities class action litigation. *See Schwartz v. TXU Corp.*, No. 3:02-2243, 2005 U.S. Dist. LEXIS 27077, at *50 (N.D. Tex. Nov. 8, 2005). As demonstrated by JCPIG members' sworn PSLRA-mandated certifications and their individual declarations, each is familiar with the duties of a lead plaintiff and class representative under the PSLRA and Rule 23, respectively, and is prepared to diligently discharge those duties. *See* Puls Decl., Ex. A; Second Puls Decl., Ex. A. The members of JCPIG have no interests antagonistic to the other class members and have a significant stake in the outcome of these Actions to ensure vigorous prosecution of the claims. Finally, JCPIG has retained qualified counsel. *See* Exs. D & E to Puls Decl. Therefore, JCPIG's adequacy is established to the extent necessary to support its appointment as Lead Plaintiff.

Moreover, JCPIG satisfies the requirements developed by the courts for a "group" to act as lead plaintiff under the PSLRA. *See In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2001 U.S. Dist. LEXIS 24270, at *19-*21. JCPIG's members moving for appointment as lead plaintiff as a "group" is expressly authorized under the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Universal*

*Access, Inc.*, 209 F.R.D. 379, 384 (E.D. Tex. 2002) ("Thus, the Court finds that selection of a group of persons to act as lead plaintiffs is entirely appropriate under the PSLRA"). Indeed, JCPIG has made the requisite showing through cognizable evidence "that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Sec. Litig.*, No. 07-7972, 2007 U.S. Dist. LEXIS 91418, at *6 (S.D.N.Y. Dec. 6, 2007) (noting that "[t]he issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may. But . . . there must be some evidence that the members of the group will act collectively and separately from their lawyers."). As shown in the separate sworn declarations submitted by each member, JCPIG is a small, cohesive group comprised of two investors who each have a significant financial interest in the litigation and have agreed: to prosecute these Actions together; to consult with each other and counsel regarding the prosecution of this litigation; how they will share information; how they will manage the litigation and oversee counsel as a group; and how decisions will be made and executed. *See* Ex. A to Second Puls Decl. Thus, JCPIG fulfills the two concerns - cohesiveness and manageability – expressed by courts when appointing group as lead plaintiff. *See, e.g., Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605, 2000 U.S. Dist. LEXIS 16712, at *13-*14 (D.N.J. Nov. 16, 2000).

### C. The Other Motions Should Be Denied

The other movants have total claimed losses considerably less than JCPIG, and therefore, are not the "most adequate plaintiff." Indeed, the inquiry should end there, and the motions filed by the Saso Group, the Aguilar Group, Aletti, Ifantides, and Pension should be denied. That said, as to Aletti, the movant claiming losses closest to those claimed by JCPIG, even if Aletti's claimed losses exceeded those of JCPIG, which they do not, there are strong reasons why the Aletti Motion should be denied.

Pursuant to the PSLRA, the class member appointed to lead this litigation must satisfy the requirements of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The PSLRA expressly acknowledges that

the presumption of "most adequate plaintiff" may be rebutted by "proof" that the lead plaintiff movant "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). Where a lead plaintiff movant may be subject to unique defenses which will not only distract it from adequately prosecuting this litigation on behalf of the class but may endanger the claims of the entire class, the application should be rejected. *See, e.g., Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003) ("It is difficult to see how Union, if appointed lead plaintiff, would be able to avoid devoting a large portion of its time and efforts to proving it is not subject to the unique defense of lack of subject matter jurisdiction.")

### 1. Aletti Is Subject To Disabling Unique Defenses

#### a. Aletti Lacks Any Financial Interest In This Litigation

Pursuant to the PSLRA, the financial "interest" in the relief sought is a primary principle underlying the lead plaintiff provisions. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Fed. R. Civ. P. 17(a) further requires that claims be brought in the name of the "real party in interest." In contrast to these fundamental requirements, investment managers such as Aletti have no financial stake in litigation. Aletti has not offered any evidence that it purchased and retained any J.C. Penney shares for its own account.[13] Indeed, Aletti, the actual entity seeking appointment, concedes that Aletti itself suffered no loss from investment in J.C. Penny stock ("Gestielle Funds … suffered a substantial loss due to Defendants' alleged fraud.") Aletti Motion at 9. Because Aletti did not itself suffer a loss from investment in J.C. Penney stock, Aletti is ineligible to recover any damages in this litigation, and thus, because Aletti appears not to have been the entity that actually purchased and retained J.C. Penny shares for its own account, Aletti has no standing to bring a securities action here. *W. R. Huff Asset*

---

[13] Aletti is a privately owned investment manager, primarily managing equity, fixed income, and balanced mutual funds for its clients. The firm makes its investments in the public equity and public fixed income markets across the world. It employs quantitative analysis to make its investments. Aletti is based in Milan, Italy. *See* http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=27083939.

8

*Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110-11 (2d Cir. 2008) (an investment manager that has discretionary authority to make investment decisions on its clients' behalf and the power of attorney to file suit on its clients' behalf, but does not have actual ownership or title to the claim itself, lacks constitutional standing to bring a securities action in a representative capacity on behalf of those whose funds it manages); *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, No. 2:10-02483, 2011 U.S. Dist. LEXIS 44822, at *5 (E.D. Cal. Apr. 14, 2011) ("MVPAM's status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its client['s] investment decisions does not confer on [MVPAM] Article III standing to sue in a representative capacity on its client['s] behalf.").[14] Furthermore, Aletti's apparent lack of a direct ownership is supported by its concession that it was the Funds, and not Aletti, that "suffered a substantial loss due to Defendants' alleged fraud." Aletti Motion at 9. Indeed, there is a serious question as to whether Aletti has any motivation to vigorously prosecute the claims of the class when it appears not even to be a member, thus rendering it an unsuitable lead plaintiff.[15] Accordingly, Aletti is subject to unique

---

[14] *Baydale v. Am. Express Co.*, No. 09-3016, 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. Aug. 14, 2009) (refusing to appoint a foreign money manager because its standing problems "can be circumvented at this early stage by selecting another lead plaintiff"); *In re Tyco Int'l, Ltd.*, 236 F.R.D. 62, 73 (D.N.H. 2006) (declining to appoint investment advisor as class representative because it could not allege it was directly injured by defendants' conduct and therefore could not establish Article III standing); *Bhojwani v. Pistiolis*, No. 06-13761, 2007 U.S. Dist. LEXIS 52139, at *18-*21 (S.D.N.Y. June 26, 2007), *modified*, 2007 U.S. Dist. LEXIS 96246, at *7-*9 (S.D.N.Y. July 30, 2007) (proposed lead plaintiffs' identification of himself as trustee and claim to authority over trust accounts alone insufficient to establish authority to claim losses of trusts); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (holding that an investment manager was not "most adequate plaintiff" because, *inter alia*, it did not buy shares "for its own account"); *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (holding that an investment advisor lacks standing to claim client's financial interest); *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 573, 580 (D.N.J. 2001) (finding that plaintiff whose actual stock ownership was in question lacked standing to assert claims on behalf of shareholders); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (denying investment advisors' motion).
[15] The signatory on the Aletti Certification (Francesco Betti) is a General Manager of Aletti, who claims to be "fully authorized to enter into and execute this Certification on behalf of Aletti." *See* Dkt. No. 28-1 at ¶1, Ex. A to Declaration of Thomas R. Ajamie. However, there is no evidence that Mr. Betti is authorized, on his own or otherwise, to speak for the Funds or their respective investors or authorized to initiate litigation in Italy or abroad for the Funds and/or their respective investors.

defenses relating to standing and subject matter jurisdiction which will undoubtedly be exploited by defendants' counsel. *See Bank One*, 96 F. Supp. 2d at 784 (finding that a foreign investment advisor could not be appointed lead plaintiff because it "is simply not a buyer for its own account, standing instead in the place of whatever number of investors are participants in its managed fund").

Even if Aletti had the authority to bring and prosecute this action on behalf of the Funds and their customers, recover money for them, make decisions on their behalf, and bind all of those parties to its actions in this case, its failure to document this authority or provide proof that the Funds or their respective investors even know about this litigation or the Aletti Motion is fatal to Aletti's appointment as lead plaintiff. *See Smith v. Suprema Specialties, Inc*., 206 F. Supp. 2d. 627, 635 (D.N.J. 2002) (held that an investment manager cannot be appointed lead plaintiff "without proper authorization" from its clients).[16]

### i. If Aletti Is Appointed Lead Plaintiff Any Decision In This Court May Not Be Binding

The basic premise of the class action device is to resolve in one litigation, whether successful or unsuccessful, the claims of all member of the putative class. However, Aletti's and the Funds' foreign citizenship may render that purpose unobtainable because the judgment in this action may not even be binding on Aletti or the Funds. Foreign nations do not always recognize the finality of a class action judgment in the United States.[17] The potential that such issues could arise have led courts to

---

[16] *See also In re Cardinal Health Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (failure to provide proof that one is acting as attorney-in-fact in bringing suit subjects one to unique defense); *Weisz v. Calpine Corp.*, No. 02-1200, 2002 U.S. Dist. LEXIS 27831, at *22 (N.D. Cal. Aug. 19, 2002) (failure of proposed lead plaintiff to provide evidence that it is authorized to bring suit renders it inadequate); *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-870 , 2002 U.S. Dist. LEXIS 27690, at *56-*57, *60 (S.D. Cal. Oct. 9, 2002) (failure to provide authority to sue was fatal to appointment).

[17] *See* Russell J. Weintraub, *How Substantial is Our Need for a Judgments-Recognition Convention and What Should We Bargain Away to Get It?*, 24 BROOK. J. INT'L L. 167, 167–68 (1998) ("most foreign courts are skeptical of U.S. judgments, reviewing them carefully and frequently denying enforcement of these judgments on public policy grounds and while a class judgment may preclude absent class members from suing again in another U.S. court, the same judgment likely would not preclude absent foreign class members from suing again in the courts of their home countries).

refuse to appoint foreign lead plaintiffs. For example, in *Royal Ahold*, 219 F.R.D. 343, the Court rejected the appointment of two movant groups despite their large financial interests partly because of those groups' involvement with foreign movants. *Id.* at 353-55. Instead, the court looked to the movant with the third largest financial interest because it was not subject to the jurisdictional obstacles that affected the foreign investment advisors. *Id.* The Court held that there was "no question of the *res judicata* effect of a judgment in favor of *Royal Ahold* on [them] as domestic plaintiffs." *Id.* at 355.

Indeed, significant doubt exists as to whether the appropriate authorities in Italy would recognize and enforce any judgment in this litigation.[18] In *Bersch*, the Second Circuit recognized that the courts in England, Germany, Switzerland, Italy, and France would not afford preclusive effect to a United States judgment in favor of defendants as a bar to an action by their own citizens. *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996-97 (2d Cir. 1975). The *Bersch* court directed the district court to "eliminate from the class all purchasers other than persons who were residents or citizens of the United States." *Id.*[19]

Thus, because Aletti might be able to litigate this action, lose and challenge the judgment in an Italian court or other forum available in Italy subjects Aletti to the argument from Defendants at the class certification stage that Aletti is atypical and not an appropriate class representative, an argument,

---

[18] *See* Yuliya Zeynalova, *The Law on Recognition and Enforcement of Foreign Judgments: Is It Broken And How Do We Fix It?* BERKELEY J. OF INT'L LAW, Vol. 31, Issue 1 (2013) ("While in the United States there is a presumption against reviewing the foreign judgment on its merits, different countries [including Italy] will—to varying degrees—review the original [United States] action de novo, making the prior resolution of the dispute ineffective in the foreign forum.")

[19] Even courts that have allowed foreign investors to serve as lead plaintiffs have required United States residents as co-lead plaintiffs. *See, e.g.*, *Freudenberg v. E*Trade Fin. Corp.*, No. 07-8538, 2008 U.S. Dist. LEXIS 62767, at *21-*22 (S.D.N.Y. July 16, 2008); *In re Cable & Wireless*, 217 F.R.D. 372, 374 (E.D. Va. 2003) (faced with competing foreign and domestic investors for appointment of lead plaintiff, the court took a compromise approach and appointed a foreign pension fund together with a domestic individual investor as co-lead plaintiffs); *Bell v. Ascendant Solutions, Inc.*, No. 3:01-0166, 2002 U.S. Dist. LEXIS 6850, at *16-*17 (N.D. Tex. Apr. 17, 2002) ("the inclusion of one foreign corporation, one foreign individual, and one United States resident, helps create balance among the demographics of the lead plaintiff group members, and improves diversity of experience."). *See also Olsen v. New York Cmty Bancorp., Inc.*, 233 F.R.D. 101, 109 (E.D.N.Y. Aug. 9, 2005); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 573, 577 (D.N.J. 2003).

11

which, if successful, could prevent a class from being certified with Aletti as the proposed representative, a circumstance which would seriously jeopardize the interests of all members of the putative class here. Defendants' ability to use the risk of there being no *res judicata* effect of any judgment to combat Aletti's appointment as a class representative at the class certification stage of this litigation subjects Aletti to yet another unique defense that makes Aletti incapable of adequately representing the class and, thus, an inappropriate entity to be appointed as a lead plaintiff.[20]

### ii. Aletti's Foreign Location Renders It Inadequate

Furthermore, Aletti's appointment would subject the entire class to unnecessary difficulties and expense posed by being located in Italy. For instance, highly complex issues may well arise regarding what law governs the ownership of any recovery, the right to sue, and the right to compel discovery. Resolution of these issues will require expensive experts on foreign law that may not provide conclusive guidance to benefit the Court. Additionally, it is axiomatic that conducting discovery in a foreign country poses difficult and complex obstacles which will unnecessarily complicate this matter and burden the class. *See Gould, Inc. v. Pechiney Ugine Kuhlmann*, 947 F.2d 218, 219-20 (6th Cir. 1991) (foreign sovereign immunity would be lost if a foreign state is subjected to burdensome discovery without a prima facie showing of jurisdiction); *In re Daimler Chrylser AG Sec. Litig.*, 216

---

[20] *See Buettgen v. Harless*, 263 F.R.D. 378, 382-83 (N.D. Tex. 2009) ("But, because Aldan AG is a Swiss entity, it may be 'subject to unique defenses that render' it 'incapable of adequately representing the class.'" Specifically, there is a 'risk that foreign courts would not give the Court's judgment res judicata effect.' Thus, entrusting Aldan AG with the responsibility of prosecuting a case where the lead plaintiff might be plagued with res judicata issues jeopardizes the interests of the entire class if Defendants' res judicata arguments prevail. Thus, Aldan AG is not the most adequate plaintiff."); *see also In re Vivendi Univ'l., S.A. Sec. Litig.*, No. 02-5571, 2009 U.S. Dist. LEXIS 31198, at *20 (S.D.N.Y. Mar. 31, 2009) (after analyzing expert affidavits on foreign law, the Court concluded German and Austrian courts were unlikely to give *res judicata* effect to a judgment entered in this case."); *Borochoff v. GlaxoSmithKline* PLC, 246 F.R.D. 201, 204-05 (S.D.N.Y. 2007) (refusing to appoint a German as lead plaintiff because German courts would not give preclusive effect to a United States class action judgment); *In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (refusing to certify a German plaintiff as a class representative or include the claims of German investors in a class because the unique defenses faced by German investors made "the adjudication of German . . . shareholders' claims in this class action [ ] not necessarily superior.").

F.R.D. 395, 398 (E.D. Mich. 2003) ("no doubt obtaining under the Hague Evidence Convention is more difficult and expensive than obtaining discovery within the United States"). Therefore, if Italy refuses to permit the requisite discovery of Aletti, the Funds, and its affiliates, either because such discovery is not available in Italy, because of hostility foreign authorities may have to American-style pretrial discovery, or because of any applicable domestic secrecy laws (which may or may not be voluntarily circumvented by a party), the ability of Aletti to represent a class will be severely impaired. *See, e.g., Hood v. Smith's Transfer Corp.*, No. 98-5917, 1999 U.S. App. LEXIS 20959, at \*12-\*13 (6th Cir. Aug. 26, 1999) (reviewing denial of class certification (and dismissal of action) as sanction for failure of plaintiff to comply with discovery). Moreover, differences between the U.S. and Italian legal systems and language difficulties will further complicate the litigation and Aletti's ability to adequately prosecute the litigation on behalf of the class.

Also, Aletti, with its operations in Italy, is distant from this District, making it unnecessarily onerous should appearance of the lead plaintiff in this District become necessary or beneficial to further the interests of the class. In *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999), the Court recognized the practical problems associated with appointing foreign investors and refused to appoint two European foreign investors as lead plaintiff. In *Network*, the court ruled that "the distances involved and some differences in business culture would impede their ability to manage and control American lawyers conducting litigation in California." *Id.* at 1030.

### iii. Aletti's Trading May Render It Atypical

Additionally, the Aletti Motion should be denied because the manner in which Aletti trades ("It employs quantitative analysis to make its investments", *see* http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=27083939)[21]

---

[21] *See* http://www.investopedia.com/terms/q/quantitativeanalysis.asp ("A business or financial analysis technique that seeks to understand behavior by using complex mathematical and statistical modeling, measurement and research").

13

subjects Aletti to another unique defense that make it incapable of adequately representing the class. *See Gamco Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 101-02 (S.D.N.Y. 2013) ("Here, Plaintiffs did not rely on the inflated market price of Vivendi ADS's as an 'unbiased assessment of [their] value[.]' By the same token, it cannot be said that but for Vivendi's misstatements and omissions about its liquidity condition, Plaintiffs would not have transacted in Vivendi ADS's. . . . Accordingly, it is more likely than not that . . . Plaintiffs did not 'rely on the market price of [Vivendi] securities as an accurate measure of their intrinsic value.' Vivendi has therefore carried its burden and rebutted the fraud on the market presumption.").[22]

Therefore, even if Aletti (on behalf of the Funds) is allowed to prosecute the claims here as lead plaintiff, the unique defenses to which it is subject will most certainly become a major focus of the litigation, an unnecessary distraction, and, thus, disabling, rendering Aletti both inadequate and atypical. *See, e.g., In re Bally Total Fitness Sec. Litig.*, No. 04-3530, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask [] whether [a proposed lead plaintiff] is likely to be 'subject to [a] unique defense . . . [and] we do not have to determine that the defense is likely to succeed.").[23] Thus, Aletti is both inadequate and atypical, and the Aletti Motion

---

[22] *See also Applestein v. Medivation, Inc.*, No. 10-00998, 2010 U.S. Dist. LEXIS 98255, at *10 (N.D. Cal. Sept. 17, 2010) ("It is sufficient . . . to raise serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions"); *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-2204, 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 4, 2008) ("Such a . . . trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price"); *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (on class certification, the court found a trader's particular trading subjected him to unique defenses because he purchased stock regardless of the fraudulent omissions); *In re Carreker Corp. Sec. Litig.*, No. 3:03-0250, 2003 U.S. Dist. LEXIS 25988, at *8 (N.D. Tex. Aug. 14, 2003) (court refused to appoint movant because incredible effort and expense would be incurred to determine if he was subject to the unique defense).

[23] Further, whether Aletti would defeat this defense or not on the merits does not make it any less a substantial and cognizable "unique defense" under 15 U.S.C. §78u 4(a)(3)(B)(iii)(II). *See In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 480-81 (S.D.N.Y. 2002) ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation"; "Moreover, a unique defense need not be proven in order to defeat class certification."); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (same).

should be denied.

### 2. Aletti's and Pension's Institutional Investor Status Has No Effect Here

"A plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest." *Mohanty v. BigBand Networks, Inc.*, No. 07-5101, 2008 U.S. Dist. LEXIS 32764, at *17-*18 (N.D. Cal. Feb. 14, 2008); *see also Cavanaugh*, 306 F.3d at 730 n.20.[24] Thus, because Pension and Aletti do not have the "largest financial interest" here, and because Aletti suffers from a number of disabling unique defenses, their institutional status is irrelevant.

## II. JCPIG's Selection Of Counsel Should Be Approved

This Court should approve JCPIG's selection of Brower Piven as Lead Counsel and Puls & Liebrecht as Liaison Counsel. *See* JCPIG Motion at 13-14.[25]

## CONCLUSION

For all of the foregoing reasons, JCPIG respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of Brower Piven as Lead Counsel and Puls & Liebrecht as Liaison Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

---

[24] *See also In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-177, 2007 U.S. Dist. LEXIS 66258, at *39-*40 n.15 (D.N.J. Sept. 6, 2007) ("the PSLRA does not afford institutions a preference over other movants with greater financial losses."); *Tanne v. Autobytel*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) ("there is no per se rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation."); *In re American Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200, at *7 (E.D. Pa. June 3, 2004); *Steiner v. Aurora Foods, Inc.*, No. 00-602, 2000 U.S. Dist. LEXIS 20341, at *14-*15 (N.D. Cal. June 5, 2000); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821 (N.D. Ohio 1999).

[25] Defendants have filed a response to the pending lead plaintiff motions, Dkt. No. 36, requesting that any order appointing lead plaintiff and lead counsel provide that Defendants may rely on, as binding on all plaintiffs' counsel so appointed, agreements made with any one firm appointed, whether as lead or liaison counsel. It is respectfully submitted that any order in this regard should be contained in a case management order or stipulation addressing the process after a lead plaintiff is appointed.

Dated: December 20, 2013 Respectfully Submitted,

**PULS & LIEBRECHT, P.C.**

  /s/  W. Kelly Puls
W. Kelly Puls
State Bar No. 16393350
*Attorney-in-charge*
1407 Texas Street, Ste. 102
Fort Worth, Texas 76102
Telephone: (817) 338-1717
Facsimile: (817) 332-1333
Email: kpuls@pulslaw.com

*Counsel for JCPIG and*
*Proposed Liaison Counsel for the Class*

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower (*pro hac vice* to be filed)
475 Park Avenue South, 33rd Floor
New York, New York 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
Email: brower@browerpiven.com

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven (*pro hac vice* to be filed)
1925 Old Valley Road
Stevenson, MD 21153
Telephone: (410) 332-0030
Facsimile: (410) 685-1300
Email: piven@browerpiven.com

*Counsel for JCPIG and*
*Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that this Memorandum In Further Support Of The Motion Of The J.C. Penney Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice Of Counsel; the Declaration of W. Kelly Puls In Further Support Of The Motion Of The J.C. Penney Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice Of Counsel (with Exhibits A-B); and [Proposed] Order Appointing Lead Plaintiff And Approving Proposed Lead Plaintiff's Choice Of Counsel were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and electronically sent to those indicated as non-registered participants on December 20, 2013.

                                                                                                                               /s/ W. Kelly Puls
                                                                                                                               W. Kelly Puls