# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANASTACIA SHAFFER, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:13-CV-1684-N |
| DIGITAL GENERATION, INC., *et al.*, | § § § | |
| Defendants. | § | |

# ORDER

This Order addresses plaintiffs Ali Alavi and Robert M. Lowinger's competing motions for appointment as lead plaintiff in a securities class action. Because of serious concerns with Alavi's typicality and susceptibility to unique defenses, the Court grants Lowinger's motion for appointment as lead plaintiff and denies Alavi's motion for appointment as lead plaintiff. Additionally, the Court approves Lowinger's selection of lead counsel but rejects Lowinger's selection of liaison counsel.

## I. BACKGROUND OF THE SECURITIES CLASS ACTION

Plaintiffs seek recovery for Digital Generation, Inc. ("Digital Generation") securities purchased or otherwise acquired between June 20, 2011 and February 19, 2013 (the "Class Period"). Digital Generation is a Delaware Corporation with its executive office located in Irving, Texas.

According to plaintiffs' complaint, Digital Generation shares dropped in value by $2.53, or 28 percent, per share on February 19, 2013, after Digital Generation announced it

ORDER – PAGE 1

would take significant impairments to online and television assets. Plaintiffs claim they relied on Digital Generation's public statements – including its quarterly financial statements – when they purchased shares in the company. Plaintiffs argue that these statements were materially false and misleading and that the subsequent impairments caused Digital Generation securities to lose value, causing the plaintiffs' loss.

Plaintiff Anastacia Shaffer filed a complaint on behalf of herself and all similarly situated plaintiffs on May 2, 2013. The complaint seeks recovery under Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 promulgated under Section 10(b). On July 1, 2013, two members of the putative class – Plaintiffs Ali Alavi and Robert M. Lowinger – timely filed competing motions for appointment as lead plaintiff and for approval of lead and liaison counsel. *See* Alavi Mot. for Appointment as Lead Pl. [10]; Lowinger Mot. for Appointment as Lead Pl. [7].

## II. THE STANDARD FOR APPOINTING LEAD PLAINTIFF

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the process of appointing a lead plaintiff and approving lead counsel. 15 U.S.C. § 78u-4(a)(3)(B). Under the PSLRA, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." *Id.* § 78u-4(a)(3)(B)(I).

"In choosing the lead plaintiff, 'the court shall adopt a presumption that the most adequate plaintiff . . . is the person or the group of persons that 1) has filed the complaint or moved to be lead plaintiff;' 2) has 'the largest financial interest in the relief sought by the

class'; and 3) 'otherwise satisfies the requirement of Rule 23 of the Federal Rules of Civil Procedure.'" *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010) (footnote omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). There are four requirements for class representatives under Rule 23, but only typicality and adequacy of representation are relevant to designate the lead plaintiff under the PSLRA. *See In re Oxford Health Plans, Inc. Sec. Litig.* (*Oxford I*), 182 F.R.D. 42, 49 (S.D.N.Y. 1998). "[W]hether the movant with the largest financial losses satisfies the typicality and adequacy requirements" is a threshold determination that "should be a product of the court's independent judgment." *In re Cedant Corp. Litig.*, 264 F.3d 201, 263 (3rd Cir. 2001).

This presumption may be rebutted by another member of the purported plaintiff class "only upon proof . . . that the presumptively most adequate plaintiff – (aa) will not fairly and adequately represent the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This determination is very similar to the Rule 23 initial determination of adequacy and typicality – the notable difference is that other plaintiffs attempting to rebut the presumption may now present evidence that challenges the court's initial determination of typicality and adequacy.[1] *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). If a

---

[1]The court in *Cavanaugh* provides an in-depth explanation of the difference between the initial determination of adequacy and typicality and whether the presumption of most adequate plaintiff is rebutted:

> At first glance, it may seem incongruous to allow other plaintiffs to present evidence casting doubt on the determination just made by the district court that the presumptive lead plaintiff satisfies Rule 23's adequacy and typicality

ORDER – PAGE 3

competing plaintiff successfully rebuts the presumption, the court then applies the presumption to the plaintiff with the next largest financial interest in the litigation who either filed the complaint or moved to be lead plaintiff and who can make a prima facie showing under Rule 23's adequacy and typicality requirements. *See In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006).

### III. THE PROPER LEAD PLAINTIFF UNDER THE PSLRA IS LOWINGER, NOT ALAVI

#### A. Alavi is Not the Most Adequate Plaintiff Because of the Amount of High-Volume Trading He Did During the Class Period

The Court finds that Alavi timely moved for appointment as lead plaintiff, Alavi has the largest financial interest in the litigation,[2] and Alavi has made a prima facie showing of

---

> requirements, but the apparent incongruity is easily resolved: At step two of the process, when the district court makes its initial determination [of the presumptively most adequate plaintiff], it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims. At the third stage [of determining whether the presumption has been rebutted], the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy. The district court may need to hold an evidentiary heading, and to make a renewed determination of typicality and adequacy.

306 F.3d at 730–31.

[2]In his motion, Alavi claims that he (1) purchased 1,371,548 shares of Digital Generation common stock during the Class Period; (2) retained 232,602 shares of Digital Generation shares at the end of the Class Period; (3) expended $14,328,830 on purchases of Digital Generation shares during the Class Period; and (4) suffered a loss of $575,246 on Digital Generation shares during the Class Period. *See* Mem. in Supp. of Alavi Mot. 6 [11]. Lowinger reports a loss of only $52,025 on Digital Generation shares during the Class Period and does not dispute Alavi's reported larger loss. *See* Seidman, Jr. Decl. Ex. C [9]; Mem. in Further Supp. of Lowinger Mot. at 1 [29].

typicality and adequacy.³ Thus, Alavi is the presumptively most adequate plaintiff. But this presumption is rebutted by the significant amount of apparent day trading engaged in by Alavi.

Being a day trader does not automatically disqualify someone from being the lead plaintiff. *See Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. 2008). But "a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even the integrity of the stock price itself." *Id.* (citing *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003)); *see also Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289 (N.D. Cal. 2008) (holding that even if the court assumed that a particular plaintiff was the presumptive lead plaintiff, evidence of the plaintiff's high volume day trading – over 5,000 trades, with an average of 19 trades a day, during a nine-month period – rebutted the presumption because the plaintiff "may be subject to a unique defense regarding its reliance upon publicly available information"); *Applestein v. Medivation Inc*, 2010 WL 3749406 (N.D. Cal. 2010) (holding that the presumption of most adequate plaintiff was rebutted due to the court having "serious concerns about [the plaintiff's] typicality and about his susceptibility to the defense that he

---

³Based on Alavi's motion for appointment as lead plaintiff, Alavi satisfies the initial determination of typicality. Alavi's claims appear to be typical, if not identical, to other class members and the circumstances surrounding Alavi's claims, as represented in Alavi's motion, seem markedly similar to other class members. Alavi also appears to be able to adequately represent the purported class – Alavi has the ability and incentive to represent the claims of the class vigorously, he has retained adequate counsel, and there is no conflict with Alavi's claims and those asserted on behalf of the class. *See generally Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *In re XM Satellite Radio Holdings*, 237 F.R.D. at 18.

ORDER – PAGE 5

was trading in response to information other than the alleged misstatements and omissions made" because of the plaintiff's frequent trading – 407 trades over a 644-day period, with as many as 44 trades in a single day). *But see In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 354 (D. Md. 2003) (rejecting the argument that a presumptive lead plaintiff was atypical because of its status as a day trader, reasoning that "where false information and misleading omissions pollute the market, all types of investors are injured" (citing *In re Oxford Health Plans, Inc. Sec. Litig.* (*Oxford II*), 199 F.R.D. 119, 124 (S.D.N.Y. 2001))).

Alavi's transaction history indicates that he engaged in over 800 trades of Digital Generation stock during a 266-day window within the Class Period, making as many as 55 transactions in a single day. *See* Mem. in Supp. of Alavi Mot. Ex. B [11]. Alavi argues that such activity is not evidence that Alavi is a day trader because "[i]t is not always possible to trade entire blocks of shares either on a purchase or sale, and thus shares must be broken into smaller amounts of otherwise layered over several days." Mem. in Further Supp. of Alavi Mot. 5 [28]. The presumptive lead plaintiffs made similar arguments in *Eichenholtz* and *Applestein*, but the courts in each case ultimately concluded that the presumption of most adequate plaintiff had been rebutted. *See Eichenholtz*, 2008 WL 3925289, at *10–11; *Applestein*, 2010 WL 3749406, at *3. It is not necessary for this Court to label Alavi a day trader to find that the presumption of most adequate plaintiff has been rebutted. It is enough that Alavi's high volume trading activity, including buying and selling Digital Generation stock on the same day, raises serious concerns about his typicality and his susceptibility to

unique defenses. Thus, Lowinger successfully rebuts the presumption that Alavi is the most adequate plaintiff.

### B. Lowinger, as the Plaintiff with the Next Largest Financial Interest in the Litigation, is the Most Adequate Plaintiff

The Court finds that Lowinger timely moved for appointment as lead plaintiff, Lowinger has the next largest financial interest in the litigation,[4] and Lowinger has made a prima facie showing of typicality and adequacy.[5] Thus, as the presumption in favor of Alavi has been rebutted, Lowinger meets the requirements to trigger the presumption in his favor. Because there is no challenge to the presumption that Lowinger is the most adequate plaintiff, the presumption stands and the Court appoints Lowinger as lead plaintiff.

### IV. APPOINTMENT OF COUNSEL

The PSLRA states that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." *Gluck*, 976

---

[4] As previously mentioned, Lowinger reports a loss of $52,025 on Digital Generation shares during the Class Period. *See* Seidman, Jr. Decl. Ex. C [9]. No other plaintiff besides Alavi has reported a larger loss to the Court.

[5] The initial typicality and adequacy analysis for Lowinger does not differ from Alavi's: Lowinger satisfies the typicality requirement – Lowinger's claims appear to be typical, if not identical, to other class members and the circumstances surrounding Lowinger's claims seem markedly similar to other class members. Lowinger also is able to adequately represent the purported class – Lowinger has the ability and incentive to represent the claims of the class vigorously, he has retained adequate counsel, and there is no conflict with Lowinger's claims and those asserted on behalf of the class. *See generally Gluck*, 976 F. Supp. at 546; *In re XM Satellite Radio Holdings*, 237 F.R.D. at 18.

F. Supp. at 550; *see also Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[L]ike the Third Circuit, we hold that if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). But, "the Court has discretion to decline to appoint the candidate proposed by lead plaintiff when warranted to protect the interests of the class." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 297 (S.D.N.Y. 2010).

The lead counsel proposed by Lowinger is the law firm Bernstein Liebhard LLP ("Bernstein Liebhard"). The Court can discern no reason to upset Lowinger's selection for lead counsel.

Lowinger's proposed liaison counsel causes more concern. In complex litigation cases, liaison counsel are

> [c]harged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. *Liaison counsel will usually have offices in the same locality as the court.* The court may appoint (or the parties may select) a liaison for each side, and if their functions are strictly limited to administrative matters, they need not be attorneys.

MANUAL FOR COMPLEX LITIGATION ("MCL" ) § 10.221 (4th ed. 2004) (emphasis added). The proposed liaison counsel, The Bilek Law Firm, L.L.P. ("Bilek Law"), does not have an office in Dallas or even in the Northern District of Texas. The administrative acts described in the MCL are typically best accomplished by a local firm. As such, the Court instructs Bernstein Liebhard to recommend a law firm with an office in the Dallas Division of the

ORDER – PAGE 8

Northern District of Texas to be appointed as liaison council to perform the type of duties as outlined above by the MCL. Bernstein Liebhard must also submit, along with such recommendation, a proposed fee agreement with the recommended liaison counsel (which may be filed under seal).

If Lowinger or Bernstein Liebhard wish for Bilek Law to do substantive work on this case, the Court will certainly consider appointing Bilek Law as co-lead counsel. For such consideration to take place, Berstein Liebhard should submit a proposal on compensation (which may be filed under seal) and the division of labor to the Court. But both law firms are put on notice that this Court will not approve an award of fees for duplicative services or unnecessary billing. *See Oxford I*, 182 F.R.D. at 50 (appointing co-lead counsel "with the understanding that there shall be no duplication of attorney's services and that the use of co-lead counsel will not in any way increase attorney's fees and expenses"); *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013 (S.D.N.Y. 2002) ("Since the statute limits attorneys' fees and expenses to 'a reasonable percentage of the amount of any damages and pre-judgment interest actually paid to the class,' this Court shall not approve of any award of fees where it appears that the firms engaged in duplicative or unnecessary billing." (quoting 15 U.S.C. § 77z-1(a)(B)(vi)(6))).

Lastly, Bernstein Liebhard is directed to confer with counsel for defendants and submit an agreed proposed scheduling order. If the parties cannot reach an agreement, then each side must submit its separate proposals.

ORDER – PAGE 9

## Conclusion

For the reasons stated above, the Court grants Robert M. Lowinger's motion for appointment as lead plaintiff and denies Ali Alavi's motion for appointment as lead plaintiff. Bernstein Liebhard LLP is appointed lead counsel.

The Court orders Bernstein Liebhard to submit within thirty days of the date of this Order: (1) an agreed proposed scheduling order (or, if no agreement can be reached, separate proposals), and (2) a recommendation for liaison counsel with an office in the Dallas Division of the Northern District of Texas and a proposed fee agreement. Additionally – also due within the same thirty days – the Court will consider, if desired, (3) a proposal from Bernstein Liebhard regarding Bilek Law Firm, L.L.P.'s doing substantive work in this case as co-lead counsel.

Signed September 19, 2013.

_____
David C. Godbey
United States District Judge