**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| | § | |
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated, | § | Case No.: 6:13-cv-00736-KNM |
| | § | |
| | § | Magistrate Judge K. Nicole Mitchell |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

*Captions Continue on Next Page*

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
ALETTI GESTIELLE SGR S.P.A. FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF SELECTION OF LEAD COUNSEL,
AND IN OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS**

| | | |
|---|---|---|
| ERHAN ERDEM, Individually and on Behalf of All Other Persons Similarly Situated, | § § § | Case No.: 6:13-cv-00750-KNM |
| | § | Magistrate Judge K. Nicole Mitchell |
| Plaintiff(s), | § § | |
| vs. | § § | |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | § § § § | |
| Defendants. | § § | |
| | § | |
| SHAWN GILBERT, Individually and on Behalf of All Others Similarly Situated, | § § | Civil Action No.: 6:13-cv-00810-KNM |
| | § | Magistrate Judge K. Nicole Mitchell |
| Plaintiff, | § § | |
| vs. | § § | |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | § § § § | |
| Defendants. | § § | |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................... 2

ARGUMENT................................................................................................................. 3

I.      ALETTI HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION ......... 3

II.     ALETTI SATISFIES THE REQUIREMENTS OF RULE 23 ......................................... 6

III.    ALL OTHER MOTIONS SHOULD BE DENIED ........................................................... 9

CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bo Young Cha v. Kinross Gold Corp.*,
  No. 12 Civ. 1203(PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012)...................................4

*In re BP, plc Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................................9

*In re Carreker Corp. Sec. Litig.*,
  No. 3:03-CV-0250-M, 2003 U.S. Dist. LEXIS 25988 (N.D. Tex. Aug. 14, 2003)................11

*In re Enron Corp. Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002)..................................................................................8, 9, 10

*Feyko v. Yuhe Int'l Inc.*,
  No. CV 11-05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) ......................................7

*Hohenstein v. Behringer Harvard REIT I, Inc.*,
  No. 3:12–CV–3772–G, 2012 WL 6625382 (N.D. Tex. Dec. 20, 2012)...................................6

*Hufnagle v. Rino Int'l Corp.*,
  No. CV 10–8695–VBF, 2011 WL 710704 (C.D. Cal. Feb. 14, 2011) ......................................7

*In re Kosmos Energy Ltd. Sec. Litig.*,
  No. 3:12-cv-373-B, 2012 WL 6199318 (N.D. Tex. Nov. 1, 2012) ......................................6, 9

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009) .....10, 11

*In re Netflix, Inc., Sec. Litig.*,
  No. 12–0225 SC, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .............................................5

*In re Oxford Health Plans, Inc., Sec. Litig.*,
  182 F.R.D. 42 (S.D. Ohio 1998) .............................................................................................7

*Parker v. Hyperdynamics Corp.*,
  No. 4:12–CV–999, 2013 WL 623164 (S.D. Tex. Feb. 19, 2013).............................................6

*Ross v. Abercrombie & Fitch Co.*,
  No. 2:05-CV-819, 2007 WL 895073 (S.D. Ohio Mar. 22, 2007)...........................................11

*Sakhrani v. Brightpoint, Inc.*,
  78 F. Supp. 2d 845 (S.D. Ind. 1999) .......................................................................................4

*In re Superior Offshore Int'l, Inc. Sec. Litig.*,
   No. H-08-0687, 2008 WL 2148745 (S.D. Tex. May 20, 2008)........................................4, 5, 8

*In re Surebeam Corp. Sec. Litig.*,
   No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)..................................7

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ..........................................................................................7

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV–07–2204–PHX–FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008).......................10, 11

*In re Waste Mgmt., Inc. Sec. Litig.*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ..............................................................................9, 10

*In re Winstar Commc'ns Sec. Litig.*,
   290 F.R.D. 437 (S.D.N.Y. 2013) ...........................................................................................8

**Docketed Cases**

*In re AthroCare Corp. Sec. Litig.*,
   No. 08-cv-574, slip op. (W.D. Tex. Dec. 10, 2008) ...............................................................4

*Company Fondi Immobiliari Italiani SGR s.p.a. v. Bankruptcy receivership for SO. GE. CO. s.p.a.*,
   Cass. Civ. No. 16605/2010 (Cass. Civ. July 15, 2010).......................................................7, 8

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

15 U.S.C. § 78u-4, *et seq*. ..............................................................................................1, 2, 3, 4

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730 ..................................2

Stephen J. Choi, A. C. Pritchard & Jill E. Fisch, *Do Institutions Matter? The Impact of the Lead Plaintiff Provision of the Private Securities Litigation Reform Act*,
   83 Wash. U. L. Q. 869 (2005)..................................................................................................6

## INTRODUCTION

On December 2, 2013, Aletti Gestielle SGR S.p.A. ("Aletti") filed a motion pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), requesting an order: (1) consolidating the above-captioned related actions (together, the "Action"); (2) appointing Aletti as Lead Plaintiff in the Action on behalf of a Class consisting of purchasers or acquirers of the securities of J. C. Penney Company, Inc. ("JCPenney") between May 16, 2013 and September 26, 2013 (the "Class Period"); and (3) requesting approval of Aletti's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class.

Seven other motions for consolidation, appointment as lead plaintiff, and approval of selection of counsel were filed that day, by: (1) Cavanaugh Webb and Jeanette Zohar Stavropoulos ("Webb and Stavropoulos"); (2) Joaquin Aguilar, Ghirmai Sequar, Keith Jones, Oliver Youssef, and Dr. Pankaj Modi (the "JCPenney Investor Group"); Richard Saso, Dr. Krishna Dass, and Imtiaz (Taz) Lakhani (the "Saso Group"); (4) Christos Ifantides ("Ifantides"); (5) National Shopmen Pension Fund ("National Shopmen"); (6) Heath Clute ("Clute"); and (7) Omar Ahmed ("Ahmed").[1]   Aletti submits this memorandum in further support of its motion

_____

[1]  Several of the movants who filed motions on December 2, 2013 have either withdrawn their motions or declared that they do not have the largest financial interest in this litigation.  On December 9, 2013, Clute withdrew his motion following a review of the competing motions because he "does not appear to have the largest financial interest."  Dkt. No. 33.  On December 16, 2013, the JCPenney Investor Group filed a response after determining that it "does not [appear to] possess the 'largest financial interest in the relief sought by the class.'"  Dkt. No. 34.  Then, on December 17, 2013, Ahmed filed a Notice of Withdrawal of Lead Plaintiff Motion "for the reason that he does not appear to have the largest financial interest."  Dkt. No. 35.  On December 19, 2013, Defendants filed a response supporting consolidation, and "tak[ing] no position" on lead plaintiff appointment.  Dkt. No. 36.

and in opposition to the remaining motions of Webb and Stavropoulos, Ifantides, the Saso

Group, and National Shopmen.

### <u>PRELIMINARY STATEMENT</u>

The PSLRA specifies that the presumptive lead plaintiff in a securities class action is the

movant with the largest financial interest that also meets the adequacy and typicality

requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I).  Of all of the movants who have sought appointment as Lead Plaintiff, Aletti

has claimed the largest financial interest in this action:

| MOVANT | CLAIMED LOSS |
|---|---|
| **Aletti** | **$610,343** |
| Webb & Stavropoulos | $605,270 |
| Ifantides | $283,883 |
| Saso Group Total | $275,225 |
| National Shopmen | More than $100,000 |

Aletti also unquestionably satisfies Rule 23's prerequisites for appointment.  Aletti is committed

to actively prosecuting this litigation and has chosen counsel with long experience in the

litigation of securities class actions.  Aletti's claims are also typical of those of the Class as they

are based on purchases of JCPenney stock during the Class Period on the New York Stock

Exchange by mutual funds that it manages and on whose behalf Aletti has legal authority to act.

In addition, appointment of Aletti as Lead Plaintiff would comport with Congress' preference for

institutional investors to lead securities class actions.[2]

---

[2]  *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733
("The Conference Committee believes that increasing the role of institutional investors in class
actions will ultimately benefit shareholders and assist courts by improving the quality of
representation in securities class actions.").

2

All other movants suffer infirmities that make them inappropriate representatives for the Class.  For example, the only movants that claim a financial interest even close to that of Aletti, the individual investors Webb and Stavropoulos, improperly aggregate their claimed losses in a manner inconsistent with the principles underlying the PSLRA.  These individuals, who hail from different states and lack any experience overseeing securities litigation, appear to have aggregated their losses only for the purpose of claiming the largest financial interest in this litigation.  Indeed, they have supplied the Court with no evidence whatever that they had any relationship pre-dating this litigation.

Such a combination flies in the face of the PSLRA, and courts in the Fifth Circuit disfavor appointing groups of unrelated individuals as lead plaintiffs for precisely these  reasons. For the same reasons the Court should reject the application of the Saso Group, which claims losses barely a third as large as that of Aletti, and is composed of unrelated individuals lacking any preexisting relationship.

The motions of Ifantides and National Shopmen fail because they do not have the largest financial interest in the Action.  In addition, Ifantides, an individual investor who apparently lacks experience serving as a lead plaintiff, has not demonstrated any oversight of counsel in the litigation of this action.

Because Aletti has the largest financial interest of any movant capable of satisfying the requirements of Rule 23, Aletti respectfully requests that the Court grant its motion and deny all competing motions.

## ARGUMENT

## I.    ALETTI HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION

Pursuant to the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately

representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA creates

a rebuttable presumption that the most adequate plaintiff is "the person or group of persons" that

"has the largest financial interest in the relief sought by the class" and "otherwise satisfies the

requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As reflected in the chart above, Aletti, through its funds Obiettivo America and Gestielle

Obiettivo Internazionale (the "Gestielle Funds"), claims the largest loss of any movant in this

action based on the Gestielle Funds' transactions in JCPenney stock during the Class Period.[3]

Using the widely-accepted last-in-first-out ("LIFO") loss calculation method,[4]  Aletti claims a

loss of $610,343, which exceeds that claimed by Webb and Stavropoulos by $5,073.  *See In re*

*AthroCare Corp. Sec. Litig.*, No. 08-cv-574, slip op. at 10-11 (W.D. Tex. Dec. 10, 2008) Ex. 1 to

Ajamie Decl. (adopting LIFO loss calculation method "in accordance with . . . the strong modern

trend and . . . the convincing rationale set forth by other courts"); *Bo Young Cha v. Kinross Gold*

*Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at \*3 (S.D.N.Y. May 31, 2012) ("the

overwhelming trend both in this district and nationwide" has been to use the LIFO loss

calculation method).

Even the smaller figures claimed by Webb and Stavrapoulos and the Saso Group do not

withstand close scrutiny, as their submission of combined losses assumes that it is appropriate to

aggregate the losses of unrelated individuals—a proposition repeatedly rejected by courts in this

and other circuits.  *See*, *e.g.*, *In re Superior Offshore Int'l, Inc. Sec. Litig.*, Civil Action No. H-

---

[3]  Related mutual funds with a common investment manager like the Gestielle Funds are a
paradigmatic grouping for the purposes of the PSLRA.  *See Sakhrani v. Brightpoint, Inc.*, 78 F.
Supp. 2d 845, 847 (S.D. Ind. 1999) (noting that mutual funds under common management have a
preexisting relationship).

[4]  Under the LIFO method, shares sold during a class period are matched to and offset shares
most recently purchased.

08-0687, 2008 WL 2148745, at *1 (S.D. Tex. May 20, 2008) ("Where a plaintiff bases his claim

to have the largest financial loss on the aggregate loss of several investors, the group must have

'a pre-litigation relationship based on more than the losing investments at issue in the securities

fraud class action.'") (citation omitted); *In re Netflix, Inc., Sec. Litig.*, No. 12–0225 SC, 2012 WL

1496171, at *4 (N.D. Cal. Apr. 27, 2012) (noting that "the courts of [the Ninth Circuit]

uniformly refuse to aggregate the losses of individual investors with no apparent connection to

each other aside from their counsel").  Given the lack of preexisting relationship between these

movants, Aletti's losses are properly weighed against only individual investors—highlighting its

much greater financial stake in this litigation:

| MOVANT | CLAIMED LOSS |
|---|---|
| **Aletti** | **$610,343** |
| Webb (of Webb & Stavropoulos) | $465,600 |
| Ifantides | $283,883 |
| Stavropoulos (of Webb & Stavropoulos) | $139,670 |
| Richard Saso (of Saso Group) | $121,260 |
| Dr. Krishna Dass (of Saso Group) | $111,531 |
| National Shopmen | More than $100,000 |
| Imtiaz (Taz) Lakhani (of Saso Group) | $42,434 |

Thus, Aletti's claimed financial interest in the Action is *31 percent greater* than that of Webb, the

movant with the next largest loss.[5]

---

[5]  The loss calculation apparently employed by Webb and Stavropolous gives the Court
additional cause for concern.  It does not offset Webb's loss by the $2,070,419 in proceeds he
realized from sales of JCPenney stock during the Class Period.

## II.   ALETTI SATISFIES THE REQUIREMENTS OF RULE 23

At this stage of the litigation, the presumptive lead plaintiff need make only a "preliminary showing" that it meets the typicality and adequacy requirements of Rule 23.  *In re Kosmos Energy Ltd. Sec. Litig.*, No. 3:12-cv-373-B, 2012 WL 6199318, at *2 (N.D. Tex. Nov. 1, 2012).  The Court has ample basis to conclude that Aletti meets both requirements.

The typicality inquiry focuses upon whether a movant's "claims arise from a similar course of conduct and share the same legal theory" as those of the class.  *Parker v. Hyperdynamics Corp.*, Civil Action No. 4:12–CV–999, 2013 WL 623164, at *3 (S.D. Tex. Feb. 19, 2013).  As demonstrated in its opening brief, the basis for Aletti's claims is the purchases by the Gestielle Funds of JCPenney stock on the New York Stock Exchange at artificially inflated prices as a result of the defendants' misrepresentations and omissions and the losses they incurred when the truth about  JCPenney's financial health was revealed.  Under these circumstances, Aletti has evinced that its "incentives . . . are aligned with those of the class."  *Hohenstein v. Behringer Harvard REIT I, Inc.*, Civil Action No. 3:12–CV–3772–G, 2012 WL 6625382, at *3 (N.D. Tex. Dec. 20, 2012) (citation omitted).

Aletti, as a manager of mutual funds, is the paradigmatic lead plaintiff contemplated by the PSLRA.  *See* Stephen J. Choi, A. C. Pritchard & Jill E. Fisch, *Do Institutions Matter? The Impact of the Lead Plaintiff Provision of the Private Securities Litigation Reform Act*, 83 Wash. U. L. Q. 869, 869 (2005) ("Congress's stated purpose in enacting the lead plaintiff provision was to encourage institutional investors—pension funds, mutual funds, hedge funds, etc.—to come forward to serve as lead plaintiff.").[6]  Guided by this congressional intent, courts frequently

---

[6] *Accord Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at *3 (C.D. Cal. Mar. 2, 2012) (appointing hedge fund as lead plaintiff and noting that "'[h]edge funds are institutional investors, exactly the type of sophisticated market participants Congress

appoint mutual funds and investment managers as lead plaintiffs. *See, e.g.*, *Hufnagle v. Rino Int'l Corp.*, No. CV 10–8695–VBF (VBKx), 2011 WL 710704, at *5-6 (C.D. Cal. Feb. 14, 2011) (appointing as lead plaintiff investment advisor of "a [foreign] public investment company, comparable to a mutual fund in the United States," noting that an "investment advisor has an interest in its own right to receive full and fair disclosures regarding the true value of a company's stock, and therefore is a 'purchaser' under the PSLRA with proper standing to pursue litigation on behalf of its individual clients"); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *8, *10 (S.D. Cal. Jan. 5, 2004) (appointing investment advisor as a lead plaintiff); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 45 (S.D. Ohio 1998) (appointing family of five mutual funds as co-lead plaintiff).

Moreover, Aletti is the appropriate movant to bring claims for losses incurred in connection with the transactions of the Gestielle Funds in JCPenney stock. As reflected in the Declaration of Francesco Betti in Support of the Motion of Aletti Gestielle SGR S.p.A. for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel filed herewith (the "Betti Declaration"), "[o]nly Aletti has the legal capacity to seek recovery of the Gestielle Funds' losses." *Id.* ¶ 8. As stated therein, the limitations on the abilities of Italian investment funds to take action on their own behalf has been described in Italian judicial opinions, including an opinion by the Italian Supreme Court. *See id.* ¶ 7; *see also Company Fondi Immobiliari Italiani SGR s.p.a. v. Bankruptcy receivership for SO. GE. CO. s.p.a.*, Cass. Civ. No. 16605/2010, at 6 (Cass. Civ. July 15, 2010), a certified translation of which is attached as Exhibit A to Betti Decl. (noting that "mutual investment funds . . . do not constitute

_____

intended to take on the role of lead plaintiff following the PSLRA's reforms'") (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07–02830, 2010 WL 5173851, at *8 (W.D. Tenn. Dec. 15, 2010)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y. 2009) ("[C]ourts routinely appoint hedge funds, foreign investors, and even foreign hedge funds, as lead plaintiffs.").

legal parties in and of themselves, but rather separate assets of the management company that created them"). The decisions of U.S. courts are in harmony with this Italian Supreme Court opinion, recognizing that investment managers are ideally suited to bring claims on behalf of their mutual funds. *See*, *e.g.*, *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) (rejecting argument that mutual fund manager was subject to a unique defense as to standing, explaining that "the relationship between mutual fund manager and the mutual fund (which owns the shares) is the requisite type of close relationship, akin to that of trustee and beneficiary").

Aletti also satisfies the adequacy requirement of Rule 23. In assessing a lead plaintiff movant's adequacy, the Court should consider whether the movant shares common interests with the class, is willing to prosecute the action vigorously, and whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Superior Offshore*, 2008 WL 2148745, at *2 (finding that movant satisfied Rule 23's adequacy requirement because "[h]e has shown that he does not have a conflict with the remaining class members, that he is willing and able to take an active role in the litigation and protect the class members' interests, and that he has chosen qualified, experienced counsel"). Through the Betti Declaration, Aletti has further confirmed its commitment to the efficient prosecution of this litigation. *See* Betti Decl. ¶¶ 9-12.

Aletti would be a particularly suitable representative for the Class because Aletti is a sophisticated institutional investor—precisely the type of lead plaintiff envisioned by Congress in drafting the PSLRA. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002) (explaining that "the [PSLRA] operates to 'ensure that institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the

litigation'") (citation omitted); *In re Kosmos Energy*, 2012 WL 6199318, at *2 n.2 (commenting

that "Congress . . . unequivocally expressed its preference for securities fraud litigation to be

directed by large institutional investors" through the passage of the PSLRA); *see also In re BP*,

*plc, Sec. Litig.*, 758 F. Supp. 2d 428, 439 (S.D. Tex. 2010) (noting that "the PSLRA expresses a

strong preference for institutional investors to serve as lead plaintiffs"). As set forth in the Betti

Declaration, Aletti has prior experience serving as lead plaintiff upon which it can draw in

prosecuting the Action, which will benefit the Class. Betti Decl. ¶ 2.

In sum, Aletti overwhelmingly satisfies all of the requirements for appointment as Lead

Plaintiff.

## III.    ALL OTHER MOTIONS SHOULD BE DENIED

The remaining movants do not claim the largest financial interest in this litigation, *see*

charts on pages 2 and 5, and they cannot rebut the presumption that Aletti is the most adequate

plaintiff. Even if the Court found it appropriate to evaluate the competing movants, it would find

itself confronted with a defective motion from a group of investors who have nothing in common

other than their counsel, another group of individuals lacking a preexisting relationship, an

individual and an institutional investor whose respective financial interests pale in comparison to

that of Aletti.

In contrast to Aletti, Webb and Stavropoulos cannot meet Rule 23's prerequisites for lead

plaintiff appointment because they are a grouping of unrelated individuals that provide no

evidence of cohesiveness and no sign of any relationship predating this litigation. Courts in this

Circuit and elsewhere routinely deny lead plaintiff motions filed by groups of unrelated investors

recognizing that they undercut the PSLRA's spirit and, more importantly, are unlikely to

safeguard the interests of absent investors. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp.

2d 401, 413 (S.D. Tex. 2000) ("The burden is on those seeking to aggregate to demonstrate the

cohesiveness of their purported 'group' and that failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff.") (citation omitted); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV–07–2204–PHX–FJM, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (explaining that courts reject groups of unrelated investors assembled by counsel as such groups "[are] unlikely to 'fairly and adequately represent the class' because it is unlikely to engage in the litigation in a meaningful way at all") (citation omitted); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, Civil Action No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *13 (D. Colo. May 4, 2009) (rejecting motion of lead plaintiff group that "has not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel"); *see also In re Enron*, 206 F.R.D. at 455 (rejecting motion of group because "they have not shown that their grouping is not a manipulated effort to aggregate larger losses than other proposed Lead Plaintiffs").[7]  Indeed, courts consider group adequacy as part of its analysis of lead plaintiff groups.  *See In re Waste Mgmt.*, 128 F. Supp. 2d at 431 ("[T]he concerns underlying the PSLRA for wresting control of the litigation away from the lawyers and making a plaintiff or a group of related plaintiffs the monitors and controllers of the litigation must restrict [attempts by law firms to control litigation by accumulating unrelated investors to aggregate their losses], in addition to Rule 23's requirements of typicality and adequate representation to protect the proposed class members.").  Although the members of the Saso Group submitted a joint declaration in support of their motion describing their identities, this submission cannot conceal their inadequacy as, tellingly, they provided no information on

---

[7]  The fact that Stavropoulos' certification bears an electronic signature suggests a lack of involvement in this litigation.

the origins of their group or detail as to the procedures they have established for overseeing counsel. *See In re Carreker Corp. Sec. Litig.*, Civil Action No. 3:03-CV-0250-M, 2003 U.S. Dist. LEXIS 25988, at *10 (N.D. Tex. Aug. 14, 2003) (rejecting a group of investors without preexisting relationship whose declarations "make non-specific statements"); *In re Level 3*, 2009 U.S. Dist. LEXIS 44706, at *16 (finding unpersuasive group's joint declaration that "offer[ed] little substance to inform the Court of why the [group] is a group in the first place, aside from the obvious motive to aggregate the greatest financial interest among any movant").

Recognizing their deficiencies and their tenuous connection, Webb and Stavropoulos invite the Court to disband their group and consider their motions on an individual basis. However, courts routinely reject overtures to consider group movants on a stand-alone basis because such invitations only underscore the weakness of a proposed lead plaintiff group and the inadequacy of their component members. *See Tsirekidze*, 2008 WL 942273, at *4 (declining inadequate group's suggestion that the court "pluck one of its top-two constituents to serve as lead plaintiff" as "[t]he willingness to abandon the group only suggests how loosely it was put together"); *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the PLS[R]A that the Court realign a proposed group to cure a deficiency in adequacy of representation.").

These weaknesses provide the Court with further reason to deny the motions of these competing movants.

## CONCLUSION

For the above reasons, Aletti respectfully requests that the Court: (1) consolidate the above-captioned related cases; (2) appoint Aletti as Lead Plaintiff; and (3) approve its selection of Labaton Sucharow as Lead Counsel for the Class; and (4) deny all competing motions.

Dated: December 20, 2013

Respectfully submitted,

By:   *s/Thomas R. Ajamie*

Thomas R. Ajamie
(Texas Bar No. 00952400)
**AJAMIE LLP**
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
E-mail: tajamie@ajamie.com

*Local Counsel for Aletti Gestielle SGR S.p.A.*

Christopher J. Keller
Eric J. Belfi
Michael W. Stocker
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
E-mail: ckeller@labaton.com
ebelfi@labaton.com
mstocker@labaton.com

*Counsel for Aletti Gestielle SGR S.p.A., and
Proposed Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 20th day of December, 2013, I electronically filed this Memorandum of Law in Further Support of the Motion of Aletti Gestielle SGR S.p.A. for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, and In Opposition to the Competing Motions, using the Court's CM/ECF system, and the memorandum and related papers will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


*s/Thomas R. Ajamie*
Thomas R. Ajamie