# Exhibit 1

Case 6:13-cv-00736-KNM   Document 41-4   Filed 12/20/13   Page 1 of 18 PageID #:  1038

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2008 DEC 10 PM 4:39
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

JAMES STRONG, Individually and On Behalf of
All Others Similarly Situated,
      Plaintiff,

-vs-                  Case No. A-08-CA-574-SS

ATHROCARE CORPORATION, MICHAEL A.
BAKER, MICHAEL GLUK, JOHN T. RAFFLE,
JOHN H. GIROUX, and RICHARD T.
CHRISTENSEN,
      Defendants.

## ORDER

BE IT REMEMBERED on the 25th day of November 2008 the Court called the above-styled cause for a hearing and the parties appeared through counsel. Before the Court were the Motion to Consolidate Cases, Appoint Lead Plaintiff, and Receive Approval of Selected Counsel by KBC Asset Management N.V. ("KBC") [#16], KBC's memorandum in support [#35], KBC's 2nd memorandum in support [#73], Scott Walker ("Walker")'s response thereto [#38], and DeKalb County Pension Fund ("DeKalb")'s response thereto [#39]; the Motion to Consolidate Cases, Appoint Lead Plaintiff, and Receive Approval of Selected Counsel by Walker [#17], and KBC's response thereto [#74]; the Motion to be Appointed Lead Plaintiff, and for Approval of Lead Plaintiff's Selection of Lead Counsel by DeKalb [#18], DeKalb's memorandum in support [#19], and DeKalb's reply to responses [#75]; and the Iron Workers District Council, Southern Ohio & Vicinity Pension Trust and the Structural Iron Workers Local Union #1 Annuity, Pension and Welfare Funds (collectively, "Iron Workers Funds")'s Supplemental Memorandum Regarding the Appointment of Iron Workers Funds as Lead Plaintiffs

-1-

[#86], DeKalb's supplemental post-hearing memorandum [#87], and KBC's supplemental post-hearing memorandum [#85]. Having considered the motions, responses, replies, supplements, the arguments of counsel at hearing, the relevant case law, and the case file as a whole, the Court enters the following opinion and order.

## BACKGROUND

### I. Procedural Background

This case consolidates three class actions alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, and Rule 10b-5 promulgated thereunder. Plaintiff James Strong filed this action on July 25, 2008, individually and on behalf of all those who purchased common stock of ArthroCare Corporation ("ArthroCare") between January 24, 2008 and July 18, 2008 (the "Common Stock Class Period") and all those who purchased call options or sold put options between October 27, 2006 and July 18, 2008 (the "Option Holders Class Period").[1] Compl. at ¶ 1. Strong claims Arthrocare, during this period, disseminated materially false and misleading statements regarding its earnings and expected growth and reported incorrect financial data in its required SEC filings.

The Court consolidated *Weil v. AthroCare Corp., et al.* and *McIlvaine v. ArthroCare Corp., et al.* ("*McIlvaine*" or the "*McIlvaine* case") into the above-styled cause on October 28, 2008 and November 25, 2008, respectively, and now considers motions for appointment as lead plaintiff. Several parties have moved to be appointed lead plaintiff in this case pursuant to the PSLRA: namely,

---

[1]Based on the representations of counsel at the hearing, these dates may well change in the consolidated amended complaint. However, all references to the class period in this Order refer to the class period alleged in the *Strong* complaint currently before the Court [#1].

KBC Asset Management N.V. ("KBC"), DeKalb County Pension Fund ("DeKalb"), Scott Walker ("Walker"), and the Iron Workers District Council, Southern Ohio & Vicinity Pension Trust and the Structural Iron Workers Local Union #1 Annuity, Pension and Welfare Funds (collectively, "Iron Workers Funds").

The PSLRA requires counsel who file the first complaint to issue a notice to investors in "a widely circulated national business-oriented publication or wire service" advising putative class members of the pendency of the action, the nature of the allegations, the purported class period, and their right to seek appointment as lead plaintiff within sixty (60) days of the publication of the notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(1). The same day the present suit was filed, on July 25, 2008, counsel issued the required notice to putative class members on the PR Wire. *See* Pearson Decl. at Ex. B. On September 23, 2008, KBC, DeKalb, and Walker each filed for appointment as lead plaintiff.

On October 7, 2008 the Court directed that each applicant seeking to be lead plaintiff file affidavits (in addition to the certifications required by the PSLRA, 15 U.S.C. §78u-4(a)(2)(A)) confirming, among other things, "that [the client] solicited the attorney or firm to represent it or him . . . and that [the client] made the first contact with the attorney." Order of Oct. 7, 2008. It appears that KBC, DeKalb, Walker, and the Iron Workers Funds have all filed such affidavits. These additional filings are intended to aid the Court in determining which movant is the most adequate lead plaintiff, but the Court will consider each motion filed in accordance with the PSLRA regardless of whether the movant has filed the affidavits requested in the October 7, 2008 Order. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) (the Court "*shall* consider any motion made by a purported class member in response to the notice") (emphasis added).

The class period for this lawsuit continues to fluctuate. Originally, Plaintiffs brought suit on

behalf of: (1) all persons or entities who purchased common stock in ArthroCare between January 24, 2008 and July 18, 2008 (the "Common Stock Purchaser Class Period") and (2) all persons or entities who purchased call options or sold put options in ArthroCare common stock between August 4, 2006 and July 18, 2008 (the "Option Holders Class Period").[2] Compl. at ¶ 1. At the time the present suit was brought, the *McIlvaine* case was already pending in the Southern District of Florida. However, the class in the *McIlvaine* case, as it was originally filed, included only common stock purchasers through the date of January 23, 2008. Thus, the *McIlvaine* case did not overlap with the present suit (as both were originally filed). The *McIlvaine* complaint, however, was amended at the time it was transferred and consolidated with the present case. Wilens Decl. at Ex. D. Thus, the class set forth in the amended *McIlvaine* complaint includes all purchasers of ArthroCare stock between May 3, 2006 and July 18, 2008 (the "Amended Complaint Class Period"). Because the Amended Complaint Class Period is the one most likely to be used in the present case as it goes forward, based on the representations of counsel at the hearing, the Court will assume this class period.

## II. Background of the Individual Movants

*1) KBC*

KBC has moved for appointment as lead plaintiff with the firm of Motley Rice LLC as lead counsel and the firm of Byrd Davis Furman LLP as liaison counsel. KBC is a large institutional investor organized under the laws of Belgium, active since June 1, 2008. KBC's Memo. in Support of Mot. for Appointment as Lead Plaintiff ("KBC Memo 1.") [#16] at 2. KBC is recognized by the

---

[2]Plaintiffs did not include common stock purchasers from the 8/4/06 through 1/23/08 presumably because they are included in *McIlvain v. ArthroCare*, which was pending in the Southern District of Florida but was transferred to this district on October 28, 2008. Because it was transferred, I suspect the complaint will be amended so the class includes all common stock purchasers and option holders for the entire Class Period.

Belgian Banking and Finance Commission as authorized to offer asset management and related services to the investment public. *Id.* During the original Common Stock Class Period, KBC suffered losses of $756,415 (as calculated under a first-in-first-out ("FIFO") accounting method) or $280,991 (as calculated under a last-in-first-out ("LIFO") accounting method). *Id.* During the Amended Complaint Class Period, KBC suffered the same amount of loss under both accounting methods: $201,763. KBC Post-hearing Supp. Memo. ("KBC Memo 2.") [#85] at 3. KBC purchased 55,552 net shares of ArthroCare common stock on the Nasdaq exchange during the Amended Complaint Class Period. *Id.*

### 2) DeKalb

DeKalb has moved for appointment as lead plaintiff with counsel from the firm of Chitwood Harley Harnes as lead counsel and from Cunnigham Darlow LLC as liaison counsel. DeKalb has suffered losses totaling approximately $486,027 (under both accounting methods). *See* DeKalb's Post-hearing Memo. ("DeKalb Memo. 2") [#87] at 2. Over the applicable class period, DeKalb purchased 23,200 net shares of ArthroCare common stock. *Id.*

### 3) Walker

Walker has moved for appointment as co-lead plaintiff with counsel from the firms of Klafter Olsen & Lesser LLP as co-lead counsel. Walker suffered $27,894 in losses (as calculated under a LIFO method) on his transactions in ArthroCare common stock during the Common Stock Class Period, and on his options transactions during the Options Holder Class Period. Walker's Memo. in Support of Mot. for Appointment as Lead Plaintiff ("Walker Memo.") [#17] at 5. Walker does not seek appointment as lead plaintiff for the entire class; instead, Walker seeks to represent the specific sub-class of all "purchasers of call options and sellers of put options." Walker's Resp. [#38] at 2. He claims he is "the only movant who purchased call options and sold put options during the appropriate

period, Walker purchased 4,000 shares.

*4) Iron Workers Funds*

Finally, Iron Workers Funds was appointed lead plaintiff in *McIlvaine* by Judge Ryskamp of the Southern District of Florida, with counsel from the firm of Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel. Subsequent to the appointment, Judge Ryskamp transferred the *McIlvaine* case to this district. On November 25, 2008, the *McIlvaine* case was consolidated under the above-styled cause, and Iron Workers Funds' request to intervene in the present case was granted. Based on Iron Workers Funds' prior appointment as lead plaintiff in the *McIlvaine* case, and the subsequent consolidation of *McIlvaine* with the present case, Intervenor Iron Workers Funds is also considered a movant for lead plaintiff in the present case.

Iron Workers Funds describes itself as "two affiliated institutional investors." Iron Workers Supp. Memo. ("Iron Workers Memo.") [#86] at 2. During the Amended Complaint Class Period, Iron Workers Funds sustained a loss of $394,690 (as calculated under a LIFO method). Wilens Decl. at Ex. G. Iron Workers Funds describes itself as having performed significant work on this case since it was appointed Lead Plaintiff in *McIlvaine* on July 10, 2008. Iron Workers Memo. at 3.

## ANALYSIS

### I. Legal Standard

The appointment of lead plaintiff in a securities class action is governed by the PSLRA, codified in relevant part at Section 21D(a) of the Exchange Act, 15 U.S.C. § 78u-4. Under the PSLRA, a lead plaintiff should be selected early in the case, and is to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). One of the main goals of the PSLRA is "to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being lawyer-driven." *See In re Waste*

*Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411-12 (S.D. Tex. 2000).

The PSLRA provides the Court shall consider all timely-filed motions made by purported class members seeking to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(1). The Court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the Court considers most capable of adequately representing the interests of the class members. *Id*. This lead plaintiff is termed the "most adequate plaintiff." *Id*.

The PSLRA directs the Court to adopt a presumption that the most adequate plaintiff is the person or group of persons that (1) filed a complaint or a timely motion to be appointed lead plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## II. Previous Appointment

As an initial matter, the Court addresses Iron Workers Funds' contention Judge Ryskamp's decision in *McIlvaine*—appointing Iron Workers Funds as the lead plaintiff in that case—should not be disturbed by this Court. Iron Workers Memo. at 5. In fact, the PSLRA requires with respect to consolidated actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

15 U.S.C. § 78u-4(a)(3)(b)(ii). It is undisputed *McIlvaine* concerns substantially the same claim or claims as the present case, although the class period alleged was initially different. Therefore, it was improper to make the decision as to the appointment of a lead plaintiff in *McIlvaine* before the court

-7-

transferred the case and it was consolidated with the present case. To arbitrarily prevent Plaintiffs in the present action from moving to become lead plaintiff over the consolidated cases would prevent one of the main goals of the PSLRA, which is to advance the institution with the largest financial interest in the relief sought. *In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d at 411-12.

With regard to the Court's power to reconsider a ruling by the transferor court, the Seventh Circuit explained appropriately:

> Typically the transferee court should treat prior rulings of the transferor court "in much same way as one district judge treats the rulings of a colleague." But language used to describe consolidated multi district pretrial proceedings offers some insight here: "[T]he underlying purpose of coordination and consolidation may justify special freedom to reconsider matters that otherwise might be the law of the case." This is often a matter of "good sense." *Champaign-Urbana News Agency, Inc. v. J.L. Cummins News Co.*, 632 F.2d 680, 683 (7th Cir. 1980). After all, law of the case, an "amorphous concept," is meant to direct a court's discretion, not limit its power. *Arizona v. California*, 460 U.S. 605, 618 (1983).

*Pettiford v. Lesher,* 1996 WL 341218 at *7 (7th Cir. 1996) (some citations omitted); *see also* (noting *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 283 (5th Cir. 1993) (noting "transfer should no more freeze prior rulings than it should require their routine reexamination"); *U.S. v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (noting it is "within the sole discretion" of the transferee court to determine if prior rulings by the transferor court should be reconsidered); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (noting a prior ruling of transferor court should be reconsidered when governing law has been changed by subsequent decision of a higher court, when newer evidence becomes available, when clear error has been committed, or to prevent manifest injustice). In this case, good sense and the prevention of manifest injustice require the appointment of lead plaintiff be reconsidered by this Court.

### III. The Most Adequate Plaintiff

*1) Timely Filed Motion Requirement*

The PSLRA requires putative class members to move for appointment as lead plaintiff within 60 days of the date notice of the action is issued. *See* 15 U.S.C. § 78u-4(a)(3)(A)(1). In the present case, notice was issued the same day suit was filed: on July 25, 2008. KBC, DeKalb, and Walker all filed motions for appointment as lead plaintiff within the 60-day period, on September 23, 2008.

Although Iron Workers Funds did not file a motion to be appointed lead plaintiff in the present case within the 60-day period, it ***did*** file a timely motion to be appointed lead plaintiff in *McIlvaine,* a separate case with a different class period but a similar factual basis, before *McIlvaine* was transferred to this district. Iron Workers Funds' motion was granted, and Iron Workers Funds was thus appointed lead plaintiff in that case before it was transferred. *McIlvaine* was transferred to this Court in October 2008 and consolidated with the present case on November 25, 2008. Therefore, the Court will consider Iron Workers Funds to have complied with the requirements of the PSLRA in the present action and to be a proper candidate for lead plaintiff. Accordingly, all applicants are considered to have timely filed a motion for appointment as lead plaintiff.

*2) Largest Financial Interest Requirement*

While the PSLRA neither defines "largest financial interest" nor explains how such a determination should be made, courts have found the following factors (often referred to as the "Olsten-Lax" factors) relevant to this inquiry: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period. *See In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 at *5 (N.D. Ill. 1997)); *In re Waste Management, Inc.*, 128 F. Supp. 2d at 414; *Gluck v. Cellstar Corp.*, 976 F.Supp. 542, 546 (N.D. Tex. 1997) (considering the same factors, although not specifically enumerating them, in determining which plaintiff had the

largest financial interest).

Of the Olsten-Lax factors, however, courts consistently consider the fourth factor—the approximate losses suffered—as most determinative in identifying the plaintiff with the largest financial loss. *See Richardson v. TVIA, Inc.*, 2007 WL 1129344 at *4 (N.D. Cal. 2007) (citing *In re Vicuron Pharma., Inc. Sec. Litig.*, 225 F.R.D. 508, 510-11 (E.D. Pa. 2004); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses")); *Vladimir v. Bioenvision, Inc.*, 2007 WL 4526532 at *5 (S.D.N.Y. 2007). Accordingly, the Court will concentrate on the approximate losses claimed by each movant in determining which proposed lead plaintiff has the largest financial interest in the present litigation.

A large point of contention in the present case, however, is not which factor is decisive but how the numbers should be calculated. As indicated previously, there are two ways to calculate approximate losses suffered: using the FIFO or the LIFO accounting method. FIFO, or first-in-first-out, is a method of accounting "where stocks which were acquired first are assumed to be sold first for the purpose of loss calculations." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.6 (S.D.N.Y. 2007). Under LIFO, or last-in-first-out, "stocks which were acquired most recently are assumed to be sold first." *Id.* KBC argues the FIFO method is appropriate, based on this Court's use of the method in a previous case.[3] DeKalb argues the LIFO method should be used.

The majority view seems to be that approximate losses should be calculated using the LIFO method. *Johnson v. Dana Corp.*, 236 F.R.D. 349, 351-52 (N.D. Ohio 2006); *In re eSpeed, Inc., Sec.*

---

[3]*See In re Dell, Inc. Sec. Litig.*, No. A06-CA-726-SS, Order Granting Appointment of Lead Plaintiff [#152]. However, accounting methods were not disputed by the parties in that case, and thus which method is superior was neither considered nor decided.

*Litig.*, 232 F.R.D. 95, 100-01 (S.D.N.Y. 2005)). Many courts have followed this preference for the LIFO method of accounting over the FIFO method in securities fraud cases, as "the inflation of stock prices over the course of the class period may have resulted in gains accrued to plaintiffs ... FIFO may overstate actual losses suffered by stockholders, whereas LIFO takes into account these gains." *Kaplan*, 240 F.R.D. at 94, n.6; *In re eSpeed, Inc.*, 232 F.R.D. at 102 ("more recently, courts have preferred LIFO and have 'generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.'"). A New York federal district judge ably summarized the rationale behind this preference:

> Many courts favor the LIFO method to calculate the financial stake of movants for lead plaintiff status in securities class actions. Unlike FIFO, LIFO offsets gains accrued to the plaintiffs due to the inflation of stock prices during the class period. In addition, LIFO excludes "in-and-out" transactions during the class period. While FIFO may overstate actual losses suffered by stockholders, LIFO takes into account gains and can disregard losses that are not causally related to the misstatement claims.

*Vladimir*, 2007 WL 4526532 at *5 (citations omitted). In accordance with what appears to be the strong modern trend and based on the convincing rationale set forth by other courts, this Court adopts the LIFO method of accounting to determine the largest financial interest in the present litigation.

The Court has four applicants for appointment as Lead Plaintiff to consider:

| *Proposed Lead Plaintiff* | *Proposed Lead Counsel* | *Claimed Losses during Amended Complaint Class Period* |
|---|---|---|
| **KBC Asset Management N.V.** | Motley Rice LLC (lead counsel); Byrd Davis Furman LLP (liaison counsel). | $201,763 (LIFO) |
| **DeKalb County Pension Fund** | Chitwood Harley Harnes (lead counsel); Cunningham Darlow LLP (liaison counsel). | $468,027 (LIFO)[4] |

[4]For an unexplained reason, Iron Workers Funds alleges DeKalb suffered only $371,938 over the Amended Complaint Class Period. Because the assertion is not cited, and no explanation is given for how the number was obtained, the Court will rely on DeKalb's own current calculation

| Scott Walker | Klafter Olsen & Lesser LLP (lead) Gravely & Pearson LLP (liaison counsel). | $27,894 (LIFO) |
| Iron Workers Funds | Coughlin Stoia Geller Rudman & Robbins LLP. | $394,690 (LIFO) |

Because the Court has found greatest total losses is the determinative category for deciding which plaintiff has the greatest financial interest, and DeKalb sustained the greatest total losses during the applicable class period under the LIFO method, DeKalb has the greatest financial interest in the present litigation.

3) *Rule 23 Requirements*

"The rebuttable presumption created by the PSLRA, which favors the plaintiff with the largest financial interest, was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49. Specifically, the typicality and adequacy requirements of Rule 23 are directly relevant to the choice of the lead plaintiff in securities fraud cases. *In re Waste Management, Inc.*, 128 F. Supp. 2d at 411. Although the inquiry at this stage of the litigation (the determination of the lead plaintiff) is not as searching as the one triggered by a subsequent motion for class certification, the proposed lead plaintiff must at least make a preliminary showing that it has claims that are typical of those of the putative class and the capacity to provide adequate representation for those class members. *Id.*

a) *Typicality*

A proposed lead plaintiff's claims are typical of the class if there are "no differences among

of its losses.

-12-

the class members that would substantially alter the proof required for one member's claims versus another's." *Richard NMI Bell v. Acendant Solutions, Inc.*, 2002 WL 638571, *5 (N.D. Tex. 2002) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). It is not necessary that a proposed lead plaintiff's claims be identical to the claims of other class members. *Id.* DeKalb has submitted a motion alleging it, like other members of the proposed class, purchased ArthroCare securities and lost money as a result of ArthroCare's material misstatements and omissions. Though the exact class period differs from that alleged in the complaint filed in *McIlvaine*, there is no explicit assertion by any party that there is a significant difference in the proof required to prove DeKalb's claims and the claims asserted by the other plaintiffs in these related cases.

Walker implicitly challenges the typicality of the other movants' claims, however, as he requests appointment as co-lead plaintiff to represent the claims of those who bought options and sold puts during the applicable class period. Apparently Walker's argument is that because DeKalb traded only common stocks, their claims are not typical of the entire class. But the appointment of a co-lead plaintiff is not necessary in this case. First, the PSLRA requires that "the court shall appoint the most adequate *plaintiff* for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (emphasis added). Accordingly, it appears at this stage the statute authorizes the appointment of one lead plaintiff or a small cohesive group as lead plaintiff for the entire class. *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (citing *Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146, 1151 (N.D.Cal.1999) (given the PSLRA's procedure for swift consolidation of all pending claims, there is a "statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories")). In *In re Enron Corp., Sec. Litig.*, the district court recognized niche plaintiffs who "support[] division of the class into groups according to the nature of the investment or appointment of multiple Lead Plaintiffs with no prior relationship

to represent different interests" would *not* satisfy the stated criteria of the PSLRA for a lead plaintiff. *Id.*

Furthermore, there is no requirement the claims of all plaintiffs and class members must be identical. *Id.* at 445 (citing *In re Lucent Techs., Inc. Sec. Litig.*, 194 F.R.D. 137, 150 (D.N.J. 2000) ("Rule 23(a)(3) does not require the claims of the Proposed Lead Plaintiffs to be identical to those of the class. Rather the typicality requirement is satisfied when the [lead] plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other members and is based on the same legal theory."); *Endo v. Albertine*, 147 F.R.D. 164, 167 (N.D. Ill. 1993) ("a class of plaintiffs who purchased different types of securities may properly be certified with a representative party who only purchased one type of security"). Indeed, "options-holders and stockholders are in most cases sufficiently similar that they should be consolidated 'in form and in fact,' and thus litigated by the same lead plaintiff and lead counsel." *In re Microstrategy, Inc.*, 110 F.Supp.2d 427, 440 (E.D. Va. 2000) (citing *In re Orbital Sciences Corp. Secs. Litig.*, 188 F.R.D. 237, 240 (E.D. Va. 1999) (denying the need to appoint a co-lead plaintiff for a separate options class at the stage of selecting the lead plaintiff). With regard to the typicality requirement, the Fifth Circuit has stated:

> [T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562-63 (5th Cir. 2002) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

Based on the mandate of the PSLRA and the similarity of the plaintiffs' claims in the present case, the Court refuses at this stage to subdivide the classes or appoint separate lead plaintiffs. Instead,

the Court finds DeKalb's claims satisfy the typicality requirement of Rule 23 as to the entire proposed class.

*b) Adequacy*

The adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citation omitted). There is no question that DeKalb's chosen counsel is competent and zealous; the detailed and thorough pleadings filed in connection with DeKalb's motion to be appointed lead plaintiff and the arguments made at the hearing on the matter are ample proof of that. No party disputes that DeKalb's proposed counsel are qualified, experienced, and able to conduct the litigation. Finally, DeKalb's affidavit, filed in response to this Court's Order of October 7, 2008, establishes that DeKalb is prepared to take an active role in the litigation, and this finding is also undisputed by the other parties. The Court finds, for the purpose of appointing a lead plaintiff, DeKalb is adequate representative of the class.

## IV. No Rebuttal of the Presumption

Because DeKalb filed a timely motion to be appointed Lead Plaintiff, has the largest financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23, DeKalb is presumptively the "most adequate plaintiff" under the PSLRA. This presumption may be rebutted only by proof by another member of the purported plaintiff class that DeKalb "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

Neither of the other movants for lead plaintiff have asserted any such challenges. DeKalb is a large institutional investor of the kind perfectly suited to be a lead plaintiff in a PSLRA action, and

neither party claims it is not a "single investor." It is undisputed DeKalb has not taken any short positions on ArthroCare stock and thus its fraud-on-the-market claims will not be subject to any unique defense on this basis. Nor has any other movant identified a potential conflict of interest between DeKalb and the proposed class.

## CONCLUSION

In conclusion, DeKalb has timely filed a motion to be appointed lead plaintiff, is the movant with the largest financial interest in the case under the appropriate accounting method, and satisfies the typicality and adequacy requirements of Rule 23. DeKalb is therefore presumptively the most adequate plaintiff. No other movant has shown that DeKalb would be subject to unique defenses or would be unable to adequately represent the class. Appointing DeKalb, an institutional investor, as lead plaintiff and approving its choice of lead counsel will serve the PSLRA's goal of encouraging shareholders to protect their interests via securities class actions while discouraging "lawyer-driven" litigation.

Accordingly,

IT IS ORDERED that the Motion to be Appointed Lead Plaintiff, and for Approval of Lead Plaintiff's Selection of Lead Counsel by DeKalb [#18] is GRANTED.

IT IS FURTHER ORDERED that DeKalb's choice of Lead Counsel and Liaison Counsel is APPROVED. The firm of Chitwood Harley Harnes LLP appears to have extensive experience in securities class action litigation, and the firm of Cunningham Darlow LLP is amply qualified to assist as liaison counsel in this matter. James M. Wilson, Jr., Martin D. Chitwood, Robert W. Killorin, and Ze'eva Kushner Banks of Chitwood Harley Harnes LLP are appointed Lead Counsel in this case, and Tom Alan Cunningham of Cunningham Darlow LLP is appointed Liaison Counsel.

IT IS FINALLY ORDERED that the Motion to Consolidate Cases, Appoint Lead Plaintiff, and Receive Approval of Selected Counsel by KBC Asset Management N.V. [#16], the Motion to Consolidate Cases, Appoint Lead Plaintiff, and Receive Approval of Selected Counsel by Scott Walker [#17], and the Supplemental Memorandum Regarding Appointment of the Iron Workers Funds as Lead Plaintiffs [#86] are OVERRULED.

SIGNED this the 9th day of December 2008.

SAM SPARKS
UNITED STATES DISTRICT JUDGE