**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated, | § Case No.: 6:13-cv-00736-KNM |
| | § |
| | § Magistrate Judge K. Nicole Mitchell |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | § |
| | § |
| | § |
| Defendants. | § |
| | § |

*Captions Continue on Next Page*


**REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF THE MOTION OF ALETTI GESTIELLE SGR S.P.A.**
**FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS**
**LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

|  | § |  |
| --- | --- | --- |
| ERHAN ERDEM, Individually and on Behalf of All Other Persons Similarly Situated, | § § | Case No.: 6:13-cv-00750-KNM |
|  | § | Magistrate Judge K. Nicole Mitchell |
| Plaintiff(s), | § |  |
|  | § |  |
| vs. | § |  |
|  | § |  |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | § § § |  |
|  | § |  |
| Defendants. | § |  |
|  | § |  |
|  | § |  |
| SHAWN GILBERT, Individually and on Behalf of All Others Similarly Situated, | § § | Civil Action No.: 6:13-cv-00810-KNM |
|  | § | Magistrate Judge K. Nicole Mitchell |
| Plaintiff, | § |  |
|  | § |  |
| vs. | § |  |
|  | § |  |
| J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN, III and KENNETH H. HANNAH, | § § § |  |
|  | § |  |
| Defendants. | § |  |
|  | § |  |

Because no movant has advanced any proof to rebut the statutory presumption that Aletti[1] is the most adequate plaintiff to lead this litigation, the Court should grant Aletti's motion and deny those of its competitors.[2]  Confronted with a respected investor with the largest losses of any movant seeking appointment, the other movants in this action resort to long-rejected arguments and even to changing the way they calculate their own losses in an effort to salvage their applications.  These efforts do not withstand scrutiny and should be rejected.

The Court can make swift work of the suggestion that non-U.S. investors like Aletti who have purchased stock on the New York Stock Exchange do not enjoy the protections of the federal securities laws.  The U.S. Supreme Court held in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2888 (2010), that Exchange Act claims may be brought "in connection with the purchase or sale of a security listed on an American stock exchange," irrespective of the nationality of a plaintiff.

Similarly far-fetched is the notion that res judicata concerns preclude courts from appointing Italian investors as lead plaintiffs under the PSLRA.  A U.S. District Court recently dismissed as "mere speculation" the suggestion that "a judgment of this Court would not be granted res judicata effect in Italy."  *Murdeshwar v. Searchmedia Holdings Ltd.*, No. CV 10-6794, slip op. at 2 (C.D. Cal. Dec. 15, 2010) (citation omitted), attached as Ex. A to the Ajamie Reply Decl.  After an extensive survey of law, the court concluded that "there does not appear to be an obvious problem with Italian recognition of United States judgments involving an Italian plaintiff."  The court further observed that "in any event, even if Italian courts would not enforce

---

[1]  All capitalized terms herein take their definitions from Aletti's opening memorandum (Dkt. No. 26) and memorandum in opposition (Dkt. No. 41).  Unless otherwise noted, all docket references are to Case No. 6:13-cv-00736.  Aletti also files herewith the Reply Declaration of Thomas R. Ajamie (the "Ajamie Reply Decl.").

[2]  On December 24, 2013, the Saso Group filed a Notice of Withdrawal (Dkt. No. 43).  Only the motions of Webb and Stavropoulos, Ifantides, and National Shopmen are still pending.

United States class action judgments involving absent Italian parties, there is no reason to believe that a United States judgment involving an Italian party who is voluntarily present and active in the litigation would not be enforced in an Italian court."[3]  *Id.*; *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (explaining that res judicata is "not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court").[4]  The Court will find no contrary authority in *Buettgen v. Harless*, 263 F.R.D. 378, 382-83 (N.D. Tex. 2009), cited by Webb and Stavropoulos and National Shopmen in their opposition memoranda.  That case, which predates *Murdeshwar*, concerns a Swiss lead plaintiff applicant, and is silent regarding Italian law.

There is also no basis to challenge Aletti's standing to seek recovery on behalf of the mutual funds it manages.  The jurisprudence cited by opposing movants, *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), recognizes that third parties can demonstrate standing through a "prudential exception" by showing "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  *Id.* at 109.

---

[3]  Similarly, courts have long rejected the contention that an institutional investor's location abroad presents an impediment to its appointment as lead plaintiff.  *See* id. (rejecting adequacy challenge to institutional investor based on its Italian base, noting that "[f]oreign parties litigate in United States courts with regularity and there is no reason to disqualify [the investor] based on mere distance from the Court"); *see also Moomjy v. HQ Sustainable Maritime Indus., Inc.*, No. C11-0726, 2011 WL 4048796, at *1 (W.D. Wash. Sept. 12, 2011) (noting that the "difficulties [presented by investor's geographical remoteness] can be minimized through the use of modern travel and communications technology").

[4]  The fact that courts regularly appoint institutional investors from Italy and other foreign countries further belies the opposing movants' argument.  *See, e.g.*, *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695, 2011 WL 710704, at *9 (C.D. Cal. Feb. 14, 2011) (granting lead plaintiff motion of investment fund from Luxembourg); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03 CV 2166, 2004 WL 3314943, at *5, *8 (N.D. Ohio May 12, 2004) (appointing as lead plaintiff Austrian investment firm and noting that "[e]ven in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy").

The facts here are consistent with the *Huff* prudential exception.  Italy's Supreme Court recognizes that mutual funds have no legal ability to seek recovery on their own, and must rely upon investment managers to do so.  *See Company Fondi Immobiliari Italiani SGR s.p.a. v. Bankruptcy receivership for SO. GE. CO. s.p.a.*, Cass. Civ. No. 16605/2010, at 5, 6 (Cass. Civ. July 15, 2010), a certified translation of which is attached as Ex. A to the Betti Decl. (Dkt. No. 41) (finding that "[mutual] funds do not constitute legal parties in and of themselves, but rather separate assets of the management company that created them," and mutual funds do not "have legal status").  Mr. Betti further attests to this constraint on the Gestielle Funds' ability to pursue claims on their own behalf.  *See* Betti Decl. ¶ 8 ("Only Aletti has the legal capacity to seek recovery of the Gestielle Funds' losses."); *see also In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) (citation omitted) (finding that "[t]he relationship between mutual fund manager and the mutual fund (which owns the shares) is the requisite type of close relationship, akin to that of trustee and beneficiary" and that investment manager had standing as "the only party who can bring suit for the losses sustained in its mutual funds").  As the *Winstar* court recognized, "Managers of foreign investment funds that are similar in structure to U.S. mutual funds have standing to sue for losses incurred by those funds."  *Id.*

Furthermore, the facts here are consistent with cases from this and other Circuits where courts have concluded that investment managers have standing to pursue claims on behalf of funds they manage.  *See*, *e.g.*, *Hufnagle*, 2011 WL 710704, at *6 (noting that "courts have found that an 'investment advisor has an interest in its own right to receive full and fair disclosures regarding the true value of a company's stock, and therefore is a 'purchaser' under the PSLRA with proper standing to pursue litigation on behalf of its individual clients'") (citation omitted); *see also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 501 (S.D. Tex. 2004) ("'[P]urchasers'

should be 'interpreted broadly to include . . . the parties who make investment decisions.'")
(citation omitted).[5]

In contrast to Aletti, any claim by Webb and Stavropoulos that they are entitled to the
Lead Plaintiff presumption is discredited both by their about-face on the appropriate
methodology for loss calculation, as well as their supplemental submissions to the Court.  Only
after observing that they did not claim the largest interest in the Action using their novel method
do they pivot toward arguing that they have the largest financial interest under the "improper"
loss calculation method used by the other movants—the widely-accepted LIFO method.  It is
hardly surprising that other movants did not rely, like Webb and Stavropoulos, on a loss
causation analysis based on *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), where,
as here, there is a partial disclosure of fraud.  *See, e.g.*, *In re Gen. Elec. Sec. Litig.*, No. 09 Civ.
1951, 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009) (rejecting loss analysis based on *Dura*
concerns because partial disclosures of fraud were alleged).  Even if a *Dura* analysis were
appropriate here, Webb and Stavropoulos' manner of calculation, which does not factor in
purchase price, is unsupported by any authority.  *See, e.g.*, *Perlmutter v. Intuitive Surgical, Inc.*,
No. 10-CV-03451, 2011 WL 566814, at *7 (N.D. Cal. Feb. 15, 2011) (describing two

---

[5]  *Huff*'s conclusion is consistent with earlier authority holding that third-party standing exists
when, as here, an investment manager has submitted a declaration attesting to the legal
incapacity of its funds to sue on their own behalf and the investment manager's authority to sue
for them.  *See Corwin v. Seizinger*, No. 07-cv-6728, 2008 WL 123846, at *4 (S.D.N.Y. Jan. 8,
2008) and Decl. of Axxion S.A. Luxemburg, on Behalf of Its Akrobat Fund-Value, in Supp. of
Its Mot. for Consol., App't as Lead Pl. & Approval of Selection of Lead Counsel, *Corwin* Dkt.
No. 30-1, attached as Ex. B to the Ajamie Reply Decl. (holding that investment manager had
standing based in part on declaration, which included statement that mutual funds were "legally
dependent on [investment manager] to act"); *see also Mass. Laborers' Annuity Fund v. Encysive
Pharm. Inc.*, No. H-06-3022, slip op. at 8 (S.D. Tex. Mar. 20, 2007), attached as Ex. C to the
Ajamie Reply Decl. (finding that fund manager had standing to serve as lead plaintiff based on
"sworn testimony from its corporate officers which satisfies the Court that [the manager] is
authorized to undertake this litigation on behalf of the fund").

approaches for calculating retained shares, both of which take into account the purchase price of the retained shares) (citation omitted).

Even if the Court were to accept Webb and Stavropoulos' claims regarding their financial interest, and it should not, these movants should be denied appointment because they fail to meet the requirements of Rule 23.  The untimely declarations submitted by Webb and Stavropoulos only underscore the lack of a preexisting relationship between these movants, and raise concerns about whether these movants even knew they were seeking joint appointment as of the December 2 deadline for motions.[6]  Stavropolous and Webb both apparently acknowledge that they first communicated during a conference call on December 17—*more than two weeks after* the deadline.  *See* Decl. of W. Kelly Puls, Ex. A ¶ 6, Dkt. No. 39-1.  It was only during that call that these movants "learned about the background of and had the opportunity to ask questions of" each other.  *Id.*; *see also In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-200, 2009 U.S. Dist. LEXIS 44706, at *13 (D. Colo. May 4, 2009) (denying motion of group whose members failed to provide evidence with their motion that they "were even aware of one another prior to their interaction with their joint counsel, let alone how they are prepared to work together to manage this litigation on behalf of the proposed class").[7]

For the reasons set out above, Aletti respectfully requests that the Court: (1) consolidate the above-captioned cases; (2) appoint Aletti as Lead Plaintiff; and (3) approve its selection of Labaton Sucharow as Lead Counsel for the Class; and (4) deny all competing motions.

---

[6]  The Court should reject the belated supplemental materials submitted by Webb and Stavropoulos intended to demonstrate the adequacy of their grouping.  *See, e.g.*, *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *8 n.10 (C.D. Cal. May 2, 2006) (declining to permit group to submit supplemental information to remedy a defect because "there is no reason the [group] could not have submitted such evidence in connection with [its] initial motion[]").

[7]  The financial interests of the remaining movants, Ifantides and National Shopmen, are much smaller than that of Aletti.  Accordingly, the Court need not consider their motions.

Dated: December 30, 2013

Respectfully submitted,

By:   *s/Thomas R. Ajamie*

Thomas R. Ajamie
(Texas Bar No. 00952400)
**AJAMIE LLP**
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
E-mail: tajamie@ajamie.com

*Local Counsel for Aletti Gestielle SGR S.p.A.*

Christopher J. Keller
Eric J. Belfi
Michael W. Stocker
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
E-mail: ckeller@labaton.com
ebelfi@labaton.com
mstocker@labaton.com

*Counsel for Aletti Gestielle SGR S.p.A., and
Proposed Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 30th day of December, 2013, I electronically filed this Reply Memorandum of Law in Further Support of the Motion of Aletti Gestielle SGR S.p.A. for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, using the Court's CM/ECF system, and the memorandum and related papers will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


 *s/Thomas R. Ajamie*
Thomas R. Ajamie