# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS LABORERS' | § | |
| ANNUITY FUND, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3022 |
| | § | |
| ENCYSIVE PHARMACEUTICALS | § | |
| INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a consolidated action brought under the Securities Exchange Act of 1934 by investors who purchased publicly traded securities of Encysive Pharmaceuticals Inc. ("Encysive"). The case is now before the Court on Motions to be Appointed Lead Plaintiff filed by The Graham Group [Doc. # 14] and Oppenheim Pramerica Asset Management S.á.r.l. ("OPAM") [Doc. # 19].[1] Each of these parties seeks appointment as lead plaintiff in this case pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.

---

[1]     Fernando Dow, the Massachusetts Laborers' Pension and Annuity Fund, and the Scott Group have withdrawn their requests to be appointed lead plaintiff, leaving the Graham Group and OPAM as the only parties currently requesting appointment as lead plaintiff.

OPAM responded to the Graham Group's Motion [Doc. # 38], and the Graham Group responded to OPAM's Motion [Doc. # 42]. The Graham Group filed a reply [Doc. # 54], as did OPAM [Doc. # 55]. Following a hearing on January 18, 2007, the parties supplemented their briefing. OPAM filed a supplement to its original Motion [Doc. # 60], to which both Encysive[2] [Doc. # 61] and the Graham Group [Doc. # 62] responded. The Graham Group filed a Reply to Encysive's response [Doc. # 63], OPAM filed a "Supplemental Reply Brief" [Doc. # 64], and the Graham Group filed its own "Supplemental Reply Brief" [Doc. # 73].

Having reviewed the parties' submissions, all matters of record, and the relevant legal authorities, the Court **appoints** OPAM as lead plaintiff in this matter. The Court **appoints** Motley Rice LLC as lead counsel and Zummo & Midkiff, L.L.P. as liaison counsel.

## I.   BACKGROUND

Encysive, a pharmaceutical firm based in Houston, Texas, developed Thelin, a drug intended to treat pulmonary arterial hypertension. Encysive allegedly claimed that Thelin had reached an advanced stage in the review process at the Food and Drug Administration ("FDA"). Plaintiffs allege that expectations for the profitability of this

---

[2]      Encysive, the defendant in this matter, takes no position regarding whether OPAM or the Graham Group should be appointed lead plaintiff. *See* Statement of Defendants Regarding Lead Plaintiff Motions [Doc. # 55].

new drug caused the value of Encysive's shares to increase, allowing the company to complete two successful public offerings.

In March 2006, however, the FDA asked Encysive to provide more information and advised Encysive it might be required to conduct further studies to ensure that Thelin was safe and effective.  The FDA announced that it would withhold approval of the drug pending its review of the new data.  The price of Encysive's stock fell 49% on the news, dropping from $9.08 to $4.60 per share.  When Encysive acknowledged in July that the FDA still had concerns, the shares' value dropped an additional 40%.

Plaintiffs allege that Encysive and its officers made misleading statements regarding Thelin's anticipated commercial value and its prospects for FDA approval, and failed to disclose adverse material facts.  Plaintiffs also allege that Encysive's officers engaged in insider trading to capture profits from the company's artificially high valuation.  Massachusetts Laborers' Annuity Fund and others filed suit against Encysive in the fall 2006.  All of the lawsuits have been consolidated into this case.

## II.   THE PSLRA

The PSLRA requires plaintiffs in a securites fraud case to publish a notice to members of the prospective class, informing them of "the pendency of the action, the claims asserted therein, and the purported class period."   15 U.S.C.  §  78u-4(a)(3)(A)(i)(I).  Within 60 days of the notice, any prospective class member may file

a motion to serve as lead plaintiff for the class. *Id*. The court is then required to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id*. § 78u-4(a)(3)(B)(i).

The court's selection of a lead plaintiff is guided by a rebuttable presumption that the party that responded to the initial notice, has the largest financial interest in the case, and meets the requirements of Federal Rule of Civil Procedure 23 is the "the most adequate plaintiff." *Id*. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted with evidence that the prospective lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

The Fifth Circuit has stated that "Congress enacted the 'lead plaintiff' provisions of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), to direct courts to appoint, as lead plaintiff, the most sophisticated investor available and willing so to serve in a putative securities class action. Insofar as possible following the procedure prescribed by § 78u-4(a)(3)(B), the lead plaintiff should be an investor capable of understanding and controlling the litigation." *Berger v. Compaq Computer Corp.*, 279 F.3d 313 (5th Cir. 2002).

## III. ANALYSIS

### A. Initial Presumption

Each candidate filed its Motion within the requisite time period.  Therefore, in order to apply the statutory rebuttable presumption that one candidate is more fit to serve as lead plaintiff, the Court looks to the candidates' comparative losses and considers whether the candidates satisfy the typicality and adequacy requirements of Rule 23.

The Graham Group consists of a husband, his wife, and a family testamentary trust for which the husband is the trustee.  It claims to be a cohesive group, able to make joint decisions based on their marital relationship.  The Graham Group asserts, as does OPAM, that its claims are typical of the claims of members of the proposed Class.  It represents that it is "prepared to direct the course of this Action and to fulfill their responsibilities as class representative." *See* Memorandum of Law in Support of the Motion of the Graham Group ("Graham Group Memorandum") [Doc. # 15], at 6. The Graham Group alleges a loss of $384,371.40.

OPAM is a large "fund company that launches and manages investment funds under Luxembourgian law." Memorandum of Law in Support of the Motion of OPAM ("OPAM Memorandum") [Doc. # 23], at 6.  Its institutional status weighs in its favor in the Court's analysis, as "Congress has unequivocally expressed its preference for

securities fraud litigation to be directed by large institutional investors."[3]  *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997).  OPAM's fund lost over $1.67 million, approximately four times the Graham Group's losses.

The Court finds that OPAM's claims are typical because they "arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  *See Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988).   OPAM has established the "adequacy" requirement of Rule 23 by showing that it does not have a conflict with the class,[4] that it is willing and able to take an active role in the litigation and protect the class members' interests, and that it has chosen qualified, experienced counsel.  *See, e.g., Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

In its Response, the Graham Group contends that OPAM has not actually incurred any losses because it is a fund manager, not an investor in its own right.  In *In re Molson Coors Brewing Co. Securities Litigation*, 233 F.R.D. 147 (D. Del. 2005),

---

[3]  The Graham Group argues that Congress's preference is for pension funds, not mutual funds, but cites no authority prohibiting mutual funds from serving as lead plaintiff.

[4]  The Graham Group argued that OPAM has a potential conflict of interest based on its fiduciary duties to its own investors.  When the Graham Group initially presented this argument, some of OPAM's investors still owned Encysive shares.  Because that is no longer the case, this argument has become moot.  Additionally, contrary to the Graham Group's suspicions, the Court finds nothing nefarious in OPAM's decision to sell the remaining Encysive shares.

the Delaware district court agreed to attribute a fund's losses to the fund manager where the manager presented evidence through an affidavit that it was an "attorney in fact for the investors in the identified funds, has authority to make decisions and act on their behalf, and is able to recover moneys for them." *Id.* at 152. In this case, OPAM has presented the joint affidavit of Max von Frantzius and Andreas Jockel, OPAM's chief legal counsel and managing director, respectively, attesting that "OPAM controls and manages and is attorney-in-fact for the fund." OPAM Memorandum, Exhibit A, ¶ 2. It is OPAM, not the individuals investing in the various funds managed by OPAM, who makes investment decisions on behalf of those individual investors. The Court agrees with the Delaware Court that this sworn evidence is sufficient to attribute the fund's losses to OPAM for purposes of this securities fraud litigation. Given the magnitude of those losses, OPAM is entitled to the statutory presumption that it is the most appropriate lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.    Rebuttal Evidence

The PSLRA allows contenders for the role of lead plaintiff to rebut the statutory presumption by submitting proof that the party benefitting from the presumption is subject to unique defenses not applicable to the overall class or that it "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Graham Group presents several arguments in an attempt to rebut the statutory

presumption in OPAM's favor.  For the reasons discussed below, the Court finds none of the arguments persuasive.

The Graham Group challenges OPAM's standing to bring this lawsuit because it is merely a fund manager with an investment advisor, Medical Strategy GmbH ("Medical Strategy").  The evidence does not support the Graham Group's argument. OPAM has submitted sworn testimony from its corporate officers which satisfies the Court that OPAM is authorized to undertake this litigation on behalf of the fund.[5] OPAM has also shown that it makes the investment decisions for its funds and that its investment advisor is simply that – an independent advisor whose suggestions OPAM can accept or reject.  Based on the current record, OPAM appears to have standing to pursue this securities fraud litigation.

The Graham Group also asserts that OPAM cannot adequately represent the interests of the class because it is jointly owned by Sal Oppenheim International, S.A. and Pramerica International, a trade name of Prudential.  According to the Graham Group, Prudential was an underwriter for Encysive's public offerings at issue in this suit.  The Graham Group argues that Prudential will be "an important fact witness" in this case, and alleges that Prudential may have "contributed in some actionable form

---

[5]      A similar affidavit was found to be sufficient in *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003).

to the misinformation in the market concerning Encysive and its prospects." *See* Graham Group Response [Doc. # 42], at 9.  The Graham Group, however, fails to present sufficient evidence to support its argument and thereby rebut the presumption in OPAM's favor.  In OPAM's supplementary declaration, Von Frantzius and OPAM senior associate Johann Will state that OPAM has "never discussed its purchase of Encysive stock with Prudential" and that Prudential "has not underwritten any stock for Encysive since 2000." *See* Von Frantzius/Will Declaration, Exh. B to OPAM's Reply Memorandum [Doc. # 54], ¶ 5.  According to OPAM, Encysive conducted several public offerings after 2000, none of which were underwritten by Prudential. Consequently, Prudential's role in Encysive's public offerings predates by six years the drop in share prices on which this suit is predicated, and is not a barrier to OPAM's appointment as lead plaintiff.

The Graham Group also contends that OPAM's complex corporate structure and foreign ownership preclude its service as lead plaintiff.  The argument is unpersuasive. Courts have appointed foreign corporations as lead plaintiff in similar securities litigation. *See, e.g., In re Molson*, 233 F.R.D. at 151-52.  OPAM has clearly indicated its willingness, if appointed lead plaintiff, to send its representatives to the United States to carry out its fiduciary duty to the class.  As discussed above, large institutional

investors—which routinely have complex corporate structures—are preferred as lead plaintiffs.  *See Gluck*, 976 F. Supp. at 548.

The Graham Group also argues that OPAM, as a foreign entity, may not be bound by *res judicata* in this case.  Accordingly, it contends, OPAM would have a reduced incentive to represent the class, because it could later pursue a second round of litigation in a European court.  OPAM has, however, affirmed that it and its funds will be bound by any judgment or other order in this case.  In reaching its decision to appoint OPAM as lead plaintiff, the Court relies on OPAM's assertion in this regard, and OPAM will not be allowed to take a different position in the future.

The Graham Group challenges OPAM's ability to serve as lead plaintiff by questioning OPAM's liability for potential sanctions and costs.  As an initial matter, the Court anticipates that all parties and their counsel will prosecute and defend this case in a professional manner and that, as a result, sanctions will not become an issue. Moreover, OPAM has affirmatively committed to pay any sanctions or costs which may be imposed and the Court will, if necessary, hold OPAM to its commitment.

The Graham Group argues also that OPAM made "off-market" trades that will prevent it from relying on the "fraud on the market" argument on the reliance issue.[6]

---

[6]     Contrary to the Graham Group's contention in its "Supplemental Reply Brief," OPAM has presented clear sworn testimony that all shares of Encysive stock were purchased on the NASDAQ stock exchange.  *See* Von Frantzius/Will Declaration, ¶ 6.

In support of this argument, the Graham Group points to trades that are not within the high and low NASDAQ prices for the day indicated.  OPAM has shown, however, that the dates listed for its trades are the settlement dates, not the transaction dates as assumed by the Graham Group.  As a result, the factual basis for the Graham Group's argument has been refuted.

The Graham Group argues that OPAM will also face a unique challenge to its reliance on the "fraud on the market" argument because the fund's annual report included a statement that its investment strategy was to take advantage of market inefficiency.  The Graham Group's reliance on this statement, which is taken out of context, is unpersuasive.  The statement is within a section of the 2004 Annual Report [Exh. C to Doc. # 64] describing the large institutional investors' focus on companies with a high market capitalization, leaving companies with smaller capitalization "out of the picture."  OPAM describes the result of this lack of institutional investors' research as "an inefficient market for these second-line stocks."  OPAM then states that Medical Strategy, its investment advisor, can "exploit this market inefficiency" by conducting its own "carefully targeted analysis" of these "as yet unknown companies." Neither OPAM nor Medical Strategy indicate in the 2004 Annual Report that Encysive is considered an "as yet unknown" company that has been "out of the picture."  Indeed, the evidence in the record is to the contrary.  Moreover, Medical Strategy has, through

its declaration, stated under oath that it "relied on the integrity of the market for Encysive shares in making its investment recommendation to OPAM . . .." *See* Declaration of Medical Strategy (signed by Michael Fischer, its Chief Executive Officer), Exh. A to Supplemental Reply Brief [Doc. # 64], ¶ 6.  The comments in the 2004 Annual Report, when read in context and in light of the record as a whole, do not raise a unique defense against OPAM.

The Graham Group contends that OPAM is a "professional plaintiff," and that Congress's intent in crafting the PSLRA was to prevent investors from taking lead roles in multiple securities cases.  The PSLRA specifically prohibits any party from being a lead plaintiff in more than five securities class actions during a three-year period.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi).  Although OPAM has *sought* to become a lead plaintiff in five different securities class actions in 2006, the Graham Group concedes that OPAM has been appointed as a lead plaintiff only once.

## III.   CONCLUSION AND ORDER

OPAM has demonstrated that its losses were significantly greater than any other investor in the proposed class, and more than three times larger than the Graham Group's losses.  It satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  Consequently, OPAM is presumed to be the better

candidate for lead plaintiff.  The Graham Group has not refuted this presumption in OPAM's favor.  Accordingly, it is

ORDERED that Oppenheim Pramerica Asset Management S.á.r.l.'s Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel  [Doc. # 19] is **GRANTED**.  OPAM is hereby **APPOINTED** lead plaintiff.  The law firm of Motley Rice LLC is **APPOINTED** lead counsel, and Zummo & Midkiff, L.L.P. is **APPOINTED** liaison counsel.  It is further

ORDERED that the Graham Group's Motion to be Appointed Lead Plaintiff [Doc. # 14] is **DENIED**.

The Clerk of Court is directed to change the style of this case to reflect that "Oppenheim Pramerica Asset Management S.á.r.l., on behalf of itself and others similarly situated" is the lead plaintiff in this case.

**SIGNED** at Houston, Texas, this **20th** day of **March**, **2007**.

Nancy F. Atlas
United States District Judge