# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| ALAN B. MARCUS, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:13-CV-736 |
| | § | |
| J.C. PENNEY CO., INC., *et al*. | § | |

| | | |
|---|---|---|
| ERHAN ERDEM, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:13-CV-750 |
| | § | |
| J.C. PENNEY CO., INC., *et al*. | § | |

| | | |
|---|---|---|
| SHAWN GILBERT, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:13-CV-810 |
| | § | |
| J.C. PENNEY CO., INC., *et al*. | § | |

## ORDER

Before the Court are the following motions that arise out of three separate but related actions:

- Motion of Heath Clute For Consolidation of the Related Actions, Appointment as Lead Plaintiff and Approval of His Selection of Counsel.[1]

- Notice and Opposed Motion of Omar Ahmed for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel and Liaison Counsel.[2]

- Movant the Saso Group's Motion for (1) Consolidation of Related Actions; (2) Appointment of Lead Plaintiff; and (3) Appointment of Lead Counsel and Brief in Support of the Motion.[3]

---

[1] Civil Action No. 6:13-cv-736, Docket No. 16; Civil Action No. 6:13-cv-750, Docket No. 7; and Civil Action No. 6:13-cv-810, Docket No. 5.
[2] Civil Action No. 6:13-cv-736, Docket No. 18; Civil Action No. 6:13-cv-750, Docket No. 8; and Civil Action No. 6:13-cv-810, Docket No. 6.

1

- Motion of the J.C. Penney Investor Group [Webb] to Consolidate Related Cases.[4]

- Motion of J.C. Penney Investor Group [Webb] to Be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel.[5]

- JC Penney Investor Group's [Aguilar] Motion and Memorandum of Law in Support of Motion to: (1) Consolidate Related Actions; (2) Appoint JC Penney Investor Group [Aguilar] as Lead Plaintiff; and (3) Approve JC Penney Investor Group's [Aguilar] Choice of Lead Counsel and Local Counsel.[6]

- Motion of Aletti Gestielle SGR S.p.A. for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, and Memorandum in Support Thereof.[7]

- Christos Ifantides' Motion for Consolidation of Related Actions, Appointment of Lead Plaintiff and Approval of Selection of Counsel.[8]

- Movant National Shopmen Pension Fund's Motion for Consolidation, Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel.[9]

- Movant Heath Clute's Motion to Withdraw his Motion to Consolidate Cases, Only as to Lead Plaintiff.[10]

For the following reasons, the Court **GRANTS** National Shopmen Pension Fund's motion.[11] The Court also **GRANTS** Movant Heath Clute's Motion to Withdraw his Motion to Consolidate

---

[3] Civil Action No. 6:13-cv-736, Docket No. 21; Civil Action No. 6:13-cv-750, Not Filed; and Civil Action No. 6:13-cv-810, Not Filed.
[4] Civil Action No. 6:13-cv-736, Docket No. 22; Civil Action No. 6:13-cv-750, Docket No. 11; and Civil Action No. 6:13-cv-810, Docket No. 9.
[5] Civil Action No. 6:13-cv-736, Docket No. 23; Civil Action No. 6:13-cv-750, Docket No. 12; and Civil Action No. 6:13-cv-810, Docket No. 10.
[6] Civil Action No. 6:13-cv-736, Docket No. 24; Civil Action No. 6:13-cv-750, Docket No. 14; and Civil Action No. 6:13-cv-810, Docket No. 11.
[7] Civil Action No. 6:13-cv-736, Docket No. 26; Civil Action No. 6:13-cv-750, Docket No. 13; and Civil Action No. 6:13-cv-810, Docket No. 12.
[8] Civil Action No. 6:13-cv-736, Docket No. 27; Civil Action No. 6:13-cv-750, Docket No. 18; and Civil Action No. 6:13-cv-810, Docket No. 16.
[9] Civil Action No. 6:13-cv-736, Docket No. 29; Civil Action No. 6:13-cv-750, Docket No. 15; and Civil Action No. 6:13-cv-810, Docket No. 13.
[10] Civil Action No. 6:13-cv-736, Docket No. 33; Civil Action No. 6:13-cv-750, Docket No. 16; and Civil Action No. 6:13-cv-810, Docket No. 14.
[11] Civil Action No. 6:13-cv-736, Docket No. 29; Civil Action No. 6:13-cv-750, Docket No. 15; and Civil Action No. 6:13-cv-810, Docket No. 13.

Cases, Only as to Lead Plaintiff.[12] The remaining motions for lead plaintiff are **DENIED**. All motions, by either party, not previously ruled on in Civil Action Numbers 6:13-cv-750 and 6:13-cv-810 are hereby **DENIED**.

## FACTUAL BACKGROUND

J.C. Penney Company, Inc. ("JCP") is based out of Plano, Texas, and owns a chain of apparel and home furnishing department stores. JCP is a publically traded company with its stock listed on the New York Stock Exchange ("NYSE") under the ticker symbol "JCP."

Currently pending before the Court are three related securities class action lawsuits entitled:

> *Marcus v. J.C. Penney Co., Inc.*, Civil Action No. 6:13-cv-736
> *Erdem v. J.C. Penney Co., Inc.*, Civil Action No. 6:13-cv-750
> *Gilbert v. J.C. Penney Co., Inc.*, Civil Action No. 6:13-cv-810.

On October 1, 2013, Plaintiff Alan B. Marcus initiated the first lawsuit against JCP and two of its executive officers, Myron E. Ullman, III and Kenneth H. Hannah (collectively "Defendants"). Plaintiff Marcus filed the lawsuit on behalf of all persons who purchased JCP common stock between August 20, 2013 and September 26, 2013 ("the Short Class Period"), and alleged Defendants made "materially false and misleading statements" regarding JCP's financial health.[13] Also on October 1, 2013, a notice was published in *BusinessWire* stating a class action had been initiated against Defendants.[14] The notice instructed potential members of the proposed class that their right to make a motion to serve as lead plaintiff expired in sixty days (December 2, 2013).[15] Thereafter, Plaintiff Erhan Erdem and Plaintiff Shawn Gilbert filed lawsuits making substantially similar allegations against overlapping defendants and class periods as Plaintiff

---

[12] Civil Action No. 6:13-cv-736, Docket No. 33; Civil Action No. 6:13-cv-750, Docket No. 16; and Civil Action No. 6:13-cv-810, Docket No. 14.
[13] Civil Action No. 6:13-cv-736, Docket No. 1 at ¶ 3.
[14] *See* Civil Action No. 6:13-cv-736, Docket No. 16-4; Civil Action No. 6:13-cv-750, Docket No. 7-4; and Civil Action No. 6:13-cv-810, Docket No. 5-4.
[15] *Id., see also* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Marcus.[16] On October 21, 2013, Plaintiff Bruce Murphy filed a lawsuit alleging similar allegations as Plaintiffs Marcus, Erdem, and Gilbert against Defendants and an additional J.C. Penney Executive, William Ackman.[17] Plaintiff Murphy also filed his action on behalf of all persons who purchased JCP common stock, however he asserted the proposed class period was between May 16, 2013 and September 26, 2013 ("the Long Class Period").[18] On October 23, 2013, a notice was published in *Investor's Business Daily* informing potential class members of the lawsuit filed by Plaintiff Murphy, and of the Long Class Period.[19] On December 17, 2013, Plaintiff Murphy filed a Notice of Voluntary Dismissal Without Prejudice[20] terminating his lawsuit.

On December 2, 2013, eight separate Movants sought appointment as lead plaintiff (with their choice of lead counsel) under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Additionally, all Movants requested the pending actions be consolidated. Four movants withdrew from lead plaintiff consideration, four movants remain: Aletti Gestielle SGR S.p.A. ("Aletti"), J.C. Penney Investor Group [Webb] ("JCPIG-Webb"), Christos Ifantides ("Ifantides"), and National Shopmen Pension Fund ("Pension Fund"). The Court set the motions for a hearing, and ordered Defendants and all interested Movants to attend.[21]

## CONSOLIDATION

In accordance with the Undersigned's ruling from the bench, at the hearing held on January 28, 2014, the Court **ORDERS** that the above-styled cases shall be consolidated. The

---

[16] Civil Action No. 6:13-cv-750, filed on October 7, 2013, Docket No. 1; and Civil Action No. 6:13-cv-810, filed on October 24, 2013, Docket No. 1.
[17] Civil Action No. 6:13-cv-800, Docket No. 1.
[18] *Id.* at ¶ 1.
[19] Civil Action No. 6:13-cv-736, Docket No. 50-2; Civil Action No. 6:13-cv-750, Docket No. 34-2; and Civil Action No. 6:13-cv-810, Docket No.31-2.
[20] Civil Action No. 6:13-cv-800, Docket No. 17.
[21] None of the withdrawn Movants attended the hearing.

earliest filed civil action shall serve as the lead case.[22] All motions and notices shall be filed in the consolidated lead case. All motions, by either party, not previously ruled on in related Civil Action Numbers 6:13-cv-750 and 6:13-cv-810 are hereby **DENIED**.

## APPLICABLE LAW

The Private Securities Litigation Reform Act of 1995 ("PSLRA") establishes the procedure for appointing a lead plaintiff in an action "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA requires that within twenty days after filing the class action, "the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (1) of the pendency of the action, the claims asserted therein, and the purported class period; and (2) that, not later than [sixty] days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i). The Court must then appoint the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  After deciding any pending motion to consolidate the related actions, the Court shall consider any motion made by a purported class member to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The PSLRA requires all proposed lead plaintiffs to submit a sworn declaration to assure the Court that the proposed plaintiff: (1) has suffered financial harm; (2) is not a serial litigant; and (3) is interested and able to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). There is then a "rebuttable presumption" that the most adequate plaintiff has: (1) either filed the complaint or made a motion in response to a notice; (2) the largest financial interest in the relief sought by the class during the proposed class period; and (3) otherwise satisfied the requirements

---

[22] The entitled and numbered cause of action being: *Marcus v. J.C. Penney Co., Inc.*, Civil Action No. 6:13-cv-736.

of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption can be rebutted only when a class member offers proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## I. Lead Plaintiff

As all four Movants satisfied the first factor of section 78u-4(a)(3)(B)(iii)(I), by filing timely motions requesting appointment as lead plaintiff, determining lead plaintiff centers on the second and third factors.

### A. Largest Financial Interest

The Movants dispute who has the largest financial interest and how to calculate that interest. First, Aletti Gestielle SGR S.p.A. ("Aletti") calculated its loss based on the Last In First Out ("LIFO") Method and claimed it lost $610,343.[23] Next, Christos Ifantides ("Ifantides") stated courts look at the *Lax* Test to determine the financial interest and that the approximate losses suffered were given the most weight.[24] Ifantides claimed his approximate losses were $283,883.19, but does not explain how he arrived at that figure.[25] National Shopmen Pension Fund ("Pension Fund") does not state which methodology it used to calculate its financial interests only that its losses were over $100,000.[26] Finally, Movant J.C. Penney Investor Group [Webb] ("JCPIG-Webb") stated it lost $605,270, and that the proper method to calculate the

---

[23] Civil Action No. 6:13-cv-736, Docket No. 26 at 7 (Aletti based its calculation on a mean trading price of $8.1582 between September 27, 2013 and November 29, 2013. *See* Docket No. 28-2 at 2.).
[24] Civil Action No. 6:13-cv-736, Docket No. 27 at 6–7 (The *Lax* Factors as listed in *Buettgen v. Harless, et al.*, 263 F.R.D. 378, 380 (N.D. Tex. 2009).)
[25] Civil Action No. 6:13-cv-736, Docket No. 27 at 7.
[26] Civil Action No. 6:13-cv-736, Docket No. 29 at 5.

largest financial interest is the *Dura* Method.[27] Using the *Dura* Method, JCPIG-Webb claims it calculated its financial interest based on the number of shares purchased during the Long Class Period, and determined which shares were held during each of the partial corrective disclosures.[28] JCPIG-Webb then arrived at its approximate loss by multiplying the shares held at the partial corrective disclosures by the drop in price as a result of the partial corrective disclosures.[29] JCPIG-Webb also calculated what its approximate loss would be under the damage cap as stated in the PSLRA, then reported whichever method yielded the lower figure.[30]

Most courts determine which potential lead plaintiff has the largest financial interest by applying a four factor test that was first set out in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, *5 (N.D. Ill. Aug. 11, 1997). The *Lax* Test suggests courts look at: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs," with the approximate loss suffered being given the most weight. *Id.; See also Buettgen v. Harless, et al.*, 263 F.R.D. 378, 380 (N.D. Tex. 2009); and *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002). However, some courts in various districts prefer determining the approximate loss suffered by a potential lead plaintiff using the LIFO Method. *In re eSpeed, Inc. Securities Litigation*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005), *see also Richardson v. TVIA, Inc.*, 2007 WL 1129344, *4 (N.D. Cal. April 16, 2007). The LIFO Method takes into account gains that might have accrued by the potential lead plaintiff during the class period due to the inflation of the stock's price. *Id.*

---

[27] Civil Action No. 6:13-cv-736, Docket No. 23 at 8–9 (The financial interest calculated using the *Dura* Method should be used when that figure is less than the statutory cap provided in the PSLRA). *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005).
[28] *Id.* at 9.
[29] *Id.*
[30] *Id.*

Here, the Court looked to the *Lax* Test and first determined the net shares retained by taking the difference between total number of shares purchased and the total number of shares sold during the class period.[31] The actual purchase prices of those net shares are calculated according to the most recent price actually paid by the potential lead plaintiff, on or prior to September 26, 2013.[32] Next, the Court calculated the 90-day mean trading price as described in the PSLRA.[33] 15 U.S.C. § 78u-4(e)(1). Finally, the approximate loss suffered by the potential lead plaintiff is the difference between the purchase price of the net shares retained and the value of the net shares using the 90-day mean trading price[34] of the stock.

The relevant largest financial interest data for each potential lead plaintiff is:

| Movant | Total Shares Purchased | Net Shares Retained | Net Expenditures | Loss Claimed in Motion | LIFO Loss |
|---|---|---|---|---|---|
| Aletti Gestielle SGR S.p.A.[35] | 140,000 | 140,000 | ($1,752,494) | ($610,343.25) | ($587,694.36) |
| The J.C. Penney Investor Group – [Webb][36] | 540,536 | 134,200 | ($1,524,920) | ($605,270) | ($408,376) |
| Christos Ifantides[37] | 259,060[38] | 138,540 | ($1,504,766.75) | ($283,883.19) | ($283,883.19)[39] |
| National Shopmen Pension Fund[40] | 17,300 | 17,300 | ($243,238) | (Over $100,000) | ($99,302) |

---

[31] The Court used the Long Class Period, May16, 2013 to September 26, 2013, for the purpose of its analysis.
[32] Defendants issued a press release on September 27, 2013 stating a secondary offering of JCP stock. *See* Pension Fund's Motion for Lead Plaintiff, Civil Action No. 6:13-cv-736, Docket No. 29 at 3.
[33] The 90–day mean trading price of JCP stock was $8.32 from September 27, 2013 to December 26, 2013.
[34] If shares were sold prior to December 26, 2013, the Court used the actual sale price. Where no sales were indicated during the 90-day period, the Court assumed the shares were retained and used the 90-day mean trading price.
[35] Calculations based on the combined totals lost by the two mutual funds, as reported in the declaration supporting Aletti's Motion for Lead Plaintiff. Civil Action No. 6:13-cv-736, Docket No. 28-2 at 2.
[36] Calculations based on the combined totals reported in the declarations supporting JCPIG-Webb's Motion for Lead Plaintiff. Civil Action No. 6:13-cv-736, Docket No. 10-1 at 6 and 8–10.
[37] Calculations based on the combined totals reported in the declaration supporting Ifantides's Motion for Lead Plaintiff. Civil Action No. 6:13-cv-736, Docket No. 27-4 at 4–5.
[38] The Court did not include shares that were sold short or bought to cover.
[39] Ifantides sold the net shares purchased during the class period on September 27, 2013. Thus, the actual sale price for those shares was used when calculating his financial interest.

Thus, regardless of which method is used, the evidence establishes that Aletti has the largest financial interest, followed by JCPIG-Webb, Ifantides, and Pension Fund.

## B. Rule 23 of the Federal Rules of Civil Procedure

In order to become the presumptive lead plaintiff, a potential lead plaintiff must also satisfy the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii). For the purposes of the lead plaintiff analysis, only the typicality and adequacy prongs of Rule 23 are relevant. *Buettgen*, 263 F.R.D. at 381. Rule 23 requires that a potential lead plaintiff's claims or defenses be typical of the class, and that the interests of the class will be "fairly and adequately protect[ed]." FED. R. CIV. P. 23(a)(3) and (4). A potential lead plaintiff's claim or defense need not be identical to every member of the proposed class, but they must have "the same essential characteristics as those of the other class members." *Buettgen*, 263 F.R.D. at 381. Furthermore, to "fairly and adequately protect" the proposed class, a potential lead plaintiff's interests cannot conflict with the other proposed class members and must be ready, willing, and able to prosecute the action. *Id.*

### i. Movant Aletti Gestielle SGR S.p.A.

An Italian investment firm, Movant Aletti Gestielle SGR S.p.A. ("Aletti"), has the largest financial interest of all the movants vying for lead plaintiff, and would be presumptive lead plaintiff if it satisfies the requirements of Rule 23. However, Aletti is subject to unique defenses and flaws that render it inadequate to serve as lead plaintiff in this action. First, there is an unresolved issue as to whether Aletti has standing to file suit. Second, there is a risk appointing Aletti lead plaintiff would not give a judgment from this Court a *res judicata* effect.

---

[40] Calculations based on the combined totals reported in the declaration supporting Pension Fund's Motion for Lead Plaintiff. Civil Action No. 6:13-cv-736, Docket No. 29-2 at 4.

Article three of the Constitution requires a litigant to have "standing" in order to bring suit in federal court. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975), *see also Allen v. Wright*, 468 U.S. 737, 751 (1984). At minimum, a litigant must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). To assure the Court of standing, the PSLRA requires all proposed lead plaintiffs to submit a sworn declaration stating that the proposed plaintiff has suffered financial harm. 15 U.S.C. § 78u-4(a)(3)(A)(I).

In its motion to serve as lead plaintiff, Aletti does not provide any supporting evidence showing it has standing in this action. In fact, Aletti's declaration supporting its motion explicitly states that two mutual funds it manages, Gestielle Obiettivo America and Gestielle Obiettivo Internazionale, were the entities harmed.[41]

Another core principle of this judicial system is *res judicata*. Defendants rely on the finality of a judgment, and that the matter cannot be raised again, in either this Court or a court in a different district. *Buettgen*, 263 F.R.D. at 382. Plaintiffs rely on having an enforceable judgment against defendants. *Id.* While there is no authority on whether Italy would or would not honor a judgment from the United States, there is a "risk that foreign courts would not give the Court's judgment *res judicata* effect." *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 1721484, at *1 (S.D.N.Y. April 11, 2008) (denied a foreign investor's motion to reconsider the court's denial if its lead plaintiff motion), *see also Buettgen*, 263 F.R.D. at 382.

Further, during the hearing held on January 28, 2014, Aletti evaded the *res judicata* and standing issues by suggesting that these arguments rebutting the presumption that it should serve

---

[41] *See* Civil Action No. 6:13-cv-736, Docket No. 28-2.

as lead plaintiff are too speculative for the Court to consider at this stage.[42] While Aletti admitted it was not speculative that it would at some point need to establish its standing, it failed to do so by the statutorily imposed deadline (December 2, 2013).[43] Even though it is unclear whether there would be an issue with a judgment taking *res judicata* effect, this Court is not willing to subject the entire proposed class to that risk. Thus, Aletti is not the most adequate lead plaintiff.

### ii. Movant J.C. Penney Investor Group [Webb]

Movant J.C. Penney Investor Group [Webb] ("JCPIG-Webb") has the second largest financial interest, and would be next in line to serve as presumptive lead plaintiff if the group satisfies the requirements of Rule 23. However, JCPIG-Webb is also subject to unique defenses and flaws that render it inadequate to serve as lead plaintiff in this action.

The PSLRA expressly allows for a "person or group of persons" to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Courts generally permit a group to serve as lead plaintiff, if that would best serve the class. *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 589 F.Supp.2d 388, 392 (S.D. N.Y. 2008). If such a group moves for appointment as lead plaintiff, there must be an evidentiary showing that any unrelated members of the group would be able to function cohesively, and effectively manage the litigation independent of counsel, not merely that they will do so. *Id.* Courts consider: (1) the existence of a pre-litigation relationship among the members; (2) the group members' participation in the litigation so far; (3) plans for cooperation; (4) the sophistication of the group members; and (5) whether the group members chose outside counsel, and not vice versa. *Id.*

Here, JCPIG-Webb failed to show that the individuals had any pre-existing relationship prior to filing their motion. In fact, the evidence provided to the Court indicates that the first time

---

[42] *See* Lead Plaintiff Oral Argument Tr. at 30:21–31:8.
[43] *See* Lead Plaintiff Oral Argument Tr. at 31:9–14.

the group members spoke was more than two weeks after the PSLRA lead plaintiff deadline (December 2, 2013).[44] Additionally, the group members' declarations expressing an intention to communicate with each other and stating there is an agreement on how decisions for the litigation will be made[45] are conclusory in nature. Those types of statements do not reassure the Court that the group members will actually be able to function effectively to manage this litigation. Thus far, the record shows JCPIG-Webb's participation in the litigation is minimal and lawyer driven. This is not the type of showing that is needed in order to allow a group of unrelated persons to serve as lead plaintiff. Thus, JCPIG-Webb is not the most adequate lead plaintiff.

In the event the Court finds the group inadequate to serve as lead plaintiff, JCPIG-Webb stated that Mr. Webb is willing and able to serve as lead plaintiff individually. As in *Buettgen*, "such a 'willingness to abandon the group only suggests how loosely it was put together.'" *Buettgen*, 263 F.R.D. at 382 (*quoting Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (Ariz. April 7, 2008)). Because Mr. Webb did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group. Thus, Mr. Webb is not the most adequate lead plaintiff.

### iii. Movant Christos Ifantides

Movant Christos Ifantides ("Ifantides") has the third largest financial interest, and would be next in line to serve as presumptive lead plaintiff if he satisfies the requirements of Rule 23. However, Ifantides is also subject to unique defenses and flaws that render him inadequate to serve as lead plaintiff in this action. As previously stated, a potential lead plaintiff's claims or

---

[44] *See* Civil Action No. 6:13-cv-736, Docket No. 39-1, Jeanette Zohar Stavropouos Declaration at ¶6, and Cavanaugh Webb Declaration at ¶6. *See also* Lead Plaintiff Oral Argument Tr. at 45:20–46:9.

[45] *See* Civil Action No. 6:13-cv-736, Docket No. 39-1, Jeanette Zohar Stavropouos Declaration, and Cavanaugh Webb Declaration.

defenses must have "the same essential characteristics as those of the other class members," and a potential lead plaintiff's interests cannot conflict with the other proposed class members. *Buettgen*, 263 F.R.D. at 381, *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Ifantides bought and sold his entire JCP portfolio on the same or next trading day on at least ten different instances over the course of the Long Class Period.[46] Such active trading practices relies more on speculation rather than investing. This activity would not be typical of the class because the proposed class's damages stem from reliance on Defendant's financial statements.[47] Whereas Ifantides's rapid trading activity relies on the market's daily volatility. Moreover, Ifantides engaged in another atypical trading practice, short selling shares and buying to cover those short sales. Such a trading practice would be atypical of the class as profit accrues when the price of the security decreases.[48]

Finally, Ifantides's argument that the Short Class Period is more appropriate than the Long Class Period is troubling. In Infantides's case, the Short Class Period eliminates some of his atypical trading practices. At this stage of the litigation, a shorter class period would have the effect of reducing the class size and limiting the potential amount of damages. It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing Ifantides lead plaintiff.[49]

### iv. Movant National Shopmen Pension Fund

Movant National Shopmen Pension Fund ("Pension Fund") has the fourth largest financial interest. Unlike the other movants vying for appointment as lead plaintiff, Pension Fund

---

[46] Civil Action No. 6:13-cv-736, Docket No. 27-4 at 4–5; Civil Action No. 6:13-cv-750, Docket No. 18-4 at 4–5; and Civil Action No. 6:13-cv-810, Docket No. 16-4 at 4–5.
[47] *See* 15 U.S.C. § 78u-4(e)(1).
[48] It seems counter intuitive to assume the typical member of the proposed class would purchase shares of JCP stock with the hopes the stock would decrease.
[49] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

meets the typicality and adequacy requirements of Rule 23. Pension Fund provided the requisite and timely proof that it purchased shares of JCP stock during the class period, which lost value as a result of Defendants' actions. Pension Fund also states it is willing and able to serve as lead plaintiff. As an asset manager, Pension Fund is accustomed to acting solely in another party's interest and avoiding conflicts of interest. Moreover, there is no evidence of any conflicts between it and the proposed class. Finally, Pension Fund does not suffer from any unique defenses that would render it unable to serve as lead plaintiff.

The other movants argue that Pension Fund's smaller financial interest is sufficient to rebut the presumption that it should be appointed lead plaintiff; however that argument is unpersuasive. The largest financial interest factor is not the stopping point in the presumptive lead plaintiff analysis. The proposed lead plaintiff must also meet the typicality and adequacy requirements of Rule 23. At the hearing held on January 28, 2014, the Court inquired if there were any reasons, aside from Pension Fund's smaller financial interest, that would prevent it from serving as lead plaintiff and none were provided.[50] Kof ggf , Pension Fund is the only movant who satisfieu cm requirements set out in the PSLRA. Accordingly, Pension Fund is **APPOINTED** lead plaintiff.

## II. Lead Counsel

Movant National Shopmen Pension Fund seeks to appoint Robbins Geller Rudman & Dowd LLP of San Diego, California as lead counsel for the class and Ward & Smith Law Firm of Longview, Texas as liaison counsel. The Court reviewed the résumé of each firm, and is satisfied that each could adequately represent the plaintiff class in this action.

---

[50] *See* Lead Plaintiff Oral Argument Tr. at 42:12–43:11.

## CONCLUSION

Accordingly, the Court **GRANTS** National Shopmen Pension Fund's motion for appointment as lead plaintiff.[51] National Shopmen Pension Fund's choice of lead counsel and liaison counsel are hereby **APPOINTED**. All other motions are hereby **DENIED**.

So ORDERED and SIGNED this 28th day of February, 2014.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[51] Civil Action No. 6:13-cv-736, Docket No. 29; Civil Action No. 6:13-cv-750, Docket No. 15; and Civil Action No. 6:13-cv-810, Docket No. 13.