IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 6:13-cv-736-MHS-KNM |
| J.C. PENNEY COMPANY, INC., *et. al.*, | § § § | |
| Defendants. | § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On September 25, 2015, Defendants JC Penney Company, Inc., Kenneth H. Hannah, and Myron E. Ullman, III (collectively "Defendants") filed Objections to the Magistrate Judge's Report and Recommendation denying Defendants' Motion to Dismiss (Doc. No. 101). Having made a *de novo* review of the written objections filed by Defendant, the Court concludes that the findings and conclusions of the Magistrate Judge are correct and the objections are without merit. For the reasons below, Defendants' Objections are **OVERRULED.** Defendants' Request for Oral Hearing (Doc. No. 86) is **DENIED**.

## ANALYSIS

Defendants seek a *de novo* review of the Magistrate Judge's Report and Recommendation denying Defendants' Motion to Dismiss. Specifically, Defendants argue that there are no actionable statements in the Complaint, there is no causation, and the Report misapplies the PSLRA's safe harbor provision.

**1. Plaintiffs have alleged sufficient specific statements amounting to actionable misrepresentations or omissions by Defendants.**

Defendants' Objections 1, 2, 3 and 5 take issue with the specific allegedly misleading statements that the Report addresses. Defendants first argue that the Complaint never alleged that the Defendants represented that JC Penney had the required inventory by the end of 2Q13. Doc. No. 101 at 2. However, Defendants admit that "[t]he Complaint does allege that Defendant Ullman stated that J.C. Penny [sic] 'ha[d] the inventory to do the business' during a conference call with analysts on August 20, 2013." Doc. No. 101 at 3 n. 4 (citing Compl. ¶ 41(b)[1]). Plaintiffs' Complaint alleges that this statement was made on August 20, 2013 (at the beginning of 3Q13). The Complaint goes on to clarify that the statements made on August 20, 2013 were discussing the Company's status as of the end of 2Q13, which ended August 3, 2013[2]. Plaintiffs' theory is that Defendants spoke about JC Penney's inventory during the 2Q13 conference call using inventory information as of August 20 without informing investors of the temporal distinction. "The disclosure required by the securities laws is measured *not by literal truth*, but by the ability of the statements to accurately inform rather than mislead." *Lormand v US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir. 2009) (emphasis added). Therefore Plaintiffs have alleged enough facts to plausibly show that Defendants represented that they had sufficient inventory as of the end of 2Q13 and that this statement was misleading when made[3].

---

[1] Defendants cite to ¶ 42(b) but this statement is actually found in ¶ 41(b).
[2] These statements fall under the heading "2Q13 Earnings Release and Conference Call". Compl. at 12. The specific statements under this heading also explain that the subject of the August 20, 2013 call was the status of the Company as of August 3, 2013.
[3] This is not the only statement that is actionable. The Complaint details multiple actionable liquidity, inventory, and supplier statements sufficient to overcome a motion to dismiss. Compl. ¶¶ 3, 4, 7, 35-41 ((1)"We are not assuming we need any additional financing", (2) "we believe our existing cash and cash equivalents will be adequate…", (3) "[I] do not see conditions for the rest of the year where [JCPenney] would need to raise liquidity", (4) the Company "continues to receive strong support from its suppliers", (5) "our supplier relationships remain as strong as ever", (6) "we expect to end the year with an excess of $1.5 billion in liquidity.")

Next Defendants claim that the CNBC report cannot be attributable to Defendants. Even under the PSLRA, "plaintiffs are only required to plead facts, not to produce admissible evidence." *In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248. 1272 (N.D. Cal. 2000). The Complaint alleges that Ullman attended a Sterne Agee conference and "unequivocally told attendees that JCPenney would end the year with sufficient liquidity and that he '[did] not see conditions for the rest of the year where [JCPenney] would need to raise liquidity.'" Compl. ¶ 7. The Complaint again states that "on the morning of September 25, 2013, Ullman attended an investor meeting in New York hosted by Sterne Agee. Following that meeting, Sterne Agee immediately reiterated defendant Ullman's representations via an upbeat report issued later that morning". *Id.* ¶ 52. This was followed up with "[t]he next day, September 26, 2013, before the market opened, CNBC.com published an article…reporting that 'J.C. Penney CEO Mike Ullman told investors the retailer does not see conditions for the rest of the year where it would need to raise liquidity.'" *Id.* ¶ 54. Plaintiffs have sufficiently alleged that Ullman attended a Sterne Agee conference, said JC Penney did not see conditions where it would need to raise liquidity, and this was reported by CNBC. There is no reason to believe that CNBC is not a credible source of information[4]. At this stage, Plaintiffs have met their pleading burden to avoid a motion to dismiss.

---

[4] Defendants cite to cases regarding confidential witnesses to support the conclusion that Plaintiffs must plead that the source is credible. This is true when the source is a confidential witness whose credibility is unknown. *Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes, Inc.*, 67 F. Supp. 3d 782, 788 (E.D. Tex. 2014). Here, we are not dealing with a confidential witness, but rather an established news source alleging a very specific statement. Plaintiffs allege that Ullman made statements at an investor meeting and the next day CNBC, a well-known news source, reported specific statements that were made. *In re McKesson*, 126 F. Supp. 2d at 1272 (stating that a newspaper article that corroborates plaintiff's own investigation and provides detailed factual allegations could be a reasonable source of information and belief allegations).

## 2. The Report correctly applies the PSLRA's safe harbor provision as interpreted by the Fifth Circuit.

The Fifth Circuit has been very clear about when defendants may avail themselves of the safe harbor provision and when they may not. The safe harbor provision is inapplicable when Plaintiffs adequately allege that defendants actually knew their statements were misleading at the time they were made. *Lormand*, 565 F.3d at 244 (Safe harbor would apply *only if* "the plaintiff fails to [plead] that the forward-looking statement…was made with actual knowledge…that the statement was false or misleading.") (emphasis added); *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004) ("To avoid safe harbor, plaintiffs must plead facts demonstrating that the statement was made with actual knowledge of its falsity"); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 409 (5th Cir. 2001). The safe harbor provision "does not protect statements that defendants knew were false or misleading." *In re UICI Sec. Litig.*, No. 3:04-CV-1149-P, 2006 U.S. Dist. LEXIS 73753, at *17 (N.D. Tex. Sept. 29, 2006); *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860 (S.D. Tex. 2001)[5]. Therefore, defendants may only attempt to invoke the protections of the safe harbor provision if plaintiffs fail to adequately plead that the defendants made these statements with actual knowledge of their falsity.

Once in the realm of safe harbor, the analysis now turns to the cautionary language that accompanies the forward-looking statements. Defendants argue that there was extensive cautionary language accompanying the forward-looking statements[6]. However, cautionary

---

[5] In addition, other Circuits have noted the Fifth Circuit's interpretation of the safe harbor provision. *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 794-95 (11th Cir. 2010) ("the Fifth Circuit held that the PSLRA's safe harbor provision is not available to defendants who have actual knowledge that their forward-looking statements are false at the time they are made…The court cited the statutory safe harbor for the proposition that a defendant may only seek shelter if the plaintiff fails to plead that the defendant had actual knowledge of the statement's falsity when he made it.")

[6] There are three specific warnings that defendants reference in their motion: (1) "we cannot assure that cash flows and other internal and external sources of liquidity will at all times be sufficient for our cash requirements" and "[i]f necessary, we may need to consider actions and steps to improve our cash position and mitigate any potential liquidity shortfall, such as modifying our business plan [and] pursuing additional financing to the extent available";

statements are not evaluated in a vacuum; they are necessarily context specific. *Lormand*, 565 F.3d at 245. When risks have already begun to materialize, it is no longer sufficient to generally warn of the possibility of these risks in the future. When cautionary language is "glossed over as a future risk…rather than the certain dangers that had already begun to materialize" then the warnings are no longer meaningful. *Id.* at 247. Those types of warnings "fail to correct the false impression created by defendants' public statements or to supply the trust that they omitted." *Id*. Plaintiffs have pled enough facts to show that the risks of insufficient liquidity and inadequate inventory had already begun to materialize. Plaintiffs claim that Defendants failed to correct the false impression of success created by their public statements and thus these cautionary warnings are insufficient to provide safe harbor protection as a matter of law. There are enough facts alleged in the Complaint to show the risk had materialized and the warnings are thus inadequate.

3. **Plaintiffs pled sufficient facts to establish causation between Defendants' misrepresentations and omissions and Plaintiffs' harm.**

Defendants admit that they do not "challenge Plaintiffs' pleadings that J.C. Penney's announcement about the offering caused its stock price to decline on September 27." Doc. No. 101 at 7-8. Defendants' causation argument focuses on the drop in stock price on September 25, 2013. After the market closed on September 24, 2013, Goldman Sachs issues a report revealing that JC Penney would be "looking to build a bigger liquidity buffer." Compl. ¶ 50. Plaintiffs alleged that "[t]he news contained in the…report surprised investors as, just 14 days earlier, defendants had reassured investors that JCPenney's existing liquidity was adequate 'for the remainder of 2013.' When the market opened on September 25, 2013, JCPenney stock price

---

(2) the Company "may need to consider actions and steps to improve our cash position and mitigate any potential liquidity shortfall"; and (3) "Our profitability depends upon our ability to manage appropriate inventory levels and respond quickly to shifts in consumer demand patterns" and "[i]f we underestimate customer demand for our merchandise, we may experience inventory shortages which may result in missed sales opportunities." Doc. No. 73 at 19, 27. The first two statements go to liquidity, the third goes to inventory. *Id.* Defendants did not argue that the supplier statements were accompanied by meaningful, cautionary language.

dropped to a 13-year intra-day low." *Id.* ¶ 51. The Complaint states that JC Penney's need for a larger liquidity buffer was disclosed to the market on September 25, 2013, "partially revealing the Company's dire financial situation" and because of that news, JC Penney's stock price declined. *Id.* ¶ 69. The Complaint further states that the "decline cannot properly be attributed to any market or industry event or force, but rather was a direct result of the disclosure." *Id.* Plaintiffs clearly pled sufficient facts to show causation.

Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation (Doc. No. 98). It is

**ORDERED** that Defendants' Request for Oral Hearing (Doc. No. 86) and Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Complaint (Doc. No. 73) are **DENIED**. Lead Plaintiff's Request for Judicial Notice (Doc. No. 80) is **GRANTED**.

**SIGNED this 29th day of September, 2015.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE