No. 17-_____

# In the United States Court of Appeals for the Fifth Circuit

ALAN B. MARCUS, ET AL.,

Plaintiff-Respondent,

v.

J.C. PENNEY COMPANY, INC., ET AL.,

Defendants-Petitioners.

On Petition for Permission to Appeal from the United States District Court for the
Eastern District of Texas, Tyler Division, Case No. 6:13-CV-00736-RWS-KNM

DEFENDANTS' PETITION FOR PERMISSION TO APPEAL
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

Meryl L. Young
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, 12th Floor
Irvine, CA 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

Robert C. Walters
Olivia A. Adendorff
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, Texas 75201-6912
Telephone: (214) 698-3100
Facsimile: (214) 571-2934

Mark A. Perry
Jason J. Mendro
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. NW, Suite 300
Washington, DC 20036-5306
Telephone: (202) 887-3726
Facsimile: (202) 530-9626

COUNSEL FOR DEFENDANTS-PETITIONERS

CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

or entities as described in the fourth sentence of Rule 28.2.1 have an interest in the

outcome of this case.  These representations are made in order that the judges of this

Court may evaluate possible disqualification or recusal.

| Plaintiff-Respondent and Class | Counsel for Plaintiff-Respondent and Class |
|---|---|
| National Shopmen Pension Fund<br><br>Alan B. Marcus<br><br>David O'Connell<br><br>Nathan P. Johnson<br><br>Shawn Gilbert<br><br>Erhan Erdem<br><br>All persons or entities who, between August 20, 2013 and September 26, 2013, purchased or otherwise acquired J.C. Penney Company Inc. securities | X. Jay Alvarez<br>Austin P. Brane<br>James Albert Caputo<br>Rachel A. Cocalis<br>Jonah H. Goldstein<br>David J. Harris, Jr.<br>Robert R. Henssler, Jr.<br>Danielle Suzanne Myers<br>Darren Jay Robbins<br>Samuel H. Rudman<br>Hilary B. Stakem<br>David Conrad Walton<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone:  (619) 231-1058<br>Facsimile:  (619) 231-7423<br><br>Rocky M. Lawdermilk<br>ROCKY LAWDERMILK – ATTORNEY AT LAW<br>2630 Liberty<br>Beaumont, TX 77702<br>Telephone:  (409) 838-1800<br>Facsimile: (409) 212-8836<br><br>Thomas John Ward, Jr.<br>Jack Wesley Hill |

|  | Claire Abernathy Henry<br>WARD, SMITH & HILL, PLLC<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>Telephone:  (903) 757-6400<br>Facsimile: (903) 757-2323<br><br>Benjamin D. Bianco<br>MEISTER SEELIG & FEIN LLP<br>125 Park Avenue, 7th Floor<br>New York, NY 10017<br>Telephone:  (646) 539-3791<br>Facsimile: (646) 519-7232<br><br>Elton Joe Kendall<br>Jamie Jean McKey<br>KENDALL LAW GROUP, LLP<br>3232 McKinney Avenue, Suite 700<br>Dallas, TX 75204<br>Telephone:  (214) 744-3000<br>Facsimile: (214) 744-3015<br><br>Roger Bruce Greenberg<br>SPONSEL MILLER GREENBERG PLLC<br>50 Briar Hollow Lane<br>Suite 370 West<br>Houston, TX 77027<br>Telephone:  (713) 892-5400<br>Facsimile: (713) 892-5401<br><br>Michael K. Hurst<br>GRUBER HURST JOHANSEN HAIL SHANK<br>LLP<br>1445 Ross Avenue, Suite 2500<br>Dallas, Texas 75202<br>Telephone:  (214) 855-6800<br>Facsimile:  (214) 981-3839<br><br>Thomas Emerson Bilek<br>THE BILEK LAW FIRM, LLP |
|--|--|

700 Louisiana, Suite 3950
Houston, TX 77002
Telephone:  (713) 227-7720
Facsimile:  (713) 227-9404

Daniel Ward Jackson
THE JACKSON LAW FIRM
3900 Essex Lane, Suite 1116
Houston, TX 77027
Telephone: (713) 522-4435
Facsimile: (713) 527-8850

Brian C. Kerr
MILBERG WEISS BERSHAD
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

William Kelly Puls
PULS HANEY, PLLC
300 Burnett Street, Suite 160
Fort Worth, TX 76102
Telephone: (817) 338-1717
Facsimile: (817) 332-1333

Ira Michael Press
KIRBY MCINEMEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

Roger F Claxton
10000 N. Central Expressway, Suite 725
Dallas, TX 75231
Telephone: (214) 969-9029
Facsimile: (214) 953-0583

Michael W Stocker

| | LABATON SUCHAROW LLP<br>140 Broadway<br>New York, NY 10005<br>Telephone:  (212) 907-0700<br>Facsimile:  (212) 818-0477<br><br>Thomas Robert Ajamie<br>AJAMIE LLP<br>711 Louisiana Street, Suite 2150<br>Houston, TX 77002<br>Telephone: (713) 860-1600<br>Facsimile: (713) 860-1699 |
|---|---|
| Defendants-Petitioners | Counsel for Defendants-Petitioners |
| J.C. Penney Company, Inc.<br><br>Myron E. Ullman, III<br><br>Kenneth H. Hannah | Meryl L. Young<br>GIBSON, DUNN & CRUTCHER LLP<br>3161 Michelson Drive, 12th Floor<br>Irvine, CA 92612<br>Telephone:  (949) 451-3800<br>Facsimile:  (949) 451-4220<br><br>Mark A. Perry<br>Jason J. Mendro<br>Lissa M. Percopo<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue NW, Suite 200<br>Washington, DC 20036-5306<br>Telephone:  (202) 887-3726<br>Facsimile:  (202) 530-9626<br><br>Robert C. Walters<br>Olivia A. Adendorff<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, Texas 75201-6912<br>Telephone:  (214) 698-3100<br>Facsimile:  (214) 571-2934<br><br>Michael E. Jones |

| | POTTER MINTON, A PROFESSIONAL COMPANY<br>110 N. College Avenue, Suite 500<br>Tyler, TX 75702<br>Telephone:  (903) 597-8311<br>Facsimile:  (903) 593-0846 |
|---|---|

Respectfully submitted,

 s/ Mark A. Perry
Mark A. Perry
Counsel of Record

TABLE OF CONTENTS

Page

Certificate of Interested Persons ...................................................................i

Table of Authorities ..................................................................................vii

Introduction ...............................................................................................1

Jurisdictional Statement ..............................................................................3

Questions Presented ...................................................................................3

Background ...............................................................................................3

Standard For Granting Review ......................................................................9

Relief Sought...........................................................................................10

Argument................................................................................................10

    I.    This Court Should Resolve Whether District Courts Must
          Decide Before Certification Whether Disclosures Are
          Corrective ....................................................................................12

    II.   This Court Should Clarify The Parties' Respective Burdens Of
          Production And Persuasion At The Certification Stage....................17

Conclusion ..............................................................................................22

Certificate of Compliance With Type-Volume  Limitation, Typeface
Requirements, and Type Style  Requirements......................................................24

Certificate of Service ................................................................................25

TABLE OF AUTHORITIES

Page(s)

Cases

Amgen Inc. v. Conn. Ret. Plans & Trust Funds,
    133 S. Ct. 1184 (2013)..............................................................8, 10, 13

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)..................................................................passim

City of Arlington v. F.C.C.,
    668 F.3d 229 (5th Cir. 2012) ......................................................19, 21

Comcast Corp. v. Behrend,
    133 S. Ct. 1426 (2013)....................................................................16

Corp. v. Green,
    411 U.S. 792 (1973)........................................................................20

Erica P. John Fund, Inc. v. Halliburton Co.,
    309 F.R.D. 251 (N.D. Tex. July 25, 2015) ..................................passim

Erica P. John Fund, Inc. v. Halliburton Co.,
    563 U.S. 804 (2011)....................................................................9, 16

Erica P. John Fund, Inc. v. Halliburton Co.,
    Case No. 15-11096 (5th Cir. Nov. 4, 2015) ..................................2, 11

In re Goldman Sachs Grp., Inc.,
    Case No. 16-250 (2d Cir. Apr. 27, 2016) ...................................12, 17

Greenberg v. Crossroads Sys., Inc.,
    364 F.3d 657 (5th Cir. 2004) ...........................................................15

Halliburton Co. v. Erica P. John Fund, Inc.,
    134 S. Ct. 2398 (2014)..............................................................passim

IBEW Local 98 Pension Fund v. Best Buy, Co., Inc.,
    818 F.3d 775 (8th Cir. 2016) ......................................................11, 19

TABLE OF AUTHORITIES (CONTINUED)

Page(s)

Ludlow v. BP, P.L.C.,
   800 F.3d 674 (5th Cir. 2015) ..................................................................15

Regents v. Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.,
   482 F.3d 372 (5th Cir. 2007) .........................................................10, 17

St. Mary's Honor Ctr. v. Hicks,
   509 U.S. 502 (1993).............................................................................19

Strougo v. Barclays PLC,
   Case No. 16-1912 (2d Cir. July 25, 2016)..................................12, 17

Wal-Mart Stores, Inc. v. Dukes,
   564 U.S. 338 (2011)............................................................................16

Statutes

15 U.S.C. § 78aa ...................................................................................3

28 U.S.C. § 1292(e) ..............................................................................3

28 U.S.C. § 1331....................................................................................3

Rules

Fed. R. Civ. P. 23(b)(3)............................................................1, 7, 10, 11

Fed. R. Civ. P. 23(f)......................................................................passim

Fed. R. Evid. 301 ...........................................................................19, 20

Pursuant to Rule 23(f), J.C. Penney Company, Inc., Myron E. Ullman, III, and Kenneth H. Hannah (collectively, "JCPenney") respectfully petition this Court for permission to appeal the order certifying a class of "[a]ll persons who, between August 20, 2013 and September 26, 2013 . . . purchased or otherwise acquired J.C. Penney Company, Inc. securities." Appx.6.

## INTRODUCTION

The Supreme Court has held that a class action cannot be certified in cases brought under the federal securities laws if an alleged misstatement did not have a statistically significant effect on the price of the relevant securities, either at the time it was made or when it was later corrected. Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II"), 134 S. Ct. 2398, 2414 (2014). In the absence of such "price impact," the presumption of reliance "collapse[s]" and individuated questions of reliance will predominate—thus precluding class certification under Rule 23(b)(3). Id. at 2416 (citing Basic Inc. v. Levinson, 485 U.S. 224, 248 (1988)).

Although Halliburton II held that evidence of each alleged misstatement's price impact may be presented, and must be considered, before a securities class action is certified, trial courts have since struggled with two recurring questions of vital importance in such cases: First, if the theory of price impact is premised on an alleged corrective disclosure (because the stock price did not change when the alleged misstatement was made), must the district court decide at the certification

1

stage whether the disclosure at issue was in fact corrective of an earlier misstatement?  And second, once the defendant has discharged its burden of producing evidence sufficient to rebut the presumption of reliance at the certification stage, does the ultimate burden of persuasion shift back to the plaintiff?

This Court has already recognized that both of these questions warrant appellate explication, granting interlocutory review in the Halliburton case (on remand from the Supreme Court) to decide them.  Erica P. John Fund, Inc. v. Halliburton Co., Case No. 15-11096, Doc. 00513259364 (5th Cir. Nov. 4, 2015). After briefing and argument, however, that case was settled.  Erica P. John Fund, Inc. v. Halliburton Co., Case No. 15-11096, Doc. 00513814730 (5th Cir. Dec. 28, 2016).  These same questions are presented here, and they remain as deserving of interlocutory review and appellate resolution now as they were when the Court granted the Rule 23(f) petition in Halliburton.

The district court answered both of these questions in the negative.  See Appx.3-4. While JCPenney submits that both rulings were erroneous, the propriety of interlocutory review does not depend on the correctness of the certification decision in this case.  Rather, both questions presented by this petition are recurring ones that warrant appellate resolution to provide needed guidance to the bench and bar regarding the certification of securities class actions raising disputed questions of price impact involving allegedly corrective disclosures.

JURISDICTIONAL STATEMENT

The district court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. The certification order was entered on March 8, 2017 and the petition was timely filed within fourteen days. This Court has jurisdiction under 28 U.S.C. § 1292(e) and Rule 23(f).

QUESTIONS PRESENTED

1. In a putative securities class action where price impact is premised solely on an allegedly corrective disclosure, must the district court decide at the certification stage whether that disclosure was corrective of the challenged statements?

2. In a putative securities class action where the defendant discharges its burden of producing evidence sufficient to rebut the presumption of reliance, does the ultimate burden of persuasion shift back to the plaintiff?

BACKGROUND

1. On August 20, 2013, JCPenney announced its second quarter financial results and forecasted that it expected to have in excess of $1.5 billion in liquidity at its fiscal year end. Dkt. 94 ("Compl.") ¶ 35. The same day, JCPenney hosted a conference call with investors and analysts to discuss its announcement. In response to a question, Defendant Kenneth Hannah, who was then the Company's CFO, clarified that the year-end liquidity projection of $1.5 billion did not include an assumption of "additional financing." Compl. ¶ 41(c). On September 10, 2013,

JCPenney filed its quarterly report on Form 10-Q for the second quarter with the SEC.  The quarterly report projected that "[f]or the remainder of 2013, we believe that our existing cash and cash equivalents will be adequate to fund our capital expenditures and working capital needs."  Compl. ¶ 45.

JCPenney's stock price did not increase or decrease by a statistically significant amount following the August 20 or September 10 statements.  Dkt. 116-10 at 10.[1]

In September 2013, several analysts and news outlets reported that JCPenney might raise additional capital.  For example, on September 20, Bloomberg published an article reporting that the Company was "in talks" with "Goldman Sachs" to "potentially raise more cash."  Appx.32-33.  And on September 23, the Buckingham Research Group issued an analyst report observing "that JCP may be in talks with Goldman Sachs to potentially raise additional capital."  Appx.36.  The report went on to explain that "[i]t seems reasonable to us that JCP may be exploring additional financing alternatives in order to have an option to bolster liquidity" and that "it may be prudent to raise additional capital (now vs. waiting . . .) to buffer the firm's liquidity."  Id.

---

[1] Docket numbers 116, 128, 131, and 133 and their attachments were filed under seal in the district court.  Undersigned counsel will provide copies of these documents upon request.

Numerous similar reports were published between September 20 and September 23. For example, an additional Bloomberg article published September 23 stated JCPenney was "in talks to raise more money" and suggested the Company might be seeking "$1b." Appx.41. A September 23 Barrons article likewise said that "reports [had] broke[n] that the company was seeking to raise more money." Appx.43; see also Dkt. 128-3, Exh. H (collecting similar statements in public press and analyst reports); Dkt. 116-8 at 258-66 (same).

JCPenney's stock price did not change by a statistically significant amount following any of these reports. See Dkt. 116-10 at 10.

On September 24, 2013, after the stock market closed, a Goldman Sachs debt analyst published a negative report initiating coverage of JCPenney's debt securities with an "underperform" rating. Appx.45-66 ("GS Report"); Compl. ¶ 50. The report did not dispute the liquidity projection that JCPenney had disclosed on August 20; in fact, it arrived at the same forecast—that JCPenney would have $1.5 billion in liquidity at its fiscal year-end. Appx.49. The GS Report also reiterated the same commentary that other analysts had previously voiced about the possibility that JCPenney would raise additional capital. Appx.45, 49-51. Erasing any doubt that this commentary had already been published to the market, the GS Report explicitly stated that it was repeating what "ha[d] been suggested by recent press reports": that

"it is likely that management will look to build a bigger liquidity buffer," which "would be a prudent measure for the company." Appx.45.

On September 25, 2013, Defendant Myron E. Ullman, III, who was then the Company's CEO, made a presentation to a group of investors at a meeting hosted by analysts from the investment advisory firm Sterne Agee. Compl. ¶ 52. Immediately following that meeting, Sterne Agee published a report explaining that JCPenney management reiterated that the Company would "end the year with sufficient liquidity" and that "looking ahead to FY14 we [Sterne Agee] believe that the issue of liquidity remains a big question." Id.

JCPenney's stock price declined by a statistically significant amount on September 25, 2013. Dkt. 116-10 at 10.

After the close of trading on September 26, 2013, JCPenney announced that it would raise $800 million through an equity offering that evening. Compl. ¶ 59. The next day, JCPenney's stock price dropped by a statistically significant amount. Dkt. 116-10 at 10.

2. The initial complaint in this action was filed just days later on October 1, 2013. Dkt. 1. The operative Revised Consolidated Complaint (Dkt. 94) was filed on June 8, 2015, after the district court consolidated several related actions and made various other procedural rulings. Among these was the appointment of National Shopmen Pension Fund as Lead Plaintiff. See Dkt. 62.

6

On January 25, 2016, Lead Plaintiff moved to certify a class consisting of "[a]ll persons or entities who, between August 20, 2013 and September 26, 2013 . . . purchased or otherwise acquired J.C. Penney Company, Inc. securities, and were damaged thereby." Dkt. 116 at 1. As pertinent here, Lead Plaintiff invoked the presumption of classwide reliance by arguing that JCPenney securities traded on an efficient market. Id. at 13-16. JCPenney responded that the presumption was not available on the particular facts of this case, and thus that the predominance requirement of Rule 23(b)(3) could not be satisfied. Dkt. 128 at 6-19.

JCPenney presented direct (and undisputed) evidence that the alleged misstatements—the public statements made on August 20 and September 10, 2013—had no statistically significant impact on JCPenney's stock price. Rather, the only statistically significant price movements occurred on September 25 and 27, 2013. The parties and their experts hotly debated whether the events immediately preceding these price declines—the GS Report on September 24, and the equity announcement on September 26—were "corrective disclosures." See Dkt. 116 at 15; Dkt. 128 at 12-19; Dkt. 131 at 4-10; Dkt. 133 at 3-11; Dkt. 128-3 at ¶¶ 89-112 & Exs. G, H; Dkt. 131-15 at ¶¶ 9-50; Dkt. 133-2 at ¶¶ 28-56.

3. The price impact debate turned on the application of the Supreme Court's decision in Halliburton II to this case, in which JCPenney's stock price reacted not to the alleged misstatements but only to later disclosures. The debate required the

district court here to resolve two questions (1) whether the later disclosures were "corrective," indicating that their impact on the stock price could be related to the alleged misstatements; and (2) which party bore the burden of persuasion.

a.    The magistrate judge recommended granting the motion for class certification.   Appx.8-30.   She concluded that it was not proper to consider arguments about whether the disclosures were actually corrective at class certification, Appx.24 (citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1203 (2013)), but it was proper to consider whether the information in the disclosures was "new" because "[a] prior corrective disclosure of the same information would sever the causal link and rebut the presumption of reliance," Appx.23 (citing Basic, 485 U.S. at 248-49).  As a result, she considered JCPenney's direct evidence that the disclosures were not new, but concluded the evidence was insufficient.  Appx.24.  In analyzing the burden to apply, she acknowledged that courts have not applied burden shifting consistently in assessing price impact, but decided that she need not resolve whether a burden of production or persuasion is required because she concluded the produced evidence was insufficient regardless. Appx.18-19 & n.1 (observing that the Eighth Circuit's application of a burden of production differed from the Northern District of Texas's application of a burden of persuasion on remand in Halliburton).  JCPenney filed objections to the magistrate judge's report and recommendation.  Dkt. 145.

b.  The district court overruled JCPenney's objections and entered an order

certifying the class. Appx.1-7.  Citing the Supreme Court's decisions in Erica P.

John Fund, Inc. v. Halliburton Co. ("Halliburton I"), 563 U.S. 804 (2011) (which

concerned loss causation), as well as Amgen (which concerned materiality), the

district court held that at the class certification stage it was proper to determine

whether the disclosures were new but not whether they were corrective. Appx.3-4.

In weighing the evidence, the district court effectively imposed a burden of

persuasion on JCPenney to prove that the disclosures were not new. Appx.3-5.  The

district court acknowledged that this Court had agreed to review the Halliburton

district court's conclusion that class certification "is not the proper procedural stage

for a court to determine as a matter of law whether the relevant disclosures were

actually corrective," but recognized that appellate guidance would not be

forthcoming because the parties had settled.  Appx.3 & n.2 (citing Erica P. John

Fund, Inc. v. Halliburton Co. ("Halliburton Remand"), 309 F.R.D. 251, 261-62

(N.D. Tex. July 25, 2015)).

## STANDARD FOR GRANTING REVIEW

"[I]t is appropriate to grant leave to appeal an adverse determination [of class

certification under Rule 23(f)] where (1) a certification decision turns on a novel or

unsettled question of law or (2) an order granting certification . . . may force a

defendant to settle rather than incur the costs of defending a class action and run the

9

risk of potentially ruinous liability." Regents v. Univ. of Cal. v. Credit Suisse First

Boston (USA), Inc., 482 F.3d 372, 379 (5th Cir. 2007) (internal quotation marks

omitted). This Court possesses "unfettered discretion whether to permit the appeal."

Fed. R. Civ. P. 23(f) advisory committee note.

## RELIEF SOUGHT

The Court should grant interlocutory review under Rule 23(f) and, following

briefing on the merits, reverse or vacate the district court's certification order.

## ARGUMENT

As the Supreme Court recently explained, defendants in securities fraud cases

can rebut the presumption of reliance through evidence that the alleged

misstatements did not impact the price of the security. Halliburton II, 134 S. Ct. at

2417. If there is no price impact, "then there is 'no grounding for any contention

that [the] investor[ ] indirectly relied on th[at] misrepresentation[ ] through [his]

reliance on the integrity of the market price.'" Id. at 2414 (quoting Amgen, 133 S.

Ct. at 1199). Moreover, the Supreme Court made clear that this inquiry must be

undertaken, and resolved, at the class certification stage. Id. at 2412 (confirming

that the Basic presumption "does not relieve plaintiffs of the burden of proving—

before class certification—that th[e] requirement [of Rule 23(b)(3) predominance]

is met"). In the absence of price impact, the presumption of reliance is unavailable,

the predominance requirement of Rule 23(b)(3) cannot be met, and class certification must be denied.

This case involves two recurring and unsettled questions regarding the application of the Halliburton II framework to cases where the evidence of price impact pertains only to allegedly corrective disclosures, rather than the alleged misstatements themselves:  First, whether the district court must decide before certification whether the disclosures are corrective; and second, whether the plaintiff bears the ultimate burden of persuasion on price impact.  As this case demonstrates, both of these questions will frequently be dispositive on the question of class certification—in this case, answering both in the negative resulted in certification, whereas answering them in the affirmative would preclude certification.

As this Court has already recognized by granting a Rule 23(f) petition from a district court certification decision that was strikingly similar to the one in this case, these questions warrant interlocutory review and resolution.  Erica P. John Fund, Inc. v. Halliburton Co., No. 15-11096 (5th Cir.) (oral argument heard Aug. 31, 2016), reviewing Halliburton Remand, 309 F.R.D. 251 (N.D. Tex July 25, 2015). This Court is not alone.  The Eighth Circuit recently granted interlocutory review and reversed certification of a class where defendants met the burden of production with direct evidence that an alleged misstatement did not cause an immediate stock price increase.  IBEW Local 98 Pension Fund v. Best Buy, Co., Inc., 818 F.3d 775,

783 (8th Cir. 2016).   The Second Circuit likewise granted two petitions for interlocutory appeal on closely related issues to offer guidance on price impact.   See In re Goldman Sachs Grp., Inc., Case No. 16-250, Dkt. 1, 46 (2d Cir. Apr. 27, 2016); Strougo v. Barclays PLC, Case No. 16-1912, Dkt. 1-2, 42 (2d Cir. July 25, 2016).

I.   **This Court Should Resolve Whether District Courts Must Decide Before Certification Whether Disclosures Are Corrective**

It is not disputed that the alleged misstatements in this case—the August 20 and September 10, 2013 statements regarding the sufficiency of JCPenney's liquidity and its financial projections—were not associated with any statistically significant change in JCPenney's stock price.  In the words of Halliburton II, these statements had no "price impact" at the time they were made.  Lead Plaintiff's theory is instead that two later statements—the September 24 GS Report and the September 26 announcement of JCPenney's stock offering—revealed new information correcting the earlier statements, and the statistically significant drops in the stock price on the trading days following these later statements can be traced to the earlier statements.  In other words, Lead Plaintiff maintained that they were "corrective disclosures."

Whether or not the September 24 and 26 statements were "corrective" of the August 20 and September 10 statements is critical to the availability of the presumption of reliance in this case.  If the later statements were corrective disclosures, then the price impact of the earlier statements would be sufficiently

established for certification purposes (although it would remain subject to proof and rebuttal at trial, see Halliburton II, 134 S. Ct. at 2414-15).  If the later statements were not corrective disclosures, by contrast, then there would be no price impact to attribute to the earlier, challenged statements; and no class could be certified because individual issues of reliance would predominate.  Id. at 2416.

Yet the district court expressly declined to decide whether the later statements were corrective, reasoning that class certification "is not the proper procedural stage" for that determination.  Appx.3 (citing Halliburton Remand, 309 F.R.D. at 261-62, and Amgen, 133 S. Ct. at 1203); see also Appx.24 (similar conclusion in report and recommendation).  This was legal error and conflicts with Halliburton II's directive that if securities defendants come forward with evidence of a lack of price impact, plaintiffs must prove the price impact of each alleged misstatement as a prerequisite to class certification.  Halliburton II, 134 S. Ct. at 2416.  The district court reasoned that whether the disclosures were corrective "is common to all members of the class" and, thus, the critical price impact inquiry should be reserved for trial.  Appx.3.  But that reasoning contradicts the Supreme Court's mandate that courts consider evidence rebutting price impact before a class is certified to ensure that the presumption of classwide reliance is warranted.  Halliburton II, 134 S. Ct. at 1214.

13

In many cases, a misrepresentation will immediately affect the company's stock price; in such circumstances, courts may find price impact without considering whether later disclosures corrected the statements that are challenged. But Lead Plaintiff here concededly cannot demonstrate an immediate statistically significant price impact. Indeed, it is only because Lead Plaintiff alleges the August 20 and September 10 statements' price impact can be measured weeks later, after the alleged "truth" was revealed, that the question was presented at the class certification stage whether the GS Report and the offering announcement actually correct anything in the earlier statements. If they did not, JCPenney has "'sever[ed] the link'" between the alleged misstatements and the price the purported class paid for JCPenney securities, defeating class certification. Halliburton II, 134 S. Ct. at 2415-16 (quoting Basic, 485 U.S. at 248). It was incorrect for the district court to forgo this analysis.

The district court also repeatedly misstated the "link" that needs to be analyzed—for example, ruling that "Defendants did not meet their burden . . . to show that the disclosures on September 24 and September 26 did not affect the market price." Appx.3. A temporal correlation between the statements alleged to have been corrective and a stock-price drop does not alone show price impact of the earlier statements alleged to have been false. "[P]laintiffs cannot trigger the presumption of reliance by simply offering evidence of any decrease in price

following the release of negative information." Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 665 (5th Cir. 2004). Instead, to maintain the presumption of reliance based on price impact evidenced by later disclosures, Lead Plaintiff was required to show that those disclosures were corrective of the earlier, challenged statements. And where only a later decrease is at issue, the price change can only demonstrate price impact if the disclosure was corrective (i.e., it "revealed the truth") and it was new (i.e., the stock price had not already incorporated the information).

Citing Ludlow v. BP, P.L.C., 800 F.3d 674 (5th Cir. 2015), Lead Plaintiff has argued that "correctiveness" is a loss causation inquiry that cannot be considered until the merits stage. Dkt. 131 at 4, 10-11 & n.10. But price impact was not in dispute in Ludlow. Rather, this Court held that the correctiveness analysis for purposes of loss causation need not be conducted at the class certification stage, because it was only relevant to the calculation of damages and, therefore, properly addressed at the merits stage. 800 F.3d at 686-688.

"Correctiveness" may be a component of loss causation, but it also pertains to reliance when a plaintiff invokes the Basic presumption. Price impact and loss causation are distinct but overlapping concepts when the only evidence of price impact is the loss occurring on the revelation of the truth. Price impact concerns whether an alleged misstatement was incorporated into the stock price (as shown through an immediate increase or a decrease when corrected) and thus affected the

15

plaintiff's decision to buy or sell the security.  See Halliburton II, 134 S. Ct. at 2413-14.  Loss causation, on the other hand, pertains to whether the misrepresentation caused the plaintiff's loss.  Halliburton I, 563 U.S. at 812.  Price impact is considered at the class certification stage because whether a misrepresentation "had price impact" is "'Basic's fundamental premise'"—if not, the price purchasers relied on does not reflect the misinformation.  See Halliburton II, 134 S. Ct. at 2416.

To be sure, the evidence regarding price impact would again be crucial in analyzing loss causation at summary judgment and, if necessary, trial; but Halliburton II acknowledged this overlap when the Court observed that Halliburton argued the same "evidence it had earlier introduced to disprove loss causation also showed that none of its alleged misrepresentations had actually affected its stock price."  Id. at 2406.  Factual disputes involving price impact must be decided at the class certification stage, even if they overlap with merits determinations.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011); see also Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013).  Halliburton II is explicit that assessing whether a price change is "link[ed]" to the alleged misstatements is a proper consideration at class certification.  134 S. Ct. at 2415-16.

Courts throughout the country, including the district court here (Appx.3), have struggled to reconcile the price-impact analysis required by Halliburton II on the one hand, and Halliburton I and Amgen's holdings that loss causation and materiality

are merits issues on the other.  See, e.g., Halliburton Remand, 309 F.R.D. at 261-62;

In re Goldman Sachs Grp., Inc., Case No. 16-250, Dkt. No. 1 (2d Cir.) (granting

23(f) leave to appeal district court opinion declining to consider whether alleged

corrective information had previously been revealed to the market and assigning

burden of persuasion to defendants); see also Strougo v. Barclays, PLC, Case No.

16-1912, Dkt. 1-2 (2d Cir. June 15, 2016) (granting 23(f) leave to appeal).  This

Court has already determined that Rule 23(f) review is warranted to provide

guidance on this important question in the remanded Halliburton case, but the parties

settled that case before this Court could decide it.  Erica P. John Fund, Inc. v.

Halliburton Co., No. 15-11096, Doc. 00513814730 (5th Cir. Dec. 28, 2016).  This

case provides an opportunity for the Court to provide that guidance, made all the

more necessary given the high stakes for settlement dynamics in securities litigation

after classes are certified or denied.  See Credit Suisse, 482 F.3d at 379.

II.    This Court Should Clarify The Parties' Respective Burdens Of
       Production And Persuasion At The Certification Stage

       Although the district court improperly refused to decide whether the allegedly

corrective disclosures actually revealed any truth concealed by the alleged

misstatements, Appx.3, it did recognize that to be corrective they must reflect

information that was "new," Appx.4.  As the magistrate judge explained, "[a] prior

corrective disclosure of the same information would sever the causal link and rebut

the presumption of reliance."  Appx.23 (citing Basic, 485 U.S. at 248-49); see also

Halliburton Remand, 309 F.R.D. at 274 (finding no price impact where there was no price drop on previous releases of the same alleged "correction").

The court below erred, however, in imposing a burden of persuasion instead of a burden of production on JCPenney to demonstrate that the statements on which Lead Plaintiff relies contained information that had already been released to the market through other statements that concededly had no price impact. Although the district court stated that it was applying a "burden of production," its reasoning leaves no question that it actually assessed whether Defendants' evidence was sufficient to prove the absence of price impact. See Appx.3 ("Defendants did not meet their burden to produce sufficient evidence to show that the disclosures on September 24 and September 26 did not affect the market price"), Appx.4 ("Defendants did not meet their burden to show that the causal link between the disclosures and the stock price decrease on September 25 and 27 was severed"), Appx.5 ("Defendants did not meet their burden . . . to rebut the Fund's showing that the disclosures of September 24 and September 26 caused the stock price to drop on September 25 and September 27").

JCPenney bore only a burden of production to rebut the prima facie application of the Basic presumption. "In a civil case, unless a federal statute or [the Federal Rules of Evidence] provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the

18

presumption.  But this rule does not shift the burden of persuasion, which remains on the party who had it originally." Fed. R. Evid. 301 (emphases added); Basic, 485 U.S. at 245 (referring to Rule 301 in creating the presumption).

Although Halliburton II did not clearly define what the rebuttal burden is in this context, the Eighth Circuit recently held that the Rule 301 burden-shifting framework—requiring that defendants bear only a burden of production—applies. Best Buy, 818 F.3d at 782.  The Second Circuit has also recognized that this issue requires appellate resolution.  See supra, p. 17.  This Court should similarly clarify the burden-shifting framework.

A number of district courts have imposed the higher burden of persuasion standard on defendants.  In fact, the magistrate judge explicitly recognized this conflict, noting that the district judge in the Halliburton Remand imposed the burden of persuasion standard.  Appx.18-19 at n.1 (collecting cases); Halliburton Remand, 309 F.R.D. at 257-60 (concluding that defendants bear the burden of persuasion).

The burden of production requires only that a party introduce "rebuttal evidence sufficient to support a finding contrary to the presumed fact," at which point "the presumption evaporates."  City of Arlington v. F.C.C., 668 F.3d 229, 256 (5th Cir. 2012).  Once JCPenney satisfies that burden of production, the burden shifts to Lead Plaintiff to prove price impact; the burden of persuasion always resides with Lead Plaintiff.  Id.; cf. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)

("[A]lthough the McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] presumption shifts the burden of production to the defendant, the ultimate burden of persuading the trier of fact . . . remains at all times with the plaintiff.  In this regard it operates like all presumptions, as described in Federal Rule of Evidence 301.") (emphasis added) (citation omitted) (internal quotation marks omitted).  The district court's application of the higher burden to JCPenney clearly reflected an erroneous legal interpretation of the low standard imposed by Rule 301.

JCPenney came forward with more than enough evidence that the alleged corrective disclosures were not actually corrective to discharge its burden of production.  JCPenney offered evidence that the information "revealed" in the GS Report had previously been published by other media outlets and analysts and that those prior revelations did not cause a statistically significant price drop.  In fact, the GS Report explicitly stated that its conclusions regarding the prudence of securing a "bigger liquidity buffer" "ha[d] been suggested by recent press reports."  Appx.45. JCPenney also provided rebuttal evidence from its expert on the same topic.  See Dkt. 128-3 ¶¶ 6, 89-112 & Exh. H.   JCPenney's offering announcement was similarly not "new" information.  JCPenney also offered evidence that the corrective disclosures did not actually correct the alleged misstatements, though the district court refused to consider that evidence altogether at class certification, as described above.  Supra, Section I.

20

The district court's conclusion that "Defendants did not meet their burden of production to establish that the opinions in the GS Report had been previously disclosed to the market[,]" (Appx.4 (emphasis added)), points up the erroneous application of the burden-shifting framework.  The burden of production does not require a party to establish anything; it requires only that the party produce evidence sufficient to support a finding.  City of Arlington, 668 F.3d at 256.  The burden of proving that the presumption of reliance applies—and of proving all the elements of class certification—always remains with the plaintiff; and Lead Plaintiff here did not discharge that burden.  The district court's conclusion to the contrary demonstrates legal error in applying the parties' respective burdens.

\*   \*   \*

Both questions presented by this petition—whether a district court must decide before certification whether a challenged disclosure was corrective, and which party bears the ultimate burden of persuasion—are recurring and important, as this Court already recognized in granting review after remand in Halliburton.  The Eighth and Second Circuits, too, have recognized that variants of these questions require appellate resolution.   They are squarely presented here and outcome-

21

determinative on the issue of class certification.  The Court should grant review and resolve them now, for the benefit of judges and litigants in this and future cases.[2]

CONCLUSION

This Court should grant this petition and reverse or vacate the class certification order.

---

[2]   If this Court grants review, JCPenney also expects to address other errors within the certification order, including the district court's definition of the class to cover purchasers of all JCPenney securities, Appx.6, even though Lead Plaintiff only argued that the Basic presumption should apply to common stock and options, Appx.19, and only produced sufficient evidence of market efficiency for common stock.

DATED:    March 22, 2017          Respectfully submitted,


                                    s/ Mark A. Perry
                                   Mark A. Perry

                                   GIBSON, DUNN & CRUTCHER LLP
                                   Mark A. Perry
                                   MPerry@gibsondunn.com
                                   Jason J. Mendro
                                   JMendro@gibsondunn.com
                                   1050 Connecticut Ave., N.W.
                                   Washington, D.C. 20036
                                   Tel: (202) 955-8500
                                   Fax: (202) 530-9626

                                   Meryl L. Young
                                   MYoung@gibsondunn.com
                                   3161 Michelson Drive
                                   Irvine, CA 92612-4412
                                   Tel: (949) 451-3800
                                   Fax: (949) 451-4220

                                   Robert C. Walters
                                   RWalters@gibsondunn.com
                                   Olivia Adendorff
                                   OAdendorff@gibsondunn.com
                                   2100 McKinney Ave., Suite 1100
                                   Dallas, TX 75201-6912
                                   Tel: (214) 698-3100
                                   Fax: (214) 571-2900


                                   COUNSEL FOR PETITIONERS

23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS

1.      This brief complies with the type-volume limitations of Rules 5(c)(1)

and 32(c)(2) of the Federal Rules of Appellate Procedure because it contains 5,026

words, as determined by the word-count function of Microsoft Word 2016,

excluding the parts of the brief exempted by Federal Rule of Appellate Procedure

32(f) and Fifth Circuit Rule 5.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced

typeface using Microsoft Word 2016 in 14-point Times New Roman typeface.


                                        s/Mark A. Perry
                                        Mark A. Perry
                                        Counsel of Record

Dated: March 22, 2017

CERTIFICATE OF SERVICE

I hereby certify that, on March 22, 2017, a true and correct copy of the foregoing petition was served via UPS priority overnight and electronic mail on the following counsel of record for Respondents:

Danielle Suzanne Myers
Austin P. Brane
Robert R. Henssler, Jr.
ROBBINS GELLER RUDMAN & DOWD, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423
Email: bhenssler@rgrdlaw.com


Thomas John Ward, Jr.
Jack Wesley Hill
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:  (903) 757-6400
Facsimile: (903) 757-2323
Email: jw@wsfirm.com


                                     s/ Mark A. Perry
                                    Mark A. Perry
                                    Counsel of Record

25