UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 6:13-cv-00736-RWS-KNM (Consolidated) |
| Plaintiff, | § § | <u>CLASS ACTION</u> |
| vs. | § § § | |
| J.C. PENNEY COMPANY, INC., et al., | § § § | |
| Defendants. | § § | |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND APPROVAL OF NOTICE TO THE CLASS**

1259911_2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     SUMMARY OF THE LITIGATION ..........................................................................2

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................4

    A.      The Proposed Settlement Is Within an Appropriate Range for Preliminary Approval ........................................................................................................4

    B.      Consideration of Final Approval Criteria Supports Preliminary Approval ............5

    C.      The Fifth Circuit's Six-Pronged Test of Fairness ....................................................7

        1.      There Is No Fraud or Collusion Behind the Settlement..............................8

        2.      The Stage of the Proceedings and the Amount of Discovery Completed ...................................................................................................9

        3.      The Probability of Success on the Merits ...................................................9

            a.      Risks in Proving Liability ...............................................................10

            b.      Risks in Proving Loss Causation and Damages.............................10

        4.      The Settlement Falls Within the Range of Reasonableness.......................11

        5.      The Complexity, Expense, and Likely Duration of This Action ...............12

        6.      The Opinion of Lead Counsel...................................................................13

    D.      Submission of the Settlement to the Class Is Appropriate....................................14

IV.     PROPOSED SCHEDULE ...........................................................................................14

V.      CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .........................................................................4, 5, 6

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...................................................................................11

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995)......................................................................................4

*Fickinger v. C.I. Planning Corp.*,
  646 F. Supp. 622 (E.D. Pa. 1986) ........................................................................11

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
  630 F. Supp. 482 (E.D. Pa. 1985) ........................................................................13

*Fla. Trailer & Equip. Co. v. Deal*,
  284 F.2d 567 (5th Cir. 1960) ..................................................................................6

*In re Apollo Grp., Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008)..........................................................................................13

*In re Enron Corp. Sec.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................................................................8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................5

*Karasik v. Pac. E. Corp.*,
  180 A. 604 (Del. Ch. 1935)....................................................................................11

*Lewis v. Newman*,
  59 F.R.D. 525 (S.D.N.Y. 1973) .............................................................................12

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ...............................................................................4, 6

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996).....................................................................9, 12

*McNamara v. Bre-X Minerals Ltd.*,
  214 F.R.D. 424 (E.D. Tex. 2002)............................................................................2

- ii -

**Page**

*McNary v. Am. Sav. & Loan Ass'n,*
  76 F.R.D. 644 (N.D. Tex. 1977) ........................................................................7, 11

*Miller v. Republic Nat'l Life Ins. Co.,*
  559 F.2d 426 (5th Cir. 1977) ..................................................................................6

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972)..................................................................................11

*Parker v. Anderson,*
  667 F.2d 1204 (5th Cir. 1982) ..........................................................................8, 11

*Pearson v. Ecological Sci. Corp.,*
  522 F.2d 171 (5th Cir. 1975) ..................................................................................6

*Pettway v. Am. Cast Iron Pipe Co.,*
  576 F.2d 1157 (5th Cir. 1978) ................................................................................7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,*
  390 U.S. 414 (1968)..............................................................................................12

*Reed v. Gen. Motors Corp.,*
  703 F.2d 170 (5th Cir. 1983) .............................................................................7, 8

*Ruiz v. McKaskle,*
  724 F.2d 1149 (5th Cir. 1984) ................................................................................5

*Salinas v. Roadway Express, Inc.,*
  802 F.2d 787 (5th Cir. 1986) ..................................................................................8

*United States v. Tex. Educ. Agency,*
  679 F.2d 1104 (5th Cir. 1982) ................................................................................7

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976) ..................................................................................6

*West Virginia v. Chas. Pfizer & Co.,*
  314 F. Supp. 710 (S.D.N.Y. 1970),
  *aff'd*, 440 F.2d 1079 (2d Cir. 1971)....................................................................13

*Williams v. First Nat'l Bank,*
  216 U.S. 582 (1910)................................................................................................6

*Young v. Katz,*
  447 F.2d 431 (5th Cir. 1971) ..................................................................................7

- iii -

**Page**

*Zerkle v. Cleveland-Cliffs Iron Co.*,
   52 F.R.D. 151 (S.D.N.Y. 1971) ...............................................................................................12

## STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure
   Rule 23 ...........................................................................................................................14
   Rule 23(e).....................................................................................................................1, 4

## SECONDARY AUTHORITIES

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
   (Cornerstone Research 2017)
   *Securities Class Action Settlements: 2016 Review and Analysis* ............................................11

*Manual for Complex Litigation* (3d ed. 1995)
   §23.14......................................................................................................................................5
   §30.41..................................................................................................................................2, 5

Plaintiffs the National Shopmen Pension Fund ("NSPF") and David O'Connell (collectively, "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed settlement reached in this Action (the "Settlement") and proposed notice to the Class.

## I.  INTRODUCTION

The proposed Settlement provides a recovery of $97,500,000 in cash to resolve this securities class action against Defendants J.C. Penney Company, Inc. ("JCPenney"), Myron E. Ulmann, III, and Kenneth H. Hannah (collectively, "Defendants").  The Settlement is contained in the Settlement Agreement dated June 14, 2017 (the "Stipulation")[1] and was reached at an advanced stage of the case and only after the parties fully appreciated the strengths and weaknesses of their respective cases.  Indeed, fact discovery was nearly complete as over 850,000 pages of documents were produced by Defendants and third parties, and Lead Counsel took 20 depositions.

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate, such that notice of the proposed Settlement should be given to Class Members, and a hearing scheduled to consider final settlement approval.  The Court is not required at this point to make a determination as to whether the Settlement should be finally approved.[2]  The *Manual for Complex Litigation* describes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class

---

[1]   All terms not otherwise defined herein have the same meanings as set forth in the Stipulation.

[2]   Notwithstanding the fact that this is a motion for preliminary approval, the brief discussion below of the factors to be considered in connection with final approval demonstrates that the Settlement is entitled to both.

1259911_2

members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

§30.41, at 237 (3d ed. 1995); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002) (same).

Plaintiffs respectfully request that this motion for preliminary approval be granted not only because public policy favors the settlement of complex class actions such as this one, but, as demonstrated herein, since the Settlement has achieved a very good result for the Class, it is eminently fair, reasonable, and adequate under the governing standards in this Circuit and deserves approval of this Court. In addition, the proposed notice plan unquestionably meets the relevant standards for notice in this type of case.

By this motion, Plaintiffs seek entry of an order: (i) granting preliminary approval of the Settlement of this Action as embodied in the Stipulation; (ii) approving the form and manner of giving notice to the Class of the Settlement; and (iii) setting a hearing for final approval thereof.

## II.    SUMMARY OF THE LITIGATION

This case is currently pending before the Honorable Robert W. Schroeder, III in the United States District Court for the Eastern District of Texas and was brought on behalf of the certified Class of all persons who purchased or otherwise acquired JCPenney securities during the period from August 20, 2013 through and including September 26, 2013 (the "Class Period"), and who were damaged by Defendants' alleged violations of §§10(b) and/or 20(a) of the Securities Exchange Act of 1934. The initial complaint was filed on October 1, 2013, and on February 28, 2014, the Court appointed NSPF as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel. On June 8, 2015, Lead Plaintiff filed the Revised Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint"), which alleges that during the Class Period, Defendants made false and misleading statements to investors concerning JCPenney's liquidity, need for additional financing, sufficiency of inventory, and strength of supplier relationships that artificially inflated

- 2 -

JCPenney's stock price.  The Complaint further alleges that when the truth was eventually disclosed, Plaintiffs and the Class were substantially damaged thereby.

From the outset of the Action, Defendants have denied all of these allegations and consistently maintained that they never made any statement to the market that was false or misleading, nor did they ever direct anyone to make public statements that were false or misleading.  Defendants contend that they believed during the Class Period and at all other times that JCPenney's public statements were truthful, accurate and not misleading.  Accordingly, Defendants contend that Plaintiffs cannot prove any element of securities fraud, including falsity, scienter or loss causation.

On September 11, 2015, Magistrate Judge Mitchell issued a report recommending that Defendants' motion to dismiss be denied.  On September 29, 2015, Judge Schneider issued an order adopting Judge Mitchell's report.  Thereafter, Defendants filed an answer denying all material allegations of the Complaint and asserting certain affirmative defenses.

On March 8, 2017, the Court entered an order appointing Plaintiff NSPF as Class Representative and certifying a Class defined as: "All persons who, between August 20, 2013 and September 26, 2013 (the 'Class Period'), purchased or otherwise acquired J.C. Penney Company, Inc. securities, and were damaged thereby.  Excluded from the Class are current and former defendants, members of the immediate family of any current or former defendants, directors, officers, subsidiaries and affiliates of J.C. Penney Company, Inc., any person, firm, trust, corporation, officer, director or other individual or entity in which any current or former defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party."

During the Action, the parties participated in two formal mediation sessions with Judge Daniel Weinstein (Ret.).  In addition to the formal mediations, Judge Weinstein engaged in

numerous informal telephonic discussions with the parties.  On April 17, 2017, the parties agreed to settle the Action based on a Mediator's Proposal issued by Judge Weinstein.

Plaintiffs have agreed to settle their claims and those of the Class upon the terms and conditions set forth in the Stipulation only after thoroughly researching the law applicable to the claims underlying the Action, completing a detailed factual investigation, conducting extensive factual and expert discovery, litigating both Defendants' motion to dismiss and Plaintiffs' motion for class certification, balancing the substantial benefits that Plaintiffs and the Class will receive from the Settlement against the uncertain outcome, risks, difficulties, and delays of litigation, in general, and in complex actions such as this Action, in particular, and after concluding that the Settlement is in the best interests of Plaintiffs and the Class.

While vigorously denying that they committed any violations of the federal securities laws, Defendants have agreed to the compromise and settlement of the Action, subject to the terms and conditions set forth in the Stipulation, solely to avoid the substantial burden, expense, management distraction, and uncertainties that would be involved in protracted litigation, and to terminate the Released Claims against them.

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The Settlement requires the payment of $97,500,000 in cash for the benefit of the Class. Plaintiffs believe and respectfully submit that the Settlement is a very good result under the circumstances, is clearly within the range of reasonableness, and therefore warrants preliminary approval.

### A.    The Proposed Settlement Is Within an Appropriate Range for Preliminary Approval

Public policy strongly favors the pretrial settlement of complex class action lawsuits.  *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).  Rule 23(e) of the

- 4 -

Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained.

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation*, *supra*, at §30.41). First, counsel submit the proposed terms of the settlement and the court makes a preliminary evaluation of the fairness of the settlement, prior to notice. *NASDAQ*, 176 F.R.D. at 102. This initial assessment can be made on the basis of information already known to the court which, if necessary, may be supplemented by briefs, motions or an informal presentation from the settling parties. *Id.* Second, the court must issue an order finally approving the settlement after notice to the class and an opportunity to be heard has been given.

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id.*; *see also Manual for Complex Litigation*, *supra*, at §30.41. Preliminary approval permits notice to be given to class members of a hearing on final settlement approval (which is the second step of the approval process), at which class members and the settling parties may be heard with respect to final approval. *Manual for Complex Litigation*, *supra*, at §23.14.

## B. Consideration of Final Approval Criteria Supports Preliminary Approval

The Fifth Circuit has explained that the general standard for final approval of a proposed settlement of a class action is whether the proposed settlement is "fair, adequate and reasonable" and has been entered into without collusion between the parties. *Cotton*, 559 F.2d at 1330; *see also Ruiz*

*v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (*per curiam*).  In applying this standard, the court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

It has long been settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'"  *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (citations omitted); *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975).

Settlements of class actions and shareholder litigation are "particularly favored" and are not to be lightly rejected.  *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331.  In the case of class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex."  *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Thus, in determining whether to approve a settlement, the trial judge is not required to decide the merits of the action or substitute a different view of the merits from that of the parties or their counsel.  *Maher*, 714 F.2d at 455.

In weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, trial courts are not expected to balance the scales perfectly.  The "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'"  *Cotton*, 559 F.2d at 1330

(citation omitted).  The very object of a compromise """is to avoid the determination of sharply contested and dubious issues.""" *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citations omitted).

Where, as here, experienced counsel have negotiated a settlement at arm's length, with the assistance of a mediator, a strong initial presumption is created that the compromise is fair and reasonable.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Thus, if experienced counsel determine that a settlement is in the class's best interest, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

When examined under the applicable criteria, this Settlement is a very good result for the Class.  The Settlement Amount is well above the average recovery as a percentage of provable damages, assuming Plaintiffs prevailed on liability and without the risk, delay, and expense of trial. It is Lead Counsel's judgment that there is a serious question as to whether a more favorable result against Defendants could or would be attained after trial and the inevitable post-trial motions and appeals.  The Settlement achieves a substantial recovery for Class Members and is unquestionably superior to another possibility which unmistakably exists if the Action continued:  no recovery at all.

### C.    The Fifth Circuit's Six-Pronged Test of Fairness

Once satisfied that counsel adequately represented the class and has bargained for the proposed settlement in good faith, the """"only question""" for the court to determine """"is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.""" *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citations omitted).  The Fifth Circuit has established a six-pronged test to be applied to the approval of class settlements.

1.    the assurance that there is no fraud or collusion behind the settlement;

- 7 -

2.      the stage of the proceedings and the amount of discovery completed;

3.      the probability of plaintiff's success on the merits;

4.      the range of possible recovery;

5.      the complexity, expense, and likely duration of the litigation; and

6.      the opinions of class counsel, class representatives, and absent class members.

*Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986) (considering the above factors in affirming district court's order approving a consent decree in class action lawsuit).  The Settlement easily passes muster when examined in light of these six criteria.

### 1.      There Is No Fraud or Collusion Behind the Settlement

There is no collusion in the Settlement of this Action.  This Settlement was reached only after a lengthy process that involved two mediation sessions with Judge Weinstein, who has extensive experience mediating complex securities actions.  In addition, Lead Counsel have many years of experience in litigating securities class actions and have negotiated scores of other class settlements which have been approved by courts throughout the country.  Lead Counsel enjoy well deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters.  *See, e.g.*, *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) ("The experience, ability, and reputation of [Lead Counsel] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.").  Likewise, Defendants are represented by law firms with reputations for the tenacious defense of class actions and other complex civil matters.  The Settlement was negotiated by senior members of these firms, assisted by Judge Weinstein.  The Settlement negotiations were thorough and contentious, and the Settlement was the result of arm's-length negotiations between experienced counsel knowledgeable about the strengths and weaknesses of the claims made and the potential defenses to

them.  There can be no question that the Class was fairly and adequately represented in the course of these proceedings and that the Settlement was not collusive.

### 2.   The Stage of the Proceedings and the Amount of Discovery Completed

The Action reached a sufficiently advanced stage which allowed Lead Counsel to intelligently assess the strengths and weaknesses of their case.  For instance, Lead Counsel conducted a thorough investigation of the facts both before and during the course of the Action. Lead Counsel also reviewed and analyzed voluminous publicly available documents regarding JCPenney.  They also interviewed dozens of key witnesses and industry sources and consulted with four experts in the areas of damages, industry, public offerings, and accounting.  This investigation allowed Lead Counsel to better understand the key factual issues at the core of the Action.

In addition to Lead Counsel's investigation, the parties conducted extensive fact discovery. Defendants and third parties produced 854,227 pages of documents, the vast majority of which were reviewed and analyzed by Lead Counsel.  Further, Lead Counsel took 20 depositions and defended two depositions.  This massive amount of fact discovery created an extensive factual record upon which the parties were able to reach a Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Nothing more is required.

Having completed sufficient investigation, as well as fact and expert discovery to properly evaluate this case, Lead Counsel have settled this Action on a highly favorable basis to the Class without unduly prolonging it and without the expense and risk of a trial.

### 3.   The Probability of Success on the Merits

As in every complex case of this kind, Plaintiffs faced formidable obstacles to recovery at trial, both with respect to liability and damages.  The principal claims are based upon §§10(b) and/or 20(a) of the Securities Exchange Act of 1934.  Plaintiffs allege that during the Class Period

1259911_2

Defendants made false and misleading statements to investors concerning JCPenney's liquidity, need for additional financing, sufficiency of inventory, and strength of supplier relationships that artificially inflated JCPenney's stock price and that when the truth was eventually disclosed, it resulted in substantial damages to the Class.

### a.      Risks in Proving Liability

Though Plaintiffs believe that they would be successful and that the allegations of the Complaint would ultimately be borne out by the evidence, they also recognize that they faced significant hurdles to proving liability at trial.  Defendants have argued, and no doubt would have continued to argue, that liability was unwarranted because they made no false and/or misleading statements or omissions.  Defendants would also continue to contest scienter, claiming that any alleged statements made by Defendants were believed to be true at the time they were made.  Although Plaintiffs were confident that they would have been able to support their claims with qualified and persuasive expert testimony, jury reactions to competing experts are inherently difficult to predict, and Defendants would have presented highly experienced experts to support their various defenses to liability.

### b.      Risks in Proving Loss Causation and Damages

Even if Plaintiffs were successful in establishing liability at trial, they faced substantial risks in proving loss causation and damages.  Defendants would have argued that any losses suffered by Class Members on their investments were not attributable to the alleged public misstatements.  As with contested liability issues, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."  Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total settlement amount – or even nothing at all.  Thus, the substantial payment of $97,500,000, particularly when viewed in the context of the significant risks

- 10 -

and uncertainties involved in proving both liability and damages, weighs strongly in favor of approving the Settlement.

In sum, Plaintiffs recognize that, had the case proceeded to trial, it may have been very difficult to recover all or even most of the damages claimed. Therefore, Plaintiffs and their counsel believe that the Settlement for $97,500,000 in cash represents a very good result for the Class.

### 4.    The Settlement Falls Within the Range of Reasonableness

Courts agree that determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).

> In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *Parker*, 667 F.2d at 1210 n.6; *McNary*, 76 F.R.D. at 650. Similarly, as the court stated in *Karasik v. Pac. E. Corp.*, 180 A. 604, 609 (Del. Ch. 1935):

> [T]he amount claimed is one hundred million dollars and the amount received in settlement is a minimum of three hundred and eighty-five thousand dollars. Now that is a wide disparity. But it is one thing to assert a claim and another thing to prove the claim to judgment. Furthermore, it is one thing to obtain a judgment, and quite another thing to collect it. Figures, however imposing, should not compel practical considerations to yield place to visions.

Given the existence of studies which suggest that the median recovery as a percentage of estimated damages in shareholder class actions is far less than that recovered here, *see, e.g.*, Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (Cornerstone Research 2017) (showing median percentage recovery in securities class actions in 2016 was 2.5%), this recovery, about 21% of Plaintiffs' expert's estimate of maximum viable damages and for a much greater percentage of Defendants' estimate, is an excellent result.

- 11 -

1259911_2

### 5.      The Complexity, Expense, and Likely Duration of This Action

Another reason for counsel to recommend, and the courts to approve, a proposed settlement is the complexity, duration, and risks of further litigation.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966.[3]  Here, several factors are present which make it more likely that, without the Settlement, this case would require additional large expenditures of time and money and there would be a significant risk that the Class would obtain a result far less beneficial than the one provided by the Settlement.  The factors include the following:

(a)      Defendants are represented by very capable counsel who are well versed in the defense of complex securities class actions such as the Action.

(b)      From the beginning of the Action, Defendants denied liability and asserted facially reasonable explanations in response to Plaintiffs' allegations.

(c)      A trial of the Action would unquestionably require months of effort and involve the introduction of hundreds, if not thousands, of exhibits dealing with dry financial matters, vigorously contested evidentiary motions, and the expenditure of substantial additional expenses.

(d)      A trial would necessarily involve complex factual issues resulting in conflicting expert testimony, the outcome of which is by no means certain.  Thus, if there were further litigation, and a trial, there is a risk that the Plaintiffs might fail to convince the trier of fact of the merits of their case, the Defendants could obtain judgment in their favor, and the Class recover nothing.

---

[3]      Courts have frequently recognized, in evaluating a proposed settlement of a securities class action, that such litigation "is notably difficult and notoriously uncertain."  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (citing *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  Accordingly, compromises of securities class actions are particularly appropriate.

(e)     Even if the Class recovered a judgment after trial that was larger than the amount of the Settlement, given the time value of money, such a future recovery might not be more beneficial than receiving the benefits of the proposed Settlement now.  Moreover, any judgment after trial would still be subject to the continuing risks and vicissitudes of litigation, through likely appeals.  Experience shows that even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[4]

### 6.     The Opinion of Lead Counsel

As noted above, Lead Counsel, after substantial arm's-length negotiations with senior defense counsel, and with the assistance of a very experienced mediator, have concluded that the Settlement is fair, reasonable, and adequate.  Lead Counsel have acquired a thorough understanding of this Action through independent investigation, discovery and the negotiation process, and submit that the Settlement is appropriate and should be approved.  The view of Lead Counsel, while not conclusive, is "entitled to significant weight."  *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985).

For all of the foregoing reasons, the Settlement deserves the Court's preliminary, and ultimately final, approval.

---

[4]     As the court noted in *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971):

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.  Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court.  The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

*See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008).

1259911_2

**D.      Submission of the Settlement to the Class Is Appropriate**

Pursuant to the Stipulation, the parties recommend to the Court a notice program and form of notice substantially in the form of the respective Exhibits to the Stipulation.  The Stipulation provides that a copy of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") will be mailed to each Class Member who can be identified with reasonable effort and each nominee who were securities holders of record for Class Members who purchased the relevant securities during the Class Period.  The proposed Settlement also provides Summary Notice is to be published once in the national edition of *The Wall Street Journal* and once over the *Business Wire* shortly after mailing the Notice.  The Notice details the Settlement's terms, the rights of Class Members to share in the recovery, to object to the Settlement or request exclusion.  The Notice and Summary Notice also provide the date, time, and place of the Settlement Hearing and the right of Class Members to be heard at the hearing.  Finally, they provide the name, address and phone number of Lead Counsel's representative for inquiries.  The form and manner of the Notice and Summary Notice proposed here fulfill all of the requirements of Federal Rule of Civil Procedure 23 and due process.

**IV.     PROPOSED SCHEDULE**

In connection with preliminary approval of the Settlement, the Court should set a final approval hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for objecting to the Settlement, submitting requests for exclusion and filing papers in support of the Settlement.  The parties propose the following schedule:

| *EVENT* | *TIME FOR COMPLIANCE* |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim and Release form to Class Members (the "Notice Date") | 14 calendar days after entry of the Notice Order |
| Deadline for publication of Summary Notice | 10 calendar days after the Notice Date |

- 14 -

| *EVENT* | *TIME FOR COMPLIANCE* |
|---|---|
| Deadline for filing initial papers in support of final approval of the Settlement, Plan of Allocation of settlement proceeds, and application for an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections and requests for exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement and Plan of Allocation, or in support of application for an award of attorneys' fees and expenses | 7 days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days from entry of the Notice Order, at the Court's convenience |
| Deadline for submitting Proof of Claim and Release forms | 90 calendar days after the Notice Date |

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion

for preliminary approval of the proposed Settlement and enter the [Proposed] Order Preliminarily

Approving Settlement and Providing for Notice.

DATED:  June 14, 2017                    Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         JONAH H. GOLDSTEIN
                                         ROBERT R. HENSSLER JR.


                                                s/ Robert R. Henssler Jr.
                                         ROBERT R. HENSSLER JR.

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101-8498
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

                                         Lead Counsel for Plaintiffs

- 15 -

WARD, SMITH & HILL, PLLC
T. JOHN WARD, JR. (State Bar No. 00794818)
JACK WESLEY HILL (State Bar No. 24032294)
1127 Judson Road, Suite 220
Longview, TX  75601
Telephone:  903/757-6400
903/757-2323 (fax)

Liaison Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 14, 2017.

s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bhenssler@rgrdlaw.com

# Mailing Information for a Case 6:13-cv-00736-RWS-KNM Marcus v. J.C. Penney Company, Inc. et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas Robert Ajamie**
  tajamie@ajamie.com,dmolloy@ajamie.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Benjamin D Bianco**
  bdb@msf-law.com

- **Thomas Emerson Bilek**
  tbilek@bileklaw.com,lmank@bileklaw.com

- **Austin P Brane**
  abrane@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **John Frederick Bufe**
  johnbufe@potterminton.com,vrt@potterminton.com

- **James Albert Caputo**
  jimc@rgrdlaw.com

- **Roger F Claxton**
  roger@claxtonlaw.com

- **Rachel A Cocalis**
  rcocalis@rgrdlaw.com,jillk@rgrdlaw.com

- **Jonah H Goldstein**
  jonahg@rgrdlaw.com,ldeem@rgrdlaw.com

- **Roger Bruce Greenberg**
  roger@smglawgroup.com,sam@smglawgroup.com

- **David J Harris , Jr**
  dharris@rgrdlaw.com

- **Claire Abernathy Henry**
  claire@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com,jillk@rgrdlaw.com,ldeem@rgrdlaw.com

- **Jack Wesley Hill**
  wh@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Michael Kevin Hurst**
  mhurst@lynnllp.com,tashworth@lynnllp.com,mslusser@lynnllp.com,jguild@lynnllp.com,hturgeon@lynnllp.com,jsandler@lynnllp.com,bcongdon@lynnllp.com

- **JC Penney Investor Group**
  kpuls@pulslaw.com

- **Daniel Ward Jackson**
  daniel@jacksonlaw-tx.com,beverly@jacksonlaw-tx.com,scott@jacksonlaw-tx.com

- **Michael E Jones**
  mikejones@potterminton.com,CMECF@potterminton.com,jovallery@potterminton.com

- **Elton Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Brian C Kerr**
  kerr@browerpiven.com

- **Rocky M Lawdermilk**
  rocky@rocklaws.com,brenda@rocklaws.com

- **Jamie Jean McKey**
  jmckey@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Jason Jacob Mendro**
  jmendro@gibsondunn.com,kohara@gibsondunn.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lissa M Percopo**
  lpercopo@gibsondunn.com,vlomax@gibsondunn.com

- **Ira Michael Press**
  ipress@kmllp.com

- **William Kelly Puls**
  kpuls@pulslaw.com,msmith@pulslaw.com,kelly.puls@gmail.com

- **Darren Jay Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Hillary B Stakem**
  hstakem@rgrdlaw.com,ldeem@rgrdlaw.com

- **Michael W Stocker**
  mstocker@labaton.com,drogers@labaton.com,ravan@labaton.com,lmehringer@labaton.com,electroniccasefiling@labaton.com

- **Robert C Walters**
  rwalters@gibsondunn.com,kmoody@gibsondunn.com,cfitzgerald@gibsondunn.com

- **David Conrad Walton**
  davew@rgrdlaw.com,ldeem@rgrdlaw.com

- **Thomas John Ward , Jr**
  jw@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com,cfitzgerald@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

**CERTIFICATE OF CONFERENCE**

On June 14, 2017, the parties met and conferred concerning the finalization of the terms of settlement. Having reached agreement on all outstanding issues, Lead Plaintiff submits the accompanying unopposed Motion for Preliminary Approval.

s/ Robert R. Henssler Jr.
_____
ROBERT R. HENSSLER JR.
