UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 6:13-cv-00736-RWS-KNM (Consolidated) |
| Plaintiff, | § § | CLASS ACTION |
| vs. | § § | |
| J.C. PENNEY COMPANY, INC., et al., | § § | |
| Defendants. | § § § | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

1305703_2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND OF LITIGATION ...................................................................4

III. THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR FINAL
     APPROVAL UNDER RULE 23(e) ......................................................................4

     A.   The Law Favors and Encourages Settlements ........................................4

     B.   The Fifth Circuit's Standards Governing Class Action Settlements ......6

     C.   An Analysis of the Fifth Circuit's *Reed* Factors Supports Approval of the
          Settlement ...............................................................................................6

          1.   The Proposed Settlement Is Free from Fraud and Collusion......................6

          2.   The Complexity, Expense, and Likely Duration of Continued
               Litigation Favor Approval of the Settlement ..................................8

          3.   The Stage of the Proceedings and the Amount of Discovery
               Completed ........................................................................................8

          4.   The Probability of Plaintiffs' Success on the Merits .................10

               a.   Risks to Establishing Defendants' Liability .................10

               b.   Risks to Establishing Loss Causation and Damages....................12

          5.   The Range of Possible Recovery .................................................12

          6.   The Opinions of Lead Counsel, Plaintiffs and the Class ...........13

IV.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE............15

V.   THE NOTICE PROVIDED TO THE CLASS SATISFIES THE
     REQUIREMENTS OF BOTH DUE PROCESS AND RULE 23 ....................................16

VI.  CONCLUSION.................................................................................................18

1305703_2

# TABLE OF AUTHORITIES

Page

## CASES

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ............................................................6, 8

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)...............................................................15

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) ................................................................................5

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. 6:12-1609, 2015 WL 965693
    (W.D. La. Mar. 3, 2015) .....................................................................17

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978),
    *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) .........................8

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...........................................................5, 6

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .......................................................14

*Duncan v. JPMorgan Chase Bank, N.A.*,
    No. SA-14-CA-00912-FB, 2016 WL 4419472 (W.D. Tex. May 24, 2016)
    *report and recommendation adopted*,
    No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016)..................7

*Faircloth v. Certified Fin. Inc.*,
    No. 99-3097 SECTION "T" (3), 2001 U.S. Dist. LEXIS 6793
    (E.D. La. May 16, 2001) ......................................................................6

*Fla. Trailer & Equip. Co. v. Deal*,
    284 F.2d 567 (5th Cir. 1960) ...............................................................6

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................12

*In re 2014 Radioshack Erisa Litig.*,
    No. 4:14-cv-00959-O, 2016 WL 6561597
    (N.D. Tex. Jan. 25, 2016).....................................................................17

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)..............................................................10

- ii -

**Page**

*In re Broadcom Corp. Sec. Litig.*,
  No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976
  (C.D. Cal. Sept. 12, 2005)...................................................................................15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).................................................................................12

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ..........................................................................12, 15

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ............................................................................7, 9

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ................................................................................4

*In re Enron Corp. Sec.*,
  228 F.R.D. 541 (S.D. Tex. 2005).........................................................................13

*In re Enron Corp. Sec.*,
  No. H-01-3624, 2008 U.S. Dist. LEXIS 84656
  (S.D. Tex. Sept. 8, 2008) ......................................................................................4

*In re Heartland Payment Sys., Inc.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...............................................................16

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
  (C.D. Cal. June 10, 2005) .....................................................................................8

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006)..........................................................................13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
  (S.D.N.Y. Feb. 1, 2007)...................................................................................13, 15

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ...........................................................................10

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165 Section R(3), 2009 U.S. Dist. LEXIS 19210
  (E.D. La. Mar. 2, 2009)....................................................................................9, 12

**Page**

*In re OCA, Inc. Sec. & Derivative Litig.*,
   No. A 05-2165, 2008 WL 4681369
   (E.D. La. Oct. 17, 2008) ................................................................................................18

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...............................................................................5

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ...............................................................................17

*Lelsz v. Kavanagh*,
   783 F. Supp. 286 (N.D. Tex. 1991) .............................................................................14

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) .......................................................................................14

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) .........................................................................................4

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .....................................................................................................16

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) .......................................................................................5

*Purdie v. Ace Cash Express, Inc.*,
   No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547
   (N.D. Tex. Dec. 11, 2003) ..........................................................................................5, 9

*Quintanilla v. A&R Demolition, Inc.*,
   No. H-04-1965, 2008 U.S. Dist. LEXIS 37449
   (S.D. Tex. May 7, 2008) ..............................................................................................14

*Reed v. GMC*,
   703 F.2d 170 (5th Cir. 1983) ......................................................................................5, 6

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ..................................................................................7

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077
   (N.D. Tex. Nov. 8, 2005) .............................................................................................14

Page

*Streber v. Hunter*,
   221 F.3d 701 (5th Cir. 2000) ...................................................................................12

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................................................8

*Taft v. Ackermans*,
   No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
   (S.D.N.Y. Jan. 31, 2007)...........................................................................................15

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007).....................................................................7, 13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .....................................................................................6

*United States v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ...................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................16

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(7) ...............................................................................................................16

Federal Rules of Civil Procedure
   Rule 23(c)...................................................................................................................18
   Rule 23(c)(2)(B)....................................................................................................16, 17
   Rule 23(e).....................................................................................................1, 4, 6, 18
   Rule 23(e)(1)..............................................................................................................16

## SECONDARY AUTHORITIES

4 Herbert B. Newberg & Alba Conte,
   *Newberg on Class Actions* (4th ed. 2002)
   §11.45.........................................................................................................................9

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
   *Securities Class Action Settlements: 2016 Review and Analysis*
   (Cornerstone Research 2017)....................................................................................13

*Manual for Complex Litigation* (4th ed. 2004)
   §21.312.......................................................................................................................16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff National Shopmen Pension Fund ("Lead Plaintiff") and Class Representative David O'Connell (collectively, "Plaintiffs"), by and through their counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel"), respectfully move this Court for entry of orders: (1) granting final approval of the proposed settlement ("Settlement") of the above-captioned action (the "Action") as embodied in the Settlement Agreement dated June 14, 2017 (the "Stipulation") (Dkt. No. 160)[1]; (ii) approving the proposed plan for allocating the settlement proceeds to members of the Class (the "Plan of Allocation"); and (iii) approving the form and manner of notice provided to the Class.

## I.      INTRODUCTION

The proposed Settlement provides for the payment of ninety-seven million, five hundred thousand dollars ($97,500,000) in cash (the "Settlement Amount"), which amount has been fully funded, in exchange for the dismissal of all claims brought against the Defendants.[2]  The Settlement Amount plus interest accrued thereon (the "Settlement Fund") will be used for the payment of taxes, notice and administrative costs, attorneys' fees and expenses, and awards to Plaintiffs for their time incurred in representing the Class, to the extent awarded by the Court.  The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who submit valid Proof of Claim and Release forms ("Proof of Claim") to Gilardi & Co. LLC ("Gilardi"), the claims administrator for the Settlement, and whose claims for recovery have been allowed pursuant to the terms of the Stipulation ("Authorized Claimants").

As set forth in detail in the Declaration of Robert R. Henssler Jr. in Support of Final Approval of Settlement and Approval of Plan of Allocation, and an Award of Attorneys' Fees and

---

[1]    All capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation.

[2]    Defendants in the Action are J.C. Penney Company, Inc. ("JCPenney"), Myron E. Ullman, III, and Kenneth H. Hannah (collectively, "Defendants").

Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Henssler Decl."), filed herewith, the proposed Settlement is the product of four years of investigation, litigation and settlement negotiations.  Since this Action was commenced in October 2013, Plaintiffs and Lead Counsel have diligently and vigorously pursued their claims against the Defendants and were prepared to continue to trial had the Settlement not been reached.  To that end, Lead Counsel, *inter alia*: (i) successfully opposed seven movants for Lead Plaintiff; (ii) successfully opposed Defendants' Motion to Dismiss; (iii) conducted extensive discovery, including the review and analysis of over 850,000 pages of documents produced by Defendants and numerous non-parties; (iv) engaged in numerous meet and confers with Defendants and non-parties regarding the production of responsive documents and the scheduling of depositions; (v) took or defended the depositions of 20 fact witnesses; (vi) defended Lead Plaintiff's expert witness's deposition in connection with class certification; (vii) defended Lead Plaintiff's deposition pursuant to Rule 30(b)(6) in connection with class certification; (viii) responded to discovery propounded by Defendants, including document requests and interrogatories; (ix) obtained class certification over Defendants' vigorous opposition; (x) fully briefed Defendants' Notice of Appeal Pursuant to Rule 23(f); and (xi) retained multiple experts and consultants in connection with drafting the Complaint and to address several aspects of Plaintiffs' claims and Defendants' defenses in connection with class certification, summary judgment and trial.  Henssler Decl., ¶¶19-118.  Following these efforts, the Settlement was achieved only after two, hard-fought adversarial mediations with Judge Daniel Weinstein (Ret.), who has mediated numerous complex securities class actions.  *Id.*, ¶¶119-127. After the second mediation, Judge Weinstein issued his mediator's proposal of $97.5 million, which the parties accepted.  *Id.*, ¶123.

The proposed Settlement, as detailed herein, provides the Class with a substantial recovery – representing approximately 21% of Lead Plaintiff's expert's estimate of the Class' maximum

1305703_2

recoverable damages (and a much greater percentage of Defendants' estimate of damages, which was zero).  Henssler Decl., ¶¶158-161, 177.  In addition to recovering a significant portion of the Class' damages, the Settlement also avoids the hurdles Plaintiffs would have to clear with respect to overcoming Defendants' defenses to scienter and loss causation, and avoids the significant costs associated with proceeding to summary judgment and trial in this complex securities action.  The Settlement also avoids the real risk of obtaining less, or nothing at all, from Defendants after an unsuccessful trial and/or appeal.  In light of the foregoing, an extensive analysis of the evidence, the relative strengths and weaknesses of the claims and defenses asserted, the serious issues and disputes remaining among the parties, and the time and expense of trial, Plaintiffs and Lead Counsel have concluded that the Settlement is fair, reasonable and adequate and in the best interests of the Class. *Id.*, ¶¶162-164.  In addition, both Lead Plaintiff and Plaintiff David O'Connell have approved the proposed Settlement.  *See* Declaration of Timothy O'Connell, the Management Co-Chairman for the Lead Plaintiff, and the Declaration of David O'Connell, filed herewith.

Further, the overwhelmingly positive reaction of the Class is also compelling support for the Settlement.  Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated July 24, 2017 (the "Order for Notice and Hearing") (Dkt. No. 164), beginning on August 7, 2017, the Notices and Proofs of Claim (collectively, "Notice Package") were mailed to over 78,000 potential Class Members and nominees.  *See* paragraphs 4 through 11 to the accompanying Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Sylvester Decl."), filed herewith.  Further, on August 15, 2017, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *Business Wire*. *See* Sylvester Decl., ¶14.  On August 7, 2017, Gilardi also posted information regarding the Settlement on a dedicated website for the Settlement, www.jcpenneysecuritieslitigation.com.  *Id.*, ¶13.  As of the

- 3 -

filing of this Memorandum, no objections to the Settlement, or any part thereof, have been received.[3] The lack of objections thus far confirms Plaintiffs' decision to resolve the Action in exchange for the payment of the Settlement Amount and strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable and adequate.

For the reasons stated herein and in the accompanying Henssler Declaration, Plaintiffs respectfully request that the Court grant final approval to the Settlement.  Moreover, the Plan of Allocation will fairly and equitably distribute the Net Settlement Fund among the Authorized Claimants and also warrants the Court's approval.

## II.    BACKGROUND OF LITIGATION

In order to avoid repetition, the Court is respectfully referred to the Henssler Declaration, incorporated herein by reference, for a full discussion of the factual and procedural history of the Action, the background of the claims asserted, Plaintiffs' investigation and discovery, and the negotiations leading to the Settlement, all of which support final approval of the Settlement.

## III.    THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e)

### A.    The Law Favors and Encourages Settlements

Courts have long observed a general policy favoring the settlement of disputed claims.  *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "'overriding public interest in favor of settlement' that we have recognized '[p]articularly in class action suits'")[4]; *In re Enron Corp. Sec.*, No. H-01-3624, 2008 U.S. Dist. LEXIS 84656, at *40-*41 (S.D. Tex. Sept. 8, 2008). The Fifth Circuit has consistently held that settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'"  *Miller v. Republic Nat'l*

---

[3]    The deadline for objecting to the Settlement or requesting exclusion from the Class expires on November 8, 2017.  Plaintiffs will address any objections received in their reply papers due on November 22, 2017.

[4]    Citations are omitted and emphasis is added unless otherwise noted.

*Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).  Particularly when reviewing settlements of class actions, this Circuit has held that "there is an overriding public interest in favor of settlement," because such class action suits "have a well deserved reputation as being most complex."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003).  Because of this complexity, however, a court in reviewing a proposed class action settlement should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

In addition, courts have found a strong initial presumption of fairness attaches to a proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations.  *See United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  To a large degree, in determining the fairness and reasonableness of a proposed settlement, courts must rely on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried.").  Thus, if experienced counsel determine that a settlement is in the class' best interests, "the attorney's views must be accorded great weight."  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).  Here, the Settlement was reached by experienced, fully-informed counsel after extensive investigation and substantial formal discovery was conducted, and only after hard-fought settlement negotiations had occurred.  Thus, little doubt exists that this Settlement is entitled to the presumption of fairness dictated by Fifth Circuit law.

1305703_2

**B.     The Fifth Circuit's Standards Governing Class Action Settlements**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a class action may not be dismissed or compromised without the approval of the court.  The standard for reviewing a proposed settlement of a class action by courts in the Fifth Circuit, as in other circuits, is whether the proposed settlement is "fair, adequate, and reasonable."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012); *Cotton*, 559 F.2d at 1330.  In applying this standard, courts must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation."  *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

In determining whether a class action settlement is fair, reasonable and adequate, courts in the Fifth Circuit typically consider the following six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed*, 703 F.2d at 172; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  As demonstrated herein and in the Henssler Declaration, the application of the foregoing factors strongly supports a finding that the Settlement is fair, reasonable and adequate and warrants the Court's final approval.

**C.     An Analysis of the Fifth Circuit's *Reed* Factors Supports Approval of the Settlement**

**1.     The Proposed Settlement Is Free from Fraud and Collusion**

"[T]here is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms-length negotiations."  *Faircloth v. Certified Fin. Inc.*, No. 99-3097 SECTION "T" (3), 2001 U.S. Dist. LEXIS 6793, at *12 (E.D. La. May 16, 2001).  Moreover, if the terms of the proposed settlement are fair, courts generally will assume the negotiations were proper.

- 6 -

*See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 846 (E.D. La. 2007); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).  This Settlement clearly presents the indicia of arm's-length negotiations.

There is no question that the Settlement was entered into at arm's length and without fraud or collusion.  *See, e.g.*, *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 458 (W.D. Tex. 1999) (finding that there was no evidence of collusion, but rather, that "the settlement was the result of hard fought, arm's length negotiations").  As discussed in the Henssler Declaration, the parties engaged in hard-fought arm's-length negotiations, which included two, full-day formal mediations with Judge Weinstein, a very experienced mediator, followed by additional months of negotiating the terms of the Settlement and related documents.  Henssler Decl., ¶¶119-123; *see Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *7 (W.D. Tex. May 24, 2016) ("Moreover, the fact that the parties reached a settlement with the assistance of a qualified mediator followed by three months of negotiations and discovery demonstrates a likelihood that the settlement was the result of informed, good-faith, arm's length negotiations rather than fraud or collusion."), *report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016).  Importantly, even after the parties' second mediation session, the parties were unable to come to an agreement.  Henssler Decl., ¶122.  It was not until April 17, 2017, after further discussions, that the parties agreed to settle the Action for $97.5 million, with several non-monetary terms still to be negotiated.  *Id.*, ¶123.  At all times during the settlement negotiations, both sides zealously advocated their respective positions.  But for the Settlement – an agreement that Lead Counsel believes to be in the best interests of the Class – Lead Counsel was prepared to proceed to trial.  Therefore, the circumstances of the parties' negotiations clearly demonstrate that the Settlement was the result of hard-fought negotiations by well-informed counsel.

1305703_2

**2.  The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval of the Settlement**

Securities class actions are certainly complex, and the Settlement avoids the risks and burdens of potentially protracted litigation, avoids further costs of litigation and provides relief for the Class much sooner than further litigation would.  *See Ayers*, 358 F.3d at 369; *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'it is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'").

If the Settlement had not been reached, Lead Counsel would continue to litigate to trial and through any appeals, if necessary.  Henssler Decl., ¶¶146-148.  The costs associated with a trial, and the inevitable appeals, would be extremely high.  One can easily conclude that this Action, if taken to trial, would require additional years to conclude, necessitating many hours of the Court's time and resources.  *Id.*; *see Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651-52 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will result in no recovery), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  Moreover, it is probable that years would pass before the Class would receive a recovery, if any.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *28 (C.D. Cal. June 10, 2005) ("'[M]uch of the value of a settlement lies in the ability to make funds available promptly.'").  Accordingly, the expense and delay of a potential trial counsel in favor of the Settlement.

**3.  The Stage of the Proceedings and the Amount of Discovery Completed**

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid

further litigation."  4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §11.45, at 127 (4th ed. 2002); *see also In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165 Section R(3), 2009 U.S. Dist. LEXIS 19210, at *39-*40 (E.D. La. Mar. 2, 2009) ("The question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it.").  Further, the trial court "may legitimately presume that counsel's judgment [that it has the information necessary to evaluate a settlement] is reliable."  *Corrugated Container*, 643 F.2d at 211.

By the time the parties reached the Settlement, there can be no question that they had an advanced knowledge and understanding of the merits of the claims alleged in the Action and the defenses that would be asserted by Defendants to determine that the Settlement is fair, reasonable and adequate.  Lead Counsel obtained its knowledge and expanded its theories of liability, as it has through the course of the litigation, through: (i) successfully opposing seven movants for Lead Plaintiff; (ii) successfully opposing Defendants' Motion to Dismiss; (iii) conducting extensive discovery, including the review and analysis of over 850,000 pages of documents produced by Defendants and numerous non-parties; (iv) engaging in numerous meet and confers with Defendants and non-parties regarding the production of responsive documents and the scheduling of depositions; (v) taking or defending the depositions of 20 fact witnesses; (vi) defending Lead Plaintiff's expert witness's deposition in connection with class certification; (vii) defending Lead Plaintiff's deposition pursuant to Rule 30(b)(6) in connection with class certification; (viii) responding to discovery propounded by Defendants, including document requests and interrogatories; (ix) obtaining class certification over Defendants' aggressive opposition; (x) fully briefing Defendants' Notice of Appeal Pursuant to Rule 23(f); and (xi) retaining multiple experts and consultants to address several aspects of Plaintiffs' claims and Defendants' defenses.  Hensseler Decl., ¶¶19-118; *see Purdie*, 2003 U.S.

- 9 -

Dist. LEXIS 22547, at *19 ("[A]t the time settlement was achieved, the parties had engaged in extensive discovery.").

The knowledge and insight gained by Lead Counsel over the course of this Action provided it with sufficient information to evaluate the strengths and weaknesses of the Class' claims and Defendants' defenses, as well as the likelihood of obtaining a larger recovery from the Defendants had the Action proceeded to trial, and guided Lead Counsel in its recommendation of the Settlement to Plaintiffs.  Henssler Decl., ¶¶149-151.

### 4.    The Probability of Plaintiffs' Success on the Merits

While Lead Counsel believes that its claims were more than strong enough to prevail on the merits at trial, Plaintiffs recognize, nonetheless, that ultimate success against the Defendants at trial was not ensured.  *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is never guaranteed."); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'").  In determining the Settlement's fairness, Lead Counsel carefully considered and analyzed the potential risks to continued litigation, and in light of such risks, believes the Settlement is in the best interests of the Class.

### a.    Risks to Establishing Defendants' Liability

Although Plaintiffs believe that their case is meritorious and that the Class would ultimately prevail in establishing both liability and damages, they also understand that their case had potential weaknesses and that a number of factors made the outcome of a trial uncertain.  For instance, while Plaintiffs firmly believed that the documentary and testimonial evidence they intended to offer at trial fully supported their claims, there is no way of predicting which interpretations, inferences or testimony a jury would accept.  Further, Defendants have adamantly denied any culpability

- 10 -

throughout the litigation and were prepared to mount aggressive defenses that could potentially bar a class recovery.  If the jury sided with Defendants on their defenses, the Class could recover nothing.

For instance, Defendants were prepared to aggressively argue and present supporting evidence at trial that the alleged misstatements were not actionable.  Specifically, Defendants argued that one of the alleged misstatements was mere "puffery."  Henssler Decl., ¶153.  Defendants further argued that Defendant Ullman did not make the alleged statement at the September 25, 2013 Sterne Agee Conference attributed to him.  *Id.*  While Plaintiffs disputed these contentions, if Defendants succeeded in these arguments, many of the alleged misstatements may have been excluded from the case.  Should these arguments have succeeded, Plaintiffs would have been unable to prove that the Defendants made material false and misleading statements, a required element of Plaintiffs' claim.  *Id.*  The Settlement avoids the risk that these matters might have been viewed by the Court or jury as favorable to Defendants.

In addition, Defendants were also prepared to put forth evidence negating Plaintiffs' allegations of Defendants' scienter.  Specifically, Defendants argued that there was no evidence that they knew JCPenney was on the verge of bankruptcy when the alleged statements were made.  Henssler Decl., ¶154.  In addition, Defendants were prepared to present evidence that they lacked any motive to make the alleged misstatements and omissions.  *Id.*  Should Defendants' arguments have succeeded, Plaintiffs may have been unable to prove scienter.  All of these issues of proof as to liability posed substantial risks to recovery at trial.

Moreover, absent settlement, Plaintiffs and the Class also faced the risk that the fact finder might have viewed the liability issues in this case as overly technical and complex, thereby misunderstanding or dismissing the facts forming the basis of Plaintiffs' claims.  *Id.*  Had the Settlement not been reached, Plaintiffs would expect Defendants to vigorously assert each of these defenses, and others at trial and on appeal.

- 11 -

b. **Risks to Establishing Loss Causation and Damages**

Even if Plaintiffs succeeded in overcoming each and every defense the Defendants could raise with respect to liability, Plaintiffs also would be required to make certain showings concerning loss causation and damages.  Although Plaintiffs would present expert testimony on the issues of causation and damages, one cannot predict how a jury will weigh competing experts' testimony, and the crucial element of damages would likely be reduced at trial to a "battle of the experts."  Lead Counsel has sufficient experience to recognize that in such a battle there exists the substantial possibility that a trier of fact could be swayed by Defendants' experts, who would seek to minimize or eliminate the amount of Plaintiffs' losses by showing that any losses were attributable to factors other than the alleged misstatements and omissions.  Henssler Decl., ¶¶155-157; *see In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts,' . . . with no guarantee whom the jury would believe"); *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible; *see also OCA*, 2009 U.S. Dist. LEXIS 19210, at *47-*48 ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").  Therefore, the uncertainties concerning Plaintiffs' ability to prove liability, loss causation and/or win a verdict for damages in an amount greater than the Settlement support approval of the Settlement.

5. **The Range of Possible Recovery**

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if case goes to trial."  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  Moreover, "[t]he present settlement, achieved after years of active

litigation, must be balanced against the expenses and delay necessary to achieve a potentially larger result after trial and appeals." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006); *see also In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."). Plaintiffs and the Class faced a significant risk relating to loss causation and that the jury or Court might conclude there were no damages flowing from the alleged misrepresentations, and this risk has been avoided as a result of the Settlement.  Lead Counsel was aware that if Plaintiffs' theory of loss causation and damages were to fail before a jury, the Class' opportunity for recovery would be significantly diminished, if not eliminated.  Henssler Decl., ¶¶158-161.

Here, the Class will receive $97.5 million in exchange for the release of all claims against Defendants.  According to Lead Plaintiff's expert's damages estimate, the Settlement represents a recovery of between 21% and 100% of the Class' recoverable damages, which is much greater than the recoveries achieved in similar actions.[5]  *See, e.g.*, Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (Cornerstone Research 2017) (showing median percentage recovery in securities class actions in 2016 was 2.5%); Henssler Decl., ¶¶158-161.  Accordingly, this factor weighs in favor of approval of the Settlement.

### 6.    The Opinions of Lead Counsel, Plaintiffs and the Class

"Counsel are the Court's 'main source of information about the settlement' . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."  *Turner*, 472 F. Supp. 2d at 852.  "[W]here the parties have conducted an extensive investigation, engaged in

---

[5]    *See, e.g.*, *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding settlement resulting in approximately 9% of the maximum potential recovery to be "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *72 (N.D. Tex. Nov. 8, 2005); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) (holding that the opinions of experienced counsel "deserve appropriate deference from the Court").

Given that the Settlement provides a substantial recovery for the Class and given the risks in litigating this Action further, it is Lead Counsel's opinion that it is possible that a better result might not be obtained.  Henssler Decl., ¶162.  Second, the fact that Plaintiffs have also concluded that the proposed Settlement is a fair, reasonable, and adequate compromise of the claims against the Defendants, should be given considerable weight.  Third, the reaction of the Class to the Settlement has been overwhelmingly supportive.  In response to the notice procedures outlined above and in the Sylvester Declaration, no Class Members have objected to the Settlement.  *See Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *15 (S.D. Tex. May 7, 2008) (the reaction of the class to the settlement should be considered and held that here, where there was no objections, it demonstrated that the class was "overwhelmingly" in favor of settlement); *Maher v. Zapata Corp.*, 714 F.2d 436, 456 (5th Cir. 1983) ("Other factors favoring approval of the settlement here are the minimal nature of shareholder objection.").  This lack of significant dissent militates heavily in favor of the Court's final approval of the Settlement.

Therefore, Lead Counsel respectfully submits that the analyses set forth above and all of the circumstances of the Settlement demonstrate that the Settlement is fair, reasonable and adequate.

## IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord Chicken Antitrust*, 669 F.2d at 238.  The standard for approving a plan of allocation is the same as the standard for approving the settlement: the plan must be "fair, adequate, and reasonable" and must not be "'the product of collusion between the parties.'" *Chicken Antitrust*, 669 F.2d at 238.  This analysis is to be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Id*.  In addition, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *27 (S.D.N.Y. Jan. 31, 2007).  Lead Counsel prepared the Plan of Allocation after careful consideration and analysis, and without reference to any particular trading patterns of any of the Plaintiffs.  Henssler Decl., ¶¶128-142.  The Plan of Allocation is fully set forth in the Henssler Declaration.  *Id.*

The Plan of Allocation was also fully disclosed in the Notice and to date, not a single Class Member has filed an objection to the Plan of Allocation.  Overall, if the total claims for all Authorized Claimants exceed the Net Settlement Fund, each Authorized Claimant's share of the Net Settlement Fund will be determined based upon the percentage that his, her or its claim bears to the total of the claims for all Authorized Claimants.  Henssler Decl., ¶¶128-142.  *See Merrill Lynch*, 2007 U.S. Dist. LEXIS 9450, at *39 ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is reasonable."); *see also In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976, at *17 (C.D. Cal. Sept. 12, 2005) (approving plan of allocation where the allocation was pro rata across the class).

Lead Counsel believes that this method of allocation is fair, reasonable and adequate and that the Plan of Allocation should be approved.

## V.    THE NOTICE PROVIDED TO THE CLASS SATISFIES THE REQUIREMENTS OF BOTH DUE PROCESS AND RULE 23

Rule 23(c)(2) requires notice of a proposed class action settlement be provided to the class through "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1).  While "'[t]here are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements . . . the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1060 (S.D. Tex. 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).  "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" *Manual for Complex Litigation* §21.312, at 293 (4th ed. 2004).  To satisfy due process requirements, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

In accordance with the Court's Order for Notice and Hearing, Gilardi commenced the mailing of the Notice Package by First-Class Mail to potential Class Members, brokers, and nominees on August 7, 2017.  Sylvester Decl., ¶¶5-7.  As of October 23, 2017, over 78,000 copies of the Notice Package have been mailed.  *Id.*, ¶¶10-11.

The Notice mailed to Class Members provided the information required by Fed. R. Civ. P. 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-

4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class certified by the Court; (iii) a description of the basic terms of the Settlement, including the amount of the consideration and the releases to be given; (iv) the Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and expenses that will be sought; (vii) a description of Class Members' right to request exclusion from the Class or to object to the Settlement, the Plan of Allocation, and/or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members.  The Notice also provides recipients with information on how to submit a Proof of Claim in order to be potentially eligible to receive a distribution from the Net Settlement Fund.  *See* Sylvester Decl., Ex. A.

In addition, on August 15, 2017, Gilardi caused the Summary Notice to be published in *The Wall Street Journal* and disseminated over the *Business Wire*.  Sylvester Decl., ¶14.  Gilardi also posted the Notice and Proof of Claim, as well as other important documents, on a website dedicated to the Settlement.  *Id.*, ¶13.  This combination of individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and set forth on an Internet website, is "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process and Rule 23.  *See* Fed. R. Civ. P. 23(c)(2)(B); *In re 2014 Radioshack Erisa Litig.*, No. 4:14-cv-00959-O, 2016 WL 6561597, at *4 (N.D. Tex. Jan. 25, 2016) (approving notice "to be provided by first-class mail, postage prepaid, to the last known address of each Settlement Class member," publishing notice on a website, and causing notice to be published once in a news publication and on *PR Newswire*); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 WL 965693, at *5 (W.D. La. Mar. 3, 2015) (approving notice that included individual notice packages to potential class members and publishing a summary notice in *Investor's Business Daily* and *PR Newswire*); *Jenkins v. Trustmark*

- 17 -

*Nat'l Bank*, 300 F.R.D. 291, 302 (S.D. Miss. 2014) (approving use of postcards, publication notice in newspaper, and internet publication on a settlement website); *In re OCA, Inc. Sec. & Derivative Litig.*, No. A 05-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) ("The Court finds that the direct mailing of notice, along with publication of Summary Notice in print and on the web, is reasonably calculated to apprise class members of the settlement.").

Accordingly, the form and manner of notice provided to Class Members in this case complies with the Court's directives in the Order for Notice and Hearing and satisfies the requirements of due process and Fed. R. Civ. P. 23(c) and (e).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed final judgment approving the Settlement, and approving the notice program.  Plaintiffs also request that the Court enter an order approving the Plan of Allocation, which will govern distribution of the Net Settlement Fund.

DATED:  October 25, 2017                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONAH H. GOLDSTEIN
ROBERT R. HENSSLER JR.
DANIELLE S. MYERS
AUSTIN P. BRANE
HILLARY B. STAKEM
RACHEL A. COCALIS


                    s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

1305703_2

WARD, SMITH & HILL, PLLC
T. JOHN WARD, JR. (State Bar No. 00794818)
JACK WESLEY HILL (State Bar No. 24032294)
1127 Judson Road, Suite 220
Longview, TX  75601
Telephone:  903/757-6400
903/757-2323 (fax)

Liaison Counsel

- 19 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 25, 2017.

 s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bhenssler@rgrdlaw.com

**Mailing Information for a Case 6:13-cv-00736-RWS-KNM Marcus v. J.C. Penney Company, Inc. et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas Robert Ajamie**
  tajamie@ajamie.com,dmolloy@ajamie.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Benjamin D Bianco**
  bdb@msf-law.com

- **Thomas Emerson Bilek**
  tbilek@bileklaw.com,lmank@bileklaw.com

- **Austin P Brane**
  abrane@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **John Frederick Bufe**
  johnbufe@potterminton.com,vrt@potterminton.com

- **James Albert Caputo**
  jimc@rgrdlaw.com

- **Roger F Claxton**
  roger@claxtonlaw.com

- **Rachel A Cocalis**
  rcocalis@rgrdlaw.com,jillk@rgrdlaw.com

- **Jonah H Goldstein**
  jonahg@rgrdlaw.com,ldeem@rgrdlaw.com

- **Roger Bruce Greenberg**
  roger@smglawgroup.com,sam@smglawgroup.com

- **David J Harris , Jr**
  dharris@rgrdlaw.com

- **Claire Abernathy Henry**
  claire@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com,jillk@rgrdlaw.com,ldeem@rgrdlaw.com

- **Jack Wesley Hill**
  wh@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Michael Kevin Hurst**
  mhurst@lynnllp.com,tashworth@lynnllp.com,mslusser@lynnllp.com,jguild@lynnllp.com,hturgeon@lynnllp.com,jsandler@lynnllp.com,bcongdon@lynnllp.com

- **JC Penney Investor Group**
  kpuls@pulslaw.com

- **Daniel Ward Jackson**
  daniel@jacksonlaw-tx.com,beverly@jacksonlaw-tx.com,scott@jacksonlaw-tx.com

- **Michael E Jones**
  mikejones@potterminton.com,CMECF@potterminton.com,jovallery@potterminton.com

- **Elton Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Brian C Kerr**
  kerr@browerpiven.com

- **Rocky M Lawdermilk**
  rocky@rocklaws.com,brenda@rocklaws.com

- **Jamie Jean McKey**
  jmckey@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Jason Jacob Mendro**
  jmendro@gibsondunn.com,kohara@gibsondunn.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lissa M Percopo**
  lpercopo@gibsondunn.com,vlomax@gibsondunn.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Ira Michael Press**
  ipress@kmllp.com

- **William Kelly Puls**
  kpuls@pulslaw.com,msmith@pulslaw.com,kelly.puls@gmail.com

- **Darren Jay Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Hillary B Stakem**
  hstakem@rgrdlaw.com,ldeem@rgrdlaw.com

- **Michael W Stocker**
  mstocker@labaton.com,drogers@labaton.com,ravan@labaton.com,lmehringer@labaton.com,electroniccasefiling@labaton.com

- **Robert C Walters**
  rwalters@gibsondunn.com,kmoody@gibsondunn.com,cfitzgerald@gibsondunn.com

- **David Conrad Walton**
  davew@rgrdlaw.com,ldeem@rgrdlaw.com

- **Thomas John Ward , Jr**
  jw@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com,cfitzgerald@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)