UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALAN B. MARCUS, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 6:13-cv-00736-RWS-KNM (Consolidated) |
| Plaintiff, | § § | CLASS ACTION |
| vs. | § § | |
| J.C. PENNEY COMPANY, INC., et al., | § § | |
| Defendants. | § § § | |

**LEAD COUNSEL'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

1314423_2

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................1

II.  THE REQUESTED FEE SHOULD BE AWARDED BASED ON A
     PERCENTAGE OF THE RECOVERY OBTAINED ........................................5

     A.   The Requested Fee Is Reasonable..........................................................5

          1.   Lead Counsel Is Entitled to a Fee from the Common Fund It
               Created ...................................................................................5

          2.   Fees in Common Fund Cases Should Be Based on a Percentage of
               the Recovery ............................................................................5

               a.   The Supreme Court Has Repeatedly Held that Fees in
                    Common Fund Cases Are Properly Calculated Based on a
                    Percentage of the Recovery ...........................................5

               b.   A Majority of Courts of Appeal, Including the Fifth Circuit,
                    Have Approved the Percentage-of-the-Recovery Method..............6

          3.   The Requested Percentage Is Fair and Reasonable and Is
               Consistent with Fee Awards in Comparable Cases from This
               District....................................................................................7

          4.   The Requested Fee Is Consistent with Contingent Fee
               Arrangements Negotiated in Non-Class Litigation....................9

     B.   The Reasonableness of the Percentage Fee Requested Is Confirmed by an
          Analysis of the *Johnson* Factors ......................................................10

          1.   Time and Labor Required ......................................................10

          2.   Novelty and Difficulty of the Issues ......................................11

          3.   The Amount Involved and Results Obtained............................13

          4.   Skill Required: the Experience, Reputation, and Ability of the
               Attorneys...............................................................................13

          5.   Preclusion of Other Employment............................................14

          6.   Whether the Fee Is Fixed or Contingent .................................15

          7.   The Undesirability of the Case ..............................................16

          8.   The Requested Fee Is Supported by Awards in Similar Cases.................17

     C.   Class Member Reaction ......................................................................17

III. PLAINTIFFS' COUNSEL ARE ENTITLED TO BE PAID FOR THEIR
     REASONABLE LITIGATION EXPENSES ................................................17

- i -

**Page**

IV.     PLAINTIFFS ARE ENTITLED TO AN AWARD FOR REASONABLE COSTS
        AND EXPENSES ........................................................................................................18

V.      CONCLUSION.............................................................................................................19

1314423_2

# TABLE OF AUTHORITIES

Page

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) .................................................12

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...............................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)..............................................................5

*Blum v. Stenson*,
    465 U.S. 886 (1984)...........................................................6, 9

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...........................................................5, 6

*Brantley v. Surles*,
    804 F.2d 321 (5th Cir. 1986) ................................................10

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ................................................6

*Cent. R.R. & Banking Co. v. Pettus*,
    113 U.S. 116 (1885)..............................................................6

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. CIV. 6:12-1609, 2015 WL 965696
    (W.D. La. Mar. 3, 2015) .......................................................7

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978),
    *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) ........11

*Di Giacomo v. Plains All Am. Pipeline*,
    No. H-99-4137, 2001 U.S. Dist. LEXIS 25532
    (S.D. Tex. Dec. 19, 2001) ...............................................11, 17

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968).............................................5

*Faircloth v. Certified Fin. Inc.*,
    No. 99-3097, 2001 U.S. Dist. LEXIS 6793
    (E.D. La. May 16, 2001)......................................................18

*Finkel v. Docutel/Olivetta Corp.*,
    No. CA 8-84-0566-T, slip op. (N.D. Tex. Feb. 23, 1990) .......8

1314423_2

**Page**

*Florin v. Nationsbank, N.A.*,
  34 F.3d 560 (7th Cir. 1994) ...................................................................................6

*Garza v. Sporting Goods Props.*,
  No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009
  (W.D. Tex. Feb. 6, 1996) ...............................................................................8, 16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ...............................................................................15

*Goldstein v. MCI Worldcom*,
  340 F.3d 238 (5th Cir. 2003) ...............................................................................12

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .................................................................................6

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...............................................................................16

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
  (S.D.N.Y. Oct. 24, 2005) ....................................................................................19

*In re Aetna Inc. Sec. Litig.*,
  MDL No. 1219, 2001 U.S. Dist. LEXIS 68
  (E.D. Pa. Jan. 4, 2001) .......................................................................................14

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985),
  *aff'd in part and rev'd in part on other grounds*,
  818 F.2d 179 (2d Cir. 1987).................................................................................13

*In re Apollo Grp., Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008)........................................................................................16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
  (S.D. Fla. Apr. 25, 2011) .....................................................................................16

*In re Catfish Antitrust Litig.*,
  939 F. Supp. 493 (N.D. Miss. 1996).......................................................................7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...................................................................................2

- iv -

**Page**

*In re Charter Commc'ns, Inc.*,
  MDL No. 1506, 2005 U.S. Dist. LEXIS 14772
  (E.D. Mo. June 30, 2005) .........................................................................................17

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997) ............................................................................8

*In re Corrugated Container Antitrust Litigation*,
  MDL No. 310, 1983 WL 1872 (S.D. Tex. Sept. 1, 1983),
  *withdrawn & vacated as modified by settlement*,
  1983 WL 1755 (S.D. Tex. Dec. 16, 1983) .................................................................11

*In re Enron Corp. Sec.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................11, 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  No. MDL 1446, 2004 WL 1900294
  (S.D. Tex. Aug. 5, 2004) .........................................................................................17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .........................................................................................6

*In re Harrah's Entm't*,
  No. 95-3925, 1998 U.S. Dist. LEXIS 18774
  (E.D. La. Nov. 25, 1998) ....................................................................................10, 18

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................9, 11, 14

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..........................................................................9

*In re Lease Oil Antitrust Litig.*,
  186 F.R.D. 403 (S.D. Tex. 1999) ............................................................................5, 8

*In re Nortel Networks Corp. Sec. Litig.*,
  539 F.3d 129 (2d Cir. 2008) ......................................................................................2

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, 2009 U.S. Dist. LEXIS 19210
  (E.D. La. Mar. 2, 2009) ...........................................................................................12

*In re Prison Realty Sec. Litig.*,
  No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942
  (M.D. Tenn. Feb. 9, 2001) .........................................................................................9

**Page**

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
    MDL No. 888, 1994 U.S. Dist. LEXIS 6621
    (E.D. La. May 18, 1994) ...............................................................................8, 9, 15

*In re Ravisent Techs., Inc. Sec. Litig.*,
    No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680
    (E.D. Pa. Apr. 18, 2005) ........................................................................................17

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).....................................................................................17

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167
    (E.D. Tenn. May 17, 2013) ........................................................................................9

*In re Terra-Drill P'ships Sec. Litig.*,
    733 F. Supp. 1127 (S.D. Tex. 1990) ........................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07-MD-01827-SI, 2011 U.S. Dist. LEXIS 154287
    (N.D. Cal. Dec. 27, 2011) ..........................................................................................9

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire
    Litig.*, 56 F.3d 295 (1st Cir. 1995) ............................................................................6

*In re Tricor Direct Purchaser Antitrust Litig.*,
    No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251
    (D. Del. Apr. 23, 2009) ..............................................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011).......................................................................16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................................6

*In re Waste Mgmt., Inc.*,
    No. 99-2183, slip op. (S.D. Tex. May 10, 2002) ......................................................11

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)....................................................................................................5

*Jenkins v. Trustmark Nat'l Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) ..............................................................................8

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................................ *passim*

- vi -

**Page**

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ........................................................................6

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ......................................................................9

*Local 703 I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   No. 2:10-cv-02847-KOB, 2015 U.S. Dist. LEXIS 130542
   (N.D. Ala. Sept. 14, 2015) ..........................................................................8

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................17

*Miller v. Woodmoor Corp.*,
   No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
   (D. Colo. Sept. 28, 1978) ..........................................................................11

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ....................................................................................5

*Rawlings v. Prudential-Bache Props.*,
   9 F.3d 513 (6th Cir. 1993) ..........................................................................6

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ..............................................................17

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................15

*Schuh v. HCA Holdings, Inc.*,
   No. 3:11-cv-01033, slip op. (M.D. Tenn. Apr. 14, 2016) ...........................8

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077
   (N.D. Tex. Nov. 8, 2005) ...............................................................7, 14, 15

*Shaw v. Toshiba Am. Info Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................................1, 7, 8, 10

*Sims v. Shearson Lehman Bros., Inc.*,
   No. 3:90-CV-00252, slip op. (N.D. Tex. Nov. 29, 1993) ...........................8

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) .................................................................................5, 6

1314423_2

Page

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ........................................................................................6

*Trs. v. Greenough*,
    105 U.S. 527 (1882) .....................................................................................................6

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ........................................................................11

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...............................................................................6, 7, 10

*Varljen v. H.J. Meyers & Co.*,
    No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205
    (S.D.N.Y. Nov. 8, 2000) ............................................................................................19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ............................................................................................................4, 18
    §78u-4(a)(6) ...................................................................................................................7

**SECONDARY AUTHORITIES**

1 Alba Conte,
    *Attorney Fee Awards* (2d ed. 1993)
    §2.02 ...............................................................................................................................6

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
    *Securities Class Action Settlements: 2016 Review and Analysis*
    (Cornerstone Research 2017) ......................................................................................13

Report of the Third Circuit Task Force,
    *Court Awarded Attorney Fees*,
    108 F.R.D. 237 (Oct. 8, 1985) .....................................................................................6

## I.     INTRODUCTION

Court-appointed Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), having recovered $97.5 million for the Class, respectfully applies for an award of attorneys' fees in the amount of 30% of the Settlement Amount.[1]   Lead Counsel also seeks $868,760.57 in expenses that Plaintiffs' Counsel reasonably and necessarily incurred to prosecute this Action.[2]

Lead Counsel vigorously prosecuted this case for four years before reaching the proposed Settlement which, if approved, provides for $97.5 million in cash.  To Lead Counsel's knowledge, this proposed Settlement is the second highest securities class action settlement in the Eastern District of Texas.  Counsel's efforts to date have been without compensation of any kind and their fee has been wholly contingent upon the result achieved.  While the Notice sent to the Class states that "Lead Counsel will apply to the Court for attorneys' fees of up to one-third of the settlement proceeds," Lead Counsel has decreased its fee award request to 30%, which is well within the normal range of awards made in contingent fee matters of this type in this Circuit and throughout the country.  *E.g.*, *Shaw v. Toshiba Am. Info Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) (fees up to 33% routinely awarded) and additional cases cited below at 7-9.  An award equal to 30% of the Settlement Amount is appropriate here in light of the exceptional result counsel achieved and, significantly, has been approved by Lead Plaintiff the National Shopmen Pension Fund ("NSPF" or "Lead Plaintiff"), a sophisticated institutional investor the Court approved to serve as lead plaintiff.  *See* accompanying Declaration of Timothy O'Connell in Support of: (A) Plaintiffs' Motion for Final Approval of

---

[1]     Lead Counsel respectfully refers the Court to the accompanying Declaration of Robert R. Henssler Jr. in Support of Final Approval of Settlement and Approval of Plan of Allocation, and an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Henssler Decl.") for a detailed description of the case and the Settlement.  Unless otherwise noted, capitalized terms have the meanings set forth in the Settlement Agreement, dated June 14, 2017, and in the Henssler Decl.

[2]     "Plaintiffs' Counsel" refers to Robbins Geller and Ward, Smith & Hill, PLLC.

Settlement; (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses; and (C) National Shopmen Pension Fund's Request for an Award of Reasonable Costs, ¶6 ("NSPF Decl."); *see In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (an "agreed-upon fee will offer the best indication of a market rate"); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001) (presumption of reasonableness accorded to fee requests submitted pursuant to agreement between properly-selected lead plaintiff and properly-selected lead counsel).

As detailed in the accompanying Henssler Declaration, Lead Counsel has vigorously pursued this Action for four years after filing the first complaint in October 2013, and committed the extensive human and financial resources necessary to prosecute this complex action to a successful outcome. Not only did the breadth of this Action present challenges, but from the outset Lead Counsel faced complex factual and legal questions as well as substantial risks establishing liability, defeating affirmative defenses, proving damages, and establishing that a class action was appropriate for litigation purposes.

For instance, Plaintiffs had to prove that Defendants' statements about J.C. Penney Company, Inc.'s ("JCPenney" or the "Company") liquidity, need for additional capital, sufficiency of inventory and supplier relationships were: (i) false and misleading; (ii) material; and (iii) made with the requisite scienter. Defendants strenuously argued that their statements were true and complete when made and that even if false would not have been material. Defendants further argued that they believed in good faith in the truth of their statements and lacked any motive to misstate the Company's capital needs.

Moreover, even if Plaintiffs were able to overcome these liability hurdles, proving loss causation and damages was equally risky. Indeed, loss causation was disputed at every stage of this litigation, as Defendants took the position that the market was already aware of the Company's planned equity raise prior to the September 24, 2013 Goldman Sachs' report. Each of Defendants'

1314423_2

arguments was buttressed by expert opinion. Lead Counsel nevertheless undertook this representation on a contingency basis and advanced over $800,000 in litigation expenses, with no guarantee of success or recovery. Indeed, the fact that the Fifth Circuit granted Defendants' motion for 23(f) review *after* the case was settled only serves to underscore the risk to Plaintiffs and the Class at both the trial court and appellate level.

Lead Counsel faced these risks head-on by devoting the necessary resources to successfully litigate this Action, which was extremely hard-fought and arduous, as the parties battled up through pleading motions, class certification and fact discovery before reaching an appropriate resolution. Among many other things, Lead Counsel: (i) conducted a thorough investigation; (ii) filed a detailed Consolidated Complaint; (iii) overcame Defendants' Motion to Dismiss; (iv) conducted substantial discovery, including serving over 70 non-party subpoenas, obtained and reviewed and analyzed more than 850,000 pages of documents, took or defended the depositions of 20 fact witnesses; (v) engaged and worked with five experts on issues such as falsity, materiality, causation, and damages; (vi) obtained class certification; and (vii) successfully negotiated a very favorable settlement. *See, e.g.*, Henssler Decl., ¶¶19-118.

The result of Lead Counsel's hard work and perseverance is an all cash settlement of $97.5 million, which since August 8, 2017, has been earning interest for the benefit of the Class. Lead Counsel was able to achieve this result only by vigorously litigating this case.

It is against this backdrop that the undersigned Court-appointed Lead Counsel – with the express endorsement of Lead Plaintiff NSPF and Class Representative David O'Connell[3] (collectively, "Plaintiffs") – respectfully submits this memorandum in support of an award of attorneys' fees equal to 30% of the Settlement Amount. Importantly, the relevant factors articulated

---

[3] *See* Declaration of David O'Connell in Support of: (A) Plaintiffs' Motion for Final Approval of Settlement; (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses; and (C) His Request for an Award of Reasonable Costs ("O'Connell Decl."), filed herewith.

1314423_2

in the Fifth Circuit's *Johnson* decision[4] – the substantial recovery obtained for the Class, the complexity and amount of work involved, the skill and expertise required, and the significant risks that counsel undertook, among other factors – strongly support the requested award.  Federal courts in this District, Circuit and throughout the nation have awarded comparable (and higher) percentage fees in other similarly complex class litigation.  Moreover, following the dissemination of over 78,000 Notices to potential Class Members (which indicated Lead Counsel would seek a higher amount of attorneys' fees), not a single objection to the fee request has been received to date.[5]

Two nationally recognized attorneys' fee awards experts submitted declarations concluding that the fee award requested is reasonable and supported by the *Johnson* factors.  Justice Craig T. Enoch (Ret.) analyzed the requested fee using the *Johnson* factors and concluded that "the 30% fee requested by Lead Counsel in this matter is reasonable, and I believe such a fee would be proper for the court to approve."[6]  Likewise, Professor Geoffrey P. Miller examined the requested fee and concluded that "the requested attorneys' fee is supported by the *Johnson* factors and consistent with awards in similar cases."[7]

For these and other reasons set forth below, Lead Counsel respectfully requests that the Court approve its application for attorneys' fees, litigation expenses and Plaintiffs' time.[8]

---

[4]   *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[5]   The deadline for the filing of any objection is November 8, 2017.  If any objections are filed, Plaintiffs will address them in their reply to be filed on November 22, 2017.

[6]   *See* Declaration of Craig T. Enoch, Justice (Ret.), in Support of Proposed Award of Class Counsel's Attorneys' Fees ("Enoch Decl."), at 14, filed herewith.

[7]   *See* Declaration of Professor Geoffrey P. Miller ("Miller Decl."), at 26, filed herewith.

[8]   Lead Plaintiff NSPF and plaintiff David O'Connell seek a combined award of $11,700.00, pursuant to 15 U.S.C. §78u-4(a)(4), for time spent representing the Class.

1314423_2

## II.   THE REQUESTED FEE SHOULD BE AWARDED BASED ON A PERCENTAGE OF THE RECOVERY OBTAINED

### A.   The Requested Fee Is Reasonable

#### 1.   Lead Counsel Is Entitled to a Fee from the Common Fund It Created

Courts have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 443 (S.D. Tex. 1999) (same).  In addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.  *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

#### 2.   Fees in Common Fund Cases Should Be Based on a Percentage of the Recovery

As shown below, the United States Supreme Court, numerous courts of appeal, and the overwhelming weight of authority from districts within the Fifth Circuit, all support the view that fees in common fund cases should be awarded based on a percentage of the recovery.

##### a.   The Supreme Court Has Repeatedly Held that Fees in Common Fund Cases Are Properly Calculated Based on a Percentage of the Recovery

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a

percentage-of-the-fund basis.  *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at 166-67; *Boeing*, 444 U.S. at 478-79.  Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to make it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").[9]

### b.     A Majority of Courts of Appeal, Including the Fifth Circuit, Have Approved the Percentage-of-the-Recovery Method

Since the issuance of the *Task Force Report* in 1985, virtually every circuit court has joined the United States Supreme Court in approving use of the percentage-of-the-fund method in common fund cases.[10]  In *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012), the Fifth Circuit "endorse[d] the district courts' continued use of the percentage method cross-checked with the *Johnson* factors."  *Id.* at 644.  The Fifth Circuit in *Dell* (*id.* at 643) and many other courts have recognized that the percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, thereby benefiting both litigants and the judicial system.  Conversely, numerous courts have criticized the lodestar method for encouraging plaintiffs' attorneys to needlessly drag out complex

---

[9]  *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (hereinafter the "*Task Force Report*") (fee awards in common fund cases have historically been computed based on a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same).

[10]  *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of discretion); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("After reviewing *Blum*, the [Third Circuit] Task Force Report, and . . . cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (percentage of the fund recovered is the **only** permissible measure of awarding fees in common fund cases).

1314423_2

litigations for years in order to run up "lodestar" hours, even when their clients' and the class' interests would be much better served by an earlier, more efficient, settlement of a case based on arm's-length negotiations conducted by experienced counsel.

Finally, the percentage method of calculating fees is particularly appropriate in the PSLRA context. The PSLRA explicitly authorizes the percentage method in calculating fees in securities actions. 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *see Dell*, 669 F.3d at 643 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

Moreover, numerous district courts within the Fifth Circuit have applied the percentage-of-recovery method in awarding fees. For example, the published opinions in *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996), and *Shaw*, 91 F. Supp. 2d at 966-67, list numerous class action cases as examples. Indeed, the court in *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *84 (N.D. Tex. Nov. 8, 2005), recognized "there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." In addition, as discussed below, there are numerous additional district courts in this Circuit that have used the percentage method that are not cited in *Catfish* or *Shaw*.

Thus, the Court should award Lead Counsel a reasonable percentage of the Settlement Amount. Under the circumstances present here, 30% is a reasonable percentage.

### 3.    The Requested Percentage Is Fair and Reasonable and Is Consistent with Fee Awards in Comparable Cases from This District

A 30% fee award – 10% lower than the 33-1/3% provided in the Notice – is reasonable and within the range of percentage fees awarded in the Fifth Circuit in complex cases. *See City of*

*Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (recognizing "a 33 1/3% contingency is common in this geographic area"); *Shaw*, 91 F. Supp. 2d at 972 (fees up to 33% routinely awarded); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) ("'it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third'") (citation omitted); *Sims v. Shearson Lehman Bros., Inc.*, No. 3:90-CV-00252, slip op. (N.D. Tex. Nov. 29, 1993) (33-1/3% fee award on $30 million settlement fund); *Finkel v. Docutel/Olivetta Corp.*, No. CA 8-84-0566-T, slip op. (N.D. Tex. Feb. 23, 1990) (awarding fees amounting to 33% of settlement fund).

Indeed, courts in this Circuit have repeatedly awarded more than 30% of the settlement amount in common fund cases. *See Lease Oil*, 186 F.R.D. at 445 ("Class counsel and experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (awarding 36% of the common fund as fee and noting: "Usually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented."); *Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *112 (W.D. Tex. Feb. 6, 1996) (noting, "[t]his Court concurs that 33 1/3% to 40% is the customary contingency fee range" and awarding a 39.7% fee); *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL No. 888, 1994 U.S. Dist. LEXIS 6621, at *15-*16 (E.D. La. May 18, 1994) ("*Prudential II*") ("Customary fees in common fund cases appear to range from 20% to 40%.").

Courts in other circuits likewise regularly award fees of over 30% in securities class actions where appropriate. *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, slip op. (M.D. Tenn. Apr. 14, 2016) (awarding fee of 30% on $215 million settlement fund); *Local 703 I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-cv-02847-KOB, 2015 U.S. Dist.

LEXIS 130542 (N.D. Ala. Sept. 14, 2015) (awarding 30% fee on $90 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33-1/3% fee on $510 million settlement fund); *In re Prison Realty Sec. Litig.*, No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) (Campbell, J.) (awarding 30% fee on $104 million settlement fund); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (awarding 30% fee on $111 million settlement fund).  Courts regularly award fees of 30% or more in complex civil actions as well.  *See, e.g.*, *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) (Greer, J.) (awarding 33-1/3% fee on $158.6 million settlement fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-MD-01827-SI, 2011 U.S. Dist. LEXIS 154287 (N.D. Cal. Dec. 27, 2011) (awarding 30% fee on $405 million settlement fund); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009) (awarding 33-1/3% fee on $250 million settlement fund).

### 4.     The Requested Fee Is Consistent with Contingent Fee Arrangements Negotiated in Non-Class Litigation

The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements.  *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).  In non-class litigation, 33% or more contingency fees are typical.  As Justices Brennan and Marshall observed in their concurring opinion in *Blum*: "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery."  *Blum*, 465 U.S. at 903; *see also Prudential II*, 1994 U.S. Dist. LEXIS 6621, at *4 ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

**B.**     **The Reasonableness of the Percentage Fee Requested Is Confirmed by an Analysis of the *Johnson* Factors**

Application of the *Johnson* factors here also confirms that the requested fee is fair and reasonable.  *See Dell*, 669 F.2d at 644 (application of the percentage-of-recovery method is "informed by the *Johnson* considerations"); *In re Harrah's Entm't*, No. 95-3925, 1998 U.S. Dist. LEXIS 18774, at \*20-\*21 (E.D. La. Nov. 25, 1998); *see also Shaw*, 91 F. Supp. 2d at 967-68.  An analysis of the *Johnson* factors confirms that a fee award of 30% is reasonable and appropriate in this case.  *See* Enoch Decl. at 14; Miller Decl. at 26.  The *Johnson* factors are as follows: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.  *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).[11]

**1.**     **Time and Labor Required**

Lead Counsel committed considerable resources and time researching, investigating, and prosecuting this Action.  In considering the time and labor expended, several factors should be considered.  First, Lead Counsel conducted a diligent investigation to build a framework for a successful securities fraud case.  Second, the legal obstacles to recovery were significant, and a recovery was obtained only because of the skill and tenacity of Lead Counsel.  Third, and perhaps

---

[11]    The following factors do not pertain to this case: time limitations imposed by the client, and the nature and length of the professional relationship with the client.  Thus, Lead Counsel will not analyze these factors.

- 10 -

most importantly as the history of the litigation makes clear, the services provided by Lead Counsel were successful, resulting in an exceptional recovery for the Class.  Indeed, Defendants have fiercely fought this case for four years, and at virtually every stage of the Action, Lead Counsel successfully responded to these defense strategies and tactics, while aggressively building Plaintiffs' case on the merits.  Henssler Decl., ¶¶170-171.  In these circumstances, the requested fee is warranted.[12]

### 2.   Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Lead Counsel's request for attorneys' fees. From the outset, this post-PSLRA action involved novel and difficult issues that required the skill and experience of Lead Counsel.  There was no assurance whatever that the litigation would survive Defendants' attacks.  Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194.[13]  At the

---

[12]   In any event, an analysis of Plaintiffs' Counsel's lodestar confirms the reasonableness of the requested fee.  Plaintiffs' Counsel and their para-professionals have expended over 18,500 hours in the investigation, prosecution, and settlement of this Action with a resulting lodestar of approximately $9.2 million.  Henssler Decl., ¶165.  The information with respect to the total lodestar is contained in the accompanying submissions by Plaintiffs' Counsel's individual firms.  *See* accompanying Declaration of Robert R. Henssler Jr. Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Declaration of Wesley Hill Filed on Behalf of Ward, Smith & Hill, PLLC in Support of Application for Award of Attorneys' Fees and Expenses.  On a lodestar basis, the requested fee award represents a lodestar multiple of approximately 3.2, which is well within the range of lodestar multipliers typically applied by courts in the Fifth Circuit.  *See In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 751 & n.20 (S.D. Tex. 2008) (awarding percentage fee equal to a multiple of 5.2 times lodestar, and stating that "'"[m]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied"'") (citations omitted); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *32 (S.D. Tex. Dec. 19, 2001) (approving multiplier of 5.3, and noting although "courts typically apply multipliers ranging from one to four . . . [t]he multiplier can, of course, far exceed that number"); *In re Waste Mgmt., Inc.*, No. 99-2183, slip op. at 64 (S.D. Tex. May 10, 2002) (multiplier of 5.3 awarded); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) (holding "a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case"); *In re Corrugated Container Antitrust Litigation*, MDL No. 310, 1983 WL 1872, at *27-*28 (S.D. Tex. Sept. 1, 1983), *withdrawn & vacated as modified by settlement*, 1983 WL 1755 (S.D. Tex. Dec. 16, 1983) (awarding multiplier of up to 4.0).  *See* Enoch Decl. at 14; Miller Decl., ¶43.

[13]   Even before the passage of the PSLRA, courts had noted that a securities case "by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980); *see also Miller v. Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-*12 (D. Colo. Sept. 28, 1978) ("The benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty

time this Action was commenced, the Fifth Circuit decisions on causation, pleading, and proof at the class certification stage made PSLRA claims particularly difficult in this Circuit.  *See, e.g.*, *Goldstein v. MCI Worldcom*, 340 F.3d 238, 259 (5th Cir. 2003); *Enron*, 586 F. Supp. 2d at 788.  As the Fifth Circuit has recognized, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, A.J., sitting by designation); *see also In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *67 (E.D. La. Mar. 2, 2009) ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult.").  Indeed, as Justice Enoch notes, "[i]ssues surrounding securities fraud litigation under the PSLRA are complex and difficult to prosecute – particularly in the Fifth Circuit."  Enoch Decl. at 11.  Lead Counsel recognized this risk when undertaking representation.

This Action also involved particularly complex issues of law and fact, including briefing complicated issues of law regarding the adequacy of the pleadings and class certification, difficult and time consuming factual discovery (including the review and analysis of over 850,000 pages of documents and party and non-party depositions), and expensive work with expert witnesses. Henssler Decl., ¶¶19-118.  Moreover, here, the Fifth Circuit granted Defendants' motion for 23(f) review of the class certification order after the parties reached a settlement.  As Justice Enoch highlighted, "Fifth Circuit review would have been time consuming and posed high risk to any class recovery."  Enoch Decl. at 12.

---

of the case. . . .  Despite years of litigation, the area of securities law has gained little predictability. There are few 'routine' or 'simple' securities actions.").

1314423_2

### 3.     The Amount Involved and Results Obtained

The benefit conferred to the class and the result achieved is an important factor in setting a fair fee.  *See, e.g.*, *In re Terra-Drill P'ships Sec. Litig.*, 733 F. Supp. 1127, 1128 (S.D. Tex. 1990) (noting that the *Johnson* factors emphasize "the results obtained").  The result obtained here – an all cash $97.5 million settlement – is exceptional both on an absolute basis and when compared to other securities class action settlements.  In fact, the Settlement represents between 21% and 100% of the Class' recoverable damages.  *See* Henssler Decl., ¶¶158-161.  This is substantially greater than the average recovery in securities fraud cases.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (Cornerstone Research 2017) (in 2016, the median settlement amount, as a percentage of estimated damages, was 2.5%).  *See* Miller Decl. at 25-26 ("It is my opinion that the settlement amount here represents a remarkable recovery."); Enoch Decl. at 13 ("the result obtained strongly supports the requested fee").  Indeed, the Settlement, to counsel's knowledge, is the second highest securities class action settlement in this District.

Moreover, there is certainly no guarantee that such a result will ultimately be matched at the conclusion of lengthy and costly litigation several years down the road.  When this recovery is viewed against the difficulties Plaintiffs would face proving liability and damages, and carrying their burdens at trial, this Court should find that it would have been very difficult for Plaintiffs to obtain a greater recovery.  *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly."), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987).

### 4.     Skill Required: the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys also support the requested fee award.  Here, Lead Counsel performed its work diligently, skillfully and achieved a substantial recovery for the Class.  Lead Counsel has many years

of experience in complex federal civil litigation, particularly the litigation of securities and other class actions, and has achieved significant acclaim for its work, as set forth in the exhibit to Lead Counsel's accompanying fee and expense submission.

Lead Counsel's experience in the field also allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to formal discovery, identify the complex issues involved in this case, and formulate strategies to successfully prosecute it effectively. *See Schwartz.*, 2005 U.S. Dist. LEXIS 27077, at *99 ("Plaintiffs' counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case."). But for Lead Counsel's efforts, the Class' claims might have been dismissed at the pleading stage. Instead, Lead Counsel was able to secure a settlement of $97.5 million, representing a very good result for the Class.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *See, e.g.*, *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *45-*46 (E.D. Pa. Jan. 4, 2001); *Ikon*, 194 F.R.D. at 195. The defense attorneys in this case are aggressive, experienced, and highly skilled. Gibson, Dunn & Crutcher LLP, one of the finest defense firms in the country, represents Defendants. *See Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *100 (finding that skill factor supported the fee award because, *inter alia*, opposing counsel were "highly experienced lawyers from prominent and well-respected law firms"). The ability of Lead Counsel to develop its case and negotiate this Settlement in the face of this formidable opposition confirms the quality of Plaintiffs' representation.

### 5.    Preclusion of Other Employment

Plaintiffs' Counsel spent approximately 18,540 hours prosecuting this Action on behalf of the Class. Those hours were time that Plaintiffs' Counsel could have devoted to other matters. Accordingly, to the extent applicable, this factor supports the requested percentage.

### 6.      Whether the Fee Is Fixed or Contingent

Lead Counsel undertook this Action on a contingent fee basis, assuming a substantial risk that the Action would yield no recovery and leave counsel uncompensated.  Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  For example, in awarding counsel's attorneys' fees in *Prudential II*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation.  Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*Prudential II*, 1994 U.S. Dist. LEXIS 6621, at *16.[14]

Indeed, the risk of no recovery in complex cases of this type is very real.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  Subsequent to the passage of the PSLRA, many cases in this Circuit have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's pleading standards.  Enoch Decl. at 9-10 (noting that since passage of the PSLRA in 1995, 68% of the cases heard by the Fifth Circuit were "essentially dismissed").  Lead Counsel was faced with this very real possibility in this Action.  Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on judgment notwithstanding the verdict.[15]

---

[14]    *See Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *102-*103 (recognizing "the risk of no recovery in complex cases of this type is very real" and that "[c]ourts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees").

[15]    *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (major portion of plaintiffs' verdict reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*,

Lead Counsel has received no compensation during the course of this Action and has incurred significant expenses in prosecuting this Action for the benefit of the Class.  Any fee or expense award has always been at risk and completely contingent on the result achieved.  Thus, the contingent nature of the Action supports the requested percentage.

### 7.    The Undesirability of the Case

The tenth *Johnson* factor, undesirability of the case, also supports the fee requested here. Securities cases have generally been recognized as "undesirable" due to the financial burden on counsel and the time demands of litigating class actions of this size and complexity.  *Garza*, 1996 U.S. Dist. LEXIS 2009, at *118 (factors such as financial burden on counsel and time demands of litigating class action of this size and complexity have caused cases to be considered "undesirable"). This was never an easy case and the risk of no recovery was always high.  When counsel undertook representation of Plaintiffs and the Class in this Action, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  Indeed, the fact that the Fifth Circuit granted Defendants' motion for 23(f) review after the case was settled emphasizes that significant risk.  The risks Lead Counsel faced must be assessed as they existed at the time counsel undertook the litigation and not in light of the settlement ultimately achieved.  *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (the riskiness of a case must be judged *ex ante* not *ex post*).  Thus, the "undesirability" of the Action supports the requested percentage.

---

77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (granting defendants' post-trial motion for judgment as a matter of law following jury verdict for plaintiff); *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (same).

- 16

1314423_2

### 8. The Requested Fee Is Supported by Awards in Similar Cases

As demonstrated above, a 30% fee is consistent with fee percentages that have been repeatedly awarded by courts in this Circuit as well as numerous other similar cases throughout the country.

### C. Class Member Reaction

Although not formally noted in the case law for this jurisdiction as a factor for the Court's consideration in determining an award of attorneys' fees, courts throughout the country have found that relatively few or no objections from the class to the attorneys' fees requested supports the reasonableness of the requested attorneys' fees.[16]  To date, there have been no objections to Lead Counsel's fee request,[17] and even a small number of objections by class members is important evidence that the requested fee is fair.  *See, e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request).

## III. PLAINTIFFS' COUNSEL ARE ENTITLED TO BE PAID FOR THEIR REASONABLE LITIGATION EXPENSES

Attorneys who create a common fund for the benefit of a class are entitled to payment from the fund of reasonable litigation expenses and charges.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL 1446, 2004 WL 1900294, at *3 (S.D. Tex. Aug. 5, 2004).  *See Di Giacomo*, 2001 U.S. Dist. LEXIS 25532, at *37 (awarding litigation expenses in addition to 30% attorneys' fee, noting that "[n]o party has objected to the amount of the expenses" and that such

---

[16]   *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *37 (E.D. Pa. Apr. 18, 2005) (absence of objections supports award of requested fee); *In re Charter Commc'ns, Inc.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *59 (E.D. Mo. June 30, 2005) (small number of objections from institutional investors supported approval of fee request); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court.").

[17]   As set forth in the Notice, the deadline to submit objections is November 8, 2017.

expenses were reasonable); *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 U.S. Dist. LEXIS 6793, at *36 (E.D. La. May 16, 2001) (awarding costs in addition to the percentage fee); *Harrah's*, 1998 U.S. Dist. LEXIS 18774, at *9 (same).

Plaintiffs' Counsel are seeking payment of their reasonable expenses and charges in an aggregate amount of $868,760.57 for prosecuting this Action on behalf of the Class.  As itemized in the fee and expense submissions of counsel, these expenses were necessary for the investigation and prosecution of the case.  The expenses incurred by Plaintiffs' Counsel include in-house and private investigators, in-house damage consultants, expert fees, mediation fees, travel, photocopying of documents, on-line research, messenger service, postage, express mail and next day delivery, and other incidental expenses directly related to the prosecution of this Action.  Accordingly, Plaintiffs' Counsel respectfully submit that all of these expenses were reasonable and necessarily incurred in the prosecution of the Action and therefore should be paid from the Settlement Fund.

## IV.   PLAINTIFFS ARE ENTITLED TO AN AWARD FOR REASONABLE COSTS AND EXPENSES

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  *See* 15 U.S.C. §78u-4(a)(4).  Lead Plaintiff NSPF requests payment of $10,200.00, and Plaintiff David O'Connell requests payment of $1,500.00.  As set forth in the accompanying NSPF Declaration, Lead Plaintiff participated in this Action by reviewing pleadings and motions filed, complying with Defendants' discovery requests, consulting with counsel, being deposed, monitoring the status of settlement negotiations, and approving the Settlement.  *See* NSPF Decl., ¶¶3-4.  Similarly, as explained in David O'Connell's declaration, he participated in this Action by reviewing pleadings and briefs, regularly communicating with Lead Counsel, and providing relevant information during the discovery process.  *See* O'Connell Decl., ¶2.

1314423_2

Reimbursement of such expenses should be allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205, at *14 n.2 (S.D.N.Y. Nov. 8, 2000).  Moreover, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 24, 2005).  Both Plaintiffs were actively involved in the Action and are deserving of the requested amounts.

## V.   CONCLUSION

For the foregoing reasons and upon the entire record, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Amount and expenses in the amount of $868,760.57, plus accrued interest at the same rate as earned by the Settlement Fund.  Lead Counsel also respectfully requests that the Court award $10,200.00 to NSPF for its time in representing the Class, and $1,500.00 to David O'Connell for his time in representing the Class.

DATED:  October 25, 2017                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            JONAH H. GOLDSTEIN
                                            ROBERT R. HENSSLER JR.
                                            DANIELLE S. MYERS
                                            AUSTIN P. BRANE
                                            HILLARY B. STAKEM
                                            RACHEL A. COCALIS


                                                   s/ Robert R. Henssler Jr.
                                            _____
                                            ROBERT R. HENSSLER JR.

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101-8498
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

Lead Counsel for Plaintiffs

WARD, SMITH & HILL, PLLC
T. JOHN WARD, JR. (State Bar No. 00794818)
JACK WESLEY HILL (State Bar No. 24032294)
1127 Judson Road, Suite 220
Longview, TX  75601
Telephone:  903/757-6400
903/757-2323 (fax)

Liaison Counsel

- 20

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 25, 2017.

s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bhenssler@rgrdlaw.com

## Mailing Information for a Case 6:13-cv-00736-RWS-KNM Marcus v. J.C. Penney Company, Inc. et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Thomas Robert Ajamie**
  tajamie@ajamie.com,dmolloy@ajamie.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Benjamin D Bianco**
  bdb@msf-law.com

- **Thomas Emerson Bilek**
  tbilek@bileklaw.com,lmank@bileklaw.com

- **Austin P Brane**
  abrane@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **John Frederick Bufe**
  johnbufe@potterminton.com,vrt@potterminton.com

- **James Albert Caputo**
  jimc@rgrdlaw.com

- **Roger F Claxton**
  roger@claxtonlaw.com

- **Rachel A Cocalis**
  rcocalis@rgrdlaw.com,jillk@rgrdlaw.com

- **Jonah H Goldstein**
  jonahg@rgrdlaw.com,ldeem@rgrdlaw.com

- **Roger Bruce Greenberg**
  roger@smglawgroup.com,sam@smglawgroup.com

- **David J Harris , Jr**
  dharris@rgrdlaw.com

- **Claire Abernathy Henry**
  claire@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com,jillk@rgrdlaw.com,ldeem@rgrdlaw.com

- **Jack Wesley Hill**
  wh@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Michael Kevin Hurst**
  mhurst@lynnllp.com,tashworth@lynnllp.com,mslusser@lynnllp.com,jguild@lynnllp.com,hturgeon@lynnllp.com,jsandler@lynnllp.com,bcongdon@lynnllp.com

- **JC Penney Investor Group**
  kpuls@pulslaw.com

- **Daniel Ward Jackson**
  daniel@jacksonlaw-tx.com,beverly@jacksonlaw-tx.com,scott@jacksonlaw-tx.com

- **Michael E Jones**
  mikejones@potterminton.com,CMECF@potterminton.com,jovallery@potterminton.com

- **Elton Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Brian C Kerr**
  kerr@browerpiven.com

- **Rocky M Lawdermilk**
  rocky@rocklaws.com,brenda@rocklaws.com

- **Jamie Jean McKey**
  jmckey@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Jason Jacob Mendro**
  jmendro@gibsondunn.com,kohara@gibsondunn.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lissa M Percopo**
  lpercopo@gibsondunn.com,vlomax@gibsondunn.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Ira Michael Press**
  ipress@kmllp.com

- **William Kelly Puls**
  kpuls@pulslaw.com,msmith@pulslaw.com,kelly.puls@gmail.com

- **Darren Jay Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Hillary B Stakem**
  hstakem@rgrdlaw.com,ldeem@rgrdlaw.com

- **Michael W Stocker**
  mstocker@labaton.com,drogers@labaton.com,ravan@labaton.com,lmehringer@labaton.com,electroniccasefiling@labaton.com

- **Robert C Walters**
  rwalters@gibsondunn.com,kmoody@gibsondunn.com,cfitzgerald@gibsondunn.com

- **David Conrad Walton**
  davew@rgrdlaw.com,ldeem@rgrdlaw.com

- **Thomas John Ward , Jr**
  jw@wsfirm.com,wbc@wsfirm.com,ak@wsfirm.com,hmarlowe@wsfirm.com

- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com,cfitzgerald@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`